UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| NATIONAL ENVELOPE CORPORATION, et al., : <br> : <br> Plaintiffs, : <br> : <br> - against - : <br> : <br> AMERICAN PAD & PAPER COMPANY OF : <br> DELAWARE, INC., et al., : <br> : <br> Defendants. : | OPINION AND ORDER <br><br> 06 Civ. 12988 (SHS) (RLE) |

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

In this trademark infringement case, National Envelope Corporation ("NEC"), has sued American Pad & Paper Company of Delaware ("Ampad"), alleging that Ampad's use of "Pull & Seal" infringes upon NEC's "Peel & Seel" mark. (NEC's Letter to the Court ("NEC Oct. Letter"), Oct. 21, 2008 at 1.) Discovery is operating pursuant to a stipulated protective order that includes two designations, one for Attorneys'-Eyes-Only and another, less restrictive, titled "Confidential." (*See* Stipulated Protective Order ("Protective Order"), No. 06 Civ. 12988 (SHS) (RLE), Aug. 9, 2007 (Docket No. 14).) The "Confidential" designation "allows disclosure of information to outside counsel and in house counsel as well as one officer or employee of each party assisting in the case."[1] (NEC Oct. Letter at 1.) Currently before the Court is NEC's request for the decertification of certain documents produced by Ampad so that NEC may share it with NEC's President and CEO. For the reasons set forth below, NEC's request is **DENIED** as NEC

---

[1] In relevant part, the more restrictive designation provides that "[a] document, thing, or oral testimony may be designated as 'CONFIDENTIAL–ATTORNEY'S EYES ONLY' if it contains particularly sensitive information, including, but not limited to, (a) the names, or other information, tending to reveal the identities of a party's present or prospective customers; . . . (d) [sic] proprietary and undisclosed financial information of a party; . . . ." (*Id.* ¶ 3.)

has failed to show that NEC's President and CEO needs to see the documents at issue.

## II. BACKGROUND

In October 2008, NEC submitted a request to the Court to decertify a document produced by Ampad so that it might be shown to NEC's President and CEO. (NEC's Oct. Letter.) The request identifies two bases for reclassification: 1) NEC President and CEO must have information in the document to calculate a demand for settlement purposes or to calculate damages should the case proceed to trial and 2) the classification by Ampad of Attorneys'-Eyes-Only for this document is improper because it does not qualify for that designation under the protective order. (*Id.* at 1.)

The first document at issue is a single four-page document showing Ampad's sales information on the allegedly infringing products (hereinafter "Ampad Sales Document"). NEC argues that this document includes information essential to having an "informed understanding of the potential damages at stake" and is essential for decisionmaking concerning this case. (*Id.*) NEC further argues that the Attorneys'-Eyes-Only designation of this document is improper as it does not fit the definition of "particularly sensitive information" that is "proprietary and undisclosed." (*Id.* at 2 (quoting Protective Order ¶ 3).) NEC concludes that "[a]t most, it is simply 'commercial sensitive information' that is properly designated as 'Confidential.'" (*Id.*)

Ampad argues that there is no basis for NEC to provide Ampad's Sales Document to its President and CEO. (Ampad's Letter to the Court ("Ampad's Oct. Letter"), Oct. 24, 2008 at 1.) Ampad also argues that the document "contains Ampad's highly confidential and particularly sensitive customer and financial information[,]" specifically, "sales of Pull & Seal envelopes, in dollars and units, from April 2003 to November 2007." (*Id.*) The figures are broken down by

product and customer. Therefore, the document reveals the identities of customers and Ampad's pricing for its Pull & Seal envelopes as well as the specific product items and amounts purchased by each customer. (*Id.*; *see also id.*, Ex. A ¶ 4.) Ampad also references the full text of the relevant paragraph of the Protective Order and argues that this document is precisely the kind of material subject to its protection. (Ampad's Oct. Letter at 2-3; *Id.*, Ex. A ¶ 3 (Decl. of Barbara Martin, Office Manager and Executive Assistant to Ampad's CEO, Oct. 24, 2008).)

Ampad also notes that "NEC has designated a document setting forth its own envelope sales figures for the same time period (but containing no customer information), as well as all related deposition testimony, as 'Confidential – Attorneys' Eyes Only' under the very same provision of the Order." (Ampad's Oct. Letter at 2.) Ampad concludes that "NEC cannot have it both ways. Having agreed to[,] and taken advantage of[,] the protections of the Order, NEC should not now be permitted to circumvent those protections after Ampad LLC has disclosed its highly confidential information in reliance on them." (*Id.*)

Finally, Ampad argues there is no merit to NEC's assertion that its President and CEO must review Ampad's Sales Document because the information is "central to (NEC's) decision making concerning this case." (*Id.* at 3; *see also id.*, Ex. A ¶ 3.) Ampad references Paragraph 26 of the Protective Order, which provides that nothing in the Order prohibits counsel from rendering advice to its client in general terms, so long as counsel does not make any disclosures of specific "CONFIDENTIAL INFORMATION." (*Id.* at 3; Protective Order ¶ 26.)

On January 22, 2009, NEC submitted a supplementary letter to the Court regarding the re-designation of certain confidential financial information produced by Ampad. (NEC's Letter to the Court ("NEC's Jan. Letter"), Jan. 22, 2009.) NEC reiterates that this information is important

to "meaningful settlement negotiations" and explains that "[t]he calculation of recoverable profits is disputed. Therefore, information about infringing revenues and the costs Ampad claims should be deducted to determine profits, is very important information for a decision maker to evaluate in settlement negotiations." (*Id.* at 1.) NEC argues that absent this information, "NEC has no factual basis on which to evaluate the parties' damage positions, or settlement offers and demands." (*Id.* at 2.) Finally, NEC requests that a chart created by Ampad for this litigation, marked as AMPAD004217, and designated as "Confidential – Attorneys'-Eyes-Only" also be re-designated.

Ampad responds that AMPAD004217 reveals its "most sensitive and proprietary business information including gross and net sales figures for various categories of envelopes by customer and product; customer names, product mixes and sales volumes; variable- and fixed-costs by product and customer; . . . ; and related information for the last five fiscal years." (Ampad's Letter to the Court, Jan. 23, 2009.) Ampad subsequently references its October submission to the Court and reiterates its argument therein. (*Id.* at 1-2.) Finally, Ampad notes the various documents it has already agreed to reclassify as "Confidential" for purposes of engaging in meaningful settlement negotiations.

### III. DISCUSSION

Upon review of the materials provided, the Court finds that NEC has not established the need to share Ampad's documents with its CEO and President. While it is true the Parties need an understanding of their respective profits from the products at issue, the Court believes counsel can adequately advise their clients within the bounds of the designations and the Protective Order. Moreover, certain customer and cost information may be subject to redaction even if the

designation were changed since the detail presented does not appear needed for the purposes alleged.

## IV. CONCLUSION

For the reasons set forth above, NEC's request for decertification of Ampad's Sales Document and Ampad's Chart prepared in this litigation (Bates AMPAD004217) is **DENIED**.

**SO ORDERED this 30th day of January 2009**
**New York, New York**

*/s/ Ronald L. Ellis*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**