Steven C. Krane
Lawrence S. Elbaum
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
Tel:   212.969.3000
Fax:   212.969.2900

Julia Huston (*pro hac vice* motion pending)
Peter J. Karol (*pro hac vice* motion pending)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel:   617.443.9292
Fax:   617.443.0004

Attorneys for Non-Party Movant, Staples, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

− − − − − − − − − − − − − − − − − − − − − − − − − − − − − − −X

NATIONAL ENVELOPE CORPORATION and
NATIONAL ENVELOPE-WH LLC,

                 Plaintiffs,

       -against-

AMERICAN PAD & PAPER COMPANY OF
DELAWARE, INC. and AMERICAN PAD & PAPER
LLC.

                 Defendants.

− − − − − − − − − − − − − − − − − − − − − − − − − − − −X

Civil Action No. 06 CV 12988
(SHS) (RLE)

**ECF CASE**

**MEMORANDUM IN SUPPORT OF MOTION OF NON-PARTY STAPLES, INC. TO
INTERVENE FOR A LIMITED PURPOSE AND TO DISQUALIFY PLAINTIFFS'
COUNSEL ON GROUNDS OF CONFLICT OF INTEREST**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 4

    A. Fulbright Is Staples' Long-Standing and Present Counsel ................................................ 4

    B. Staples and NEC are Adverse to Each Other, as NEC has Stated that this Litigation is "Dispositive" and "Binding" in Relation to NEC's Claims Against Staples Regarding PULL & SEAL in the TTAB ................................................ 5

    C. Fulbright Undertook Representation of NEC in this Case Knowing that NEC's Interests Were Adverse to the Interests of Fulbright's Existing Client, Staples ................ 6

    D. Fulbright Inappropriately Sought to Take Discovery of Staples on Behalf of NEC   8

    E. Staples Has Appropriately Pursued this Issue and Has Not Waived its Right to Relief   10

    F. Staples has been Severely Prejudiced by Fulbright's Misconduct and Will Continue to be Prejudiced Absent Disqualification ........................................................ 12

    G. Any Prejudice to NEC Resulting from Disqualification Would Be Minimal, and is Far Outweighed by the Prejudice to Staples and the Court's Interest in Enforcing Ethical Rules ........................................................................................ 14

ARGUMENT ................................................................................................................... 15

I.  FULBRIGHT'S REPRESENTATION OF NEC IS IN VIOLATION OF THE APPLICABLE CONFLICT OF INTEREST RULES ......................................................... 15

    A. The New York Rules of Professional Conduct Prohibit Fulbright from Representing Clients with Differing Interests ................................................................. 15

    B. Judge Young has Already Expressed the View that Fulbright is in Violation of the Massachusetts Rules Governing Conflicts of Interest ............................................. 18

II. EVEN IF THE ONLY CONFLICT WAS IN RELATION TO THE SUBPOENA TO STAPLES, THE CONFLICT CANNOT BE ALLEVIATED BY USING LOCAL COUNSEL, BECAUSE THE PARTIES ARE ADVERSE, THE CONFLICT WAS FORESEEABLE, AND LOCAL COUNSEL IS A MERE AGENT OF FULBRIGHT .............................................................................................. 19

III. DISQUALIFICATION IS NECESSARY ........................................................................ 22

IV. REGARDLESS OF HOW THIS MOTION IS DECIDED, STAPLES SHOULD
BE MADE WHOLE WITH AN AWARD OF ATTORNEYS' FEES ................................. 24

V. STAPLES HAS STANDING TO BRING THIS MOTION ................................................. 24

CONCLUSION ........................................................................................................... 25

Non-party Staples, Inc. ("Staples") hereby seeks to intervene in this action for the limited purpose of disqualifying Fulbright & Jaworski L.L.P. ("Fulbright") from representing the plaintiffs, National Envelope Corporation and National Envelope-WH LLC (collectively, "NEC"), in this action against American Pad & Paper Company of Delaware, Inc. and American Pad & Paper LLC (collectively, "Ampad"), and that the Court order Fulbright's disqualification. As grounds for this motion, as is more fully set forth below, Staples states that Fulbright has a fundamental conflict of interest representing NEC in light of Fulbright's past and present representation of Staples. In further support of its motion, Staples relies on the declarations of Brenda M. Cotter ("Cotter Decl.") and Julia Huston ("Huston Decl."), filed herewith.

## INTRODUCTION

The circumstances set forth in this motion were recently addressed in a related proceeding in federal court in Massachusetts, in which Judge William G. Young stated, "Fulbright & Jaworski . . . appears to this Court to be [in] manifest violation of the conflict of interest policies," but referred the conflict issue to this Court. Accordingly, Staples seeks the assistance of this Court to prevent Staples own counsel, Fulbright, from litigating against Staples in this proceeding in *per se* violation of the New York ethical rules. For many years, Fulbright has represented Staples in complex commercial litigation matters, and continues to represent Staples to this day. Despite this long-standing relationship, Fulbright undertook representation of NEC in this trademark infringement matter against Ampad, based on Ampad's use of the designation PULL & SEAL on envelopes, knowing full well that NEC's position in this litigation is adverse to the interests of Staples.[1] Fulbright's representation of NEC first came to Staples' attention on August 19, 2008, when Fulbright asked Staples to accept a subpoena that it sought to serve on behalf of NEC in this case. Staples refused to accept the subpoena, citing Fulbright's representation of Staples. On that very

---

[1] For example, NEC and Fulbright had to have known when they filed this case that Staples had applied for its own federal registration for PULL & SEAL on the Supplemental Register and that Staples had sold Ampad envelopes bearing the PULL & SEAL designation.

same day, in an obviously coordinated strategy, NEC (through other counsel) filed a Petition for Cancellation against Staples in the TTAB,[2] seeking to cancel Staples' registration for PULL & SEAL on the grounds of an alleged likelihood of confusion with NEC's mark PEEL & SEEL. NEC promptly moved to suspend the TTAB action pending the conclusion of this litigation, stating that this litigation against Ampad was "dispositive" of NEC's claims against Staples in the TTAB and even "binding" on the TTAB and against Staples in that proceeding. Thus, there is no question that Fulbright is representing NEC in a manner that is directly adverse to Staples, and recent events (as set forth below) have raised the adversity of the parties to even greater heights.

Staples raised the conflict of interest issue at the earliest possible opportunity, and objected to the subpoena on the grounds of Fulbright's conflict. However, in a practical effort to resolve the matter without causing undue disruption to its outside counsel relationships, and without waiving its objections, Staples produced nearly 800 pages of documents pursuant to the subpoena in November and December of 2008. The attorney serving the subpoena had indicated, and Staples had hoped, that the document production might be sufficient and that Staples would have no further involvement in the matter. However, Fulbright escalated the issue in January and February, and insisted that Staples representatives appear for deposition on topics that were clearly directed to Staples' use and registration of PULL & SEAL. There is no question from the scope and content of the subpoena and the highly aggressive manner in which it has been pursued that the subpoena is not at all a typical non-party subpoena, but rather is in the nature of party discovery. This is not surprising, based on the fundamental adversity between NEC and Staples. NEC moved to compel the deposition of Staples in the District of Massachusetts, and Staples moved to quash the subpoena, in part based on Fulbright's conflict. At a hearing on the motions on March 19, 2009, Judge William G. Young stated, "Fulbright & Jaworski . . . appears to this Court to be [in] manifest violation of the

---

[2] The Trademark Trial and Appeal Board ("TTAB") is the department of the U.S. Patent and Trademark Office with jurisdiction to cancel trademark registrations.

conflict of interest policies." While Judge Young commented quite pointedly on the conflict issue, he referred Staples to this Court to address the conflict issues directly. This motion followed.

Fulbright's representation of NEC constitutes a fundamental, clear violation of New York ethics rules and should not be countenanced by the Court. Fulbright has apparently come to the conclusion that the rules governing attorney conduct and even the orders of this Court do not apply to it. Indeed, on the same day that Judge Young expressed his view that Fulbright was in violation of the conflict of interest rules, a Fulbright attorney disclosed Staples' documents that had been produced pursuant to the Protective Order issued by this Court and marked as "CONFIDENTIAL - ATTORNEYS EYES ONLY" to a fact witness in direct violation of this Court's Protective Order. Fulbright then took the remarkable position, in a letter to Magistrate Judge Ellis dated March 23, 2009, that its actions were justified because, in its sole view, the confidentiality designation was unjustified.[3] (*See* Motion of Non-Party Staples, Inc. for Contempt for Plaintiff's Violation of Protective Order, filed simultaneously herewith.) In that same letter, Fulbright sought to mislead this Court by stating that Judge Young "brushed aside Staples' objections to being deposed." Fulbright has never recognized its ethical and professional responsibilities to Staples, and clearly needs a Court directive to comply with its obligations.

Fulbright's conflict is causing substantial prejudice to Staples and must be addressed and stopped. Staples has raised this issue with Fulbright multiple times and in multiple ways to no avail, and now finds itself in the unfortunate position of having to bring this motion and litigate against its own counsel in order to protect its rights. Accordingly, and for the reasons set forth in greater detail below, Staples respectfully requests that the Court disqualify Fulbright from representing NEC in

---

[3] This is also, of course, a breach of the rules requiring attorneys to protect their clients' confidential information. Fulbright's letter to the Court cannot be viewed as anything other than highly adverse to Staples. Fulbright recently informed Staples that it now regrets the "mistake" of sending the March 23, 2009 letter to Magistrate Judge Ellis and intends to "withdraw it." Unfortunately, the only thing that Fulbright appears to regret is its own tactical mistake of making explicit in that letter the direct adversity, conflicts and prejudice to Staples that Fulbright has tried to keep hidden or deny. All of the circumstances that gave rise to that letter are still present. Indeed, that is why we have conflict rules, and ignoring them leads to the type of improper actions, complexity, divided loyalties, prejudice and burden (on the parties and the courts) and costs that are before the Court here.

this case. If the Court declines to order disqualification, at the very least, Staples should be protected from further direct involvement in this case.

## FACTUAL BACKGROUND

### A. Fulbright Is Staples' Long-Standing and Present Counsel

Fulbright has represented Staples in a significant number of major commercial litigation matters since at least as early as 2002. Indeed, by virtue of this long-standing relationship, the variety and number of cases that it has handled, and the importance of many of those cases to Staples, Fulbright is viewed by Staples as one of its leading outside law firms. Over just the past few years, Fulbright has billed Staples, and Staples has paid Fulbright, several million dollars in connection with its representation of Staples. Cotter Decl., ¶ 2.

Fulbright has represented Staples in at least seven substantial litigation matters over the last year, and Fulbright's representation of Staples continues to the present. For one example, in January and February of 2009, Fulbright's lawyers spent six weeks with the head of the Staples litigation department and other key Staples personnel in New Jersey trying a major case for Staples. Due to the intensive demands of the trial, Fulbright's attorneys spent nearly every waking hour with the head of the Staples litigation department during this period, communicating about, among other things, trial and settlement strategy, confidential business information, and other highly sensitive matters concerning both that specific trial and Staples' litigation generally. Cotter Decl., ¶ 3.

Fulbright's representation of Staples has extended across a wide spectrum of matters, including wage and hour disputes, accounting disputes, tax disputes, general commercial disputes, and class actions. As a result, Fulbright has had access to confidential information from many different business units within Staples, and its lawyers have interacted with many lawyers in Staples' in-house legal department. In short, in connection with its cases, Staples has shared highly confidential and privileged information with Fulbright relating to virtually all aspects of Staples' business. Cotter Decl., ¶ 4.

4

Over and above the highly confidential information that Staples has shared with Fulbright in the context of specific cases, in the course of its representation of Staples over many years, Fulbright has been privy to Staples' general litigation, trial and settlement strategies, cost-benefit analyses, internal policies and the strategic styles of lawyers in the Staples in-house legal department, as well as the business goals and risk tolerance of Staples as a company. As a result of its long-standing relationship with Fulbright, Staples trusted Fulbright with its most intimate and confidential information. Staples never would have revealed such information to Fulbright if Staples thought that the information could end up in the possession of an adversary of Staples. It was unthinkable that Fulbright itself would ever be an adversary. Cotter Decl., ¶ 5.

**B. Staples and NEC are Adverse to Each Other, as NEC has Stated that this Litigation is "Dispositive" and "Binding" in Relation to NEC's Claims Against Staples Regarding PULL & SEAL in the TTAB**

On November 9, 2004, Staples applied for federal registration of the designation PULL & SEAL for use with envelopes. The application proceeded to registration on the Supplemental Register on July 1, 2008.[4] Shortly thereafter, on August 19, 2008, NEC petitioned to cancel Staples' registration in the Trademark Trial and Appeal Board ("TTAB") on grounds of an alleged likelihood of confusion with NEC's PEEL & SEEL mark. Cotter Decl., ¶ 6 and Ex. A. On that very same day, in what was clearly a coordinated strategy, Fulbright (through the partner responsible for Fulbright's relationship with Staples) sought to serve Staples with a subpoena in this litigation. Cotter Decl., ¶ 8 and Ex. D.

NEC almost immediately moved to stay the TTAB proceeding pending the outcome of the instant litigation against Ampad. Cotter Decl., ¶ 7 and Ex. B. In its motion to suspend its TTAB case against Staples, NEC stated, "This pending civil action involves the same mark and issue that is involved in this cancellation proceeding (*i.e.* likelihood of confusion with the PULL & SEAL mark),

---

[4] The Supplemental Register, in contrast to the Principal Register, allows for the registration of descriptive designations.

and determination of this issue in the federal court will be <u>dispositive</u> of this cancellation proceeding." (emphasis added). Cotter Decl., ¶ 7 and Ex. B. Indeed, NEC went so far as to state that "the civil action will be <u>binding</u> on the Board." *Id.* (emphasis added). Staples disagreed that the civil litigation against Ampad was dispositive or binding in the TTAB action, but did not otherwise oppose the suspension. Cotter Decl., ¶ 7 and Ex. C. Given NEC's position that this litigation is "dispositive" of its claims against Staples and "binding" in the TTAB proceeding, there can be no dispute that the interests of Staples and NEC are directly adverse in this matter. The adversity is made even plainer by the aggressive manner in which NEC and Fulbright have pursued discovery against Staples, as further detailed below, and in relation to Fulbright's violation of the Protective Order, as set forth in Staples' separate motion for contempt.

**C. Fulbright Undertook Representation of NEC in this Case Knowing that NEC's Interests Were Adverse to the Interests of Fulbright's Existing Client, Staples**

Fulbright commenced this proceeding on behalf of NEC on November 7, 2006. At that time, Fulbright knew that NEC's interests in the matter were directly adverse to those of Staples, an existing client of Fulbright, but undertook representation of NEC anyway. For example, at the time Fulbright filed NEC's Complaint against Ampad, Fulbright undoubtedly knew of Staples' application for PULL & SEAL, which was a matter of public record. Fulbright's Complaint made explicit reference to Ampad's October 3, 2005 application for the PULL & SEAL designation with the U.S. Patent and Trademark Office. Complaint (Docket No. 1), pp. 3 & 5 (emphasis added). Staples' own application for PULL & SEAL was filed on November 9, 2004, which is prior to Ampad's application, and was pending at the time Fulbright filed NEC's Complaint.

Moreover, Fulbright certainly knew at the time the Complaint was filed that Staples was one of the "several nationally recognized brand names" under which Ampad's envelopes were sold, as alleged in Paragraph 22 of the Complaint in this action. Staples was then selling PULL & SEAL envelopes through its hundreds of stores nationwide, its website, and/or through catalogs. *See, e.g.,*

6

Cotter Decl., ¶ 17 and Ex. 8 (Staples catalog marked STA 52-55, showing prices through January 15, 2005, featuring PULL & SEAL envelopes and Ampad-branded envelopes).

Fulbright undertook representation of NEC fully aware that NEC's interests were adverse to Staples. Fulbright cannot be heard to complain that the conflict was unforeseeable or arose only recently. Unfortunately, Fulbright has never accepted or recognized its ethical obligations to Staples, even with full knowledge of the circumstances of the conflict between Staples and NEC. For example, when Fulbright contacted Staples on August 19, 2008 to inquire whether Staples would accept a subpoena from NEC in this case, the Fulbright attorney (who is the relationship partner for Staples and had not filed an appearance in this case) stated:

> Discovery indicates that there have been some dealings between AmPad and Staples relating to PULL & SEAL. My colleagues in New York believe they need to do some discovery of Staples relating to those dealings. We do not currently see any adversity between our client and Staples, and of course, we will not be adverse to Staples.

Cotter Decl., Ex. D. Yet, on the very day its counsel sent this email to Staples, NEC filed a Petition for Cancellation against Staples in the TTAB, seeking to cancel Staples' registration for PULL & SEAL on the Supplemental Register based on an alleged likelihood of confusion with NEC's mark PEEL & SEEL. Cotter Decl., Ex. A. Fulbright's statement that it failed to "see any adversity" is disingenuous and false. Even after Staples briefed the conflict of interest issue in a proceeding to quash the subpoena and Judge Young of the District of Massachusetts said that "Fulbright & Jaworski . . . appears to this Court to be [in] manifest violation of the conflict of interest policies," Fulbright still continues to take the position that no conflict exists.[5]

This situation stands in stark contrast to other cases in which an unforeseeable conflict arises after representation of the second client is undertaken, and the conflicted firm appropriately

---

[5] Fulbright went so far as to falsely state in a letter to the Court that Judge Young "brushed aside Staples' objections to being deposed," and that Staples was merely engaged in "a tactical plan to forestall this litigation and Staples' obligation to provide discovery." See Huston Decl., Ex. 9. Fulbright's attempt to deflect attention from its own ethical lapses by misleading this Court about the Massachusetts Court's ruling and acting adversely to Staples is, to put it mildly, unseemly, and only serves to underscore Fulbright's unethical conduct.

recognizes the conflict and works in good faith towards a solution that protects the rights of the first client. That did not happen here. Instead, Fulbright and NEC went on the offensive against Staples, accusing Staples of "a tactical plan," and even sought (unsuccessfully) to recover attorneys' fees from Staples in the Massachusetts proceeding. Fulbright knew of the adversity between NEC and Staples since before the Complaint in this action was filed, and took the position – then and now – that it could disregard its ethical obligations to Staples without consequences.

**D. Fulbright Inappropriately Sought to Take Discovery of Staples on Behalf of NEC**

Staples first learned of Fulbright's conflict when Fulbright sought to serve Staples with a subpoena in this matter. The subpoena and all of the activities surrounding it are outgrowths of Fulbright's fundamental conflict in representing NEC – the fruit of the poisonous tree, as it were. Fulbright acts as though the subpoena is the only problem that the Court needs to address. However, even if it were, quite apart from Fulbright's fundamental conflict in representing NEC, the subpoena standing alone presents a conflict of interest as well.

The subject matter of NEC's subpoena to Staples and the aggressive manner with which it has been pursued illuminate and exacerbate Fulbright's conflict and compellingly demonstrate the adversity between Staples and NEC. On August 19, 2008, the same day that NEC filed its Petition for Cancellation against Staples in the TTAB, Fulbright asked Staples if it would accept a third party subpoena *duces tecum* from Fulbright on behalf of NEC in this litigation. Cotter Decl., ¶ 8 and Ex. D. Staples declined to accept it in light of Fulbright's ongoing representation of Staples in other litigation matters. Cotter Decl., ¶ 9. Shortly thereafter, on or about September 8, 2008, the exact same subpoena was served on Staples by R. David Hosp of the Boston office of Goodwin Procter LLP ("Goodwin"). Cotter Decl., ¶ 10; Huston Decl., Ex. 2. In its objections to the subpoena, Staples stated, "Staples' response to the Plaintiffs' subpoena shall not be construed as a waiver by Staples of any conflict of interest arising from Fulbright & Jaworski L.L.P.'s representation of Plaintiffs in the

underlying matter, or any right Staples may have to object to such a representation." Huston Decl., Ex. 1.

Fulbright is flat-out wrong in thinking that it can avoid its conflict by retaining local counsel. The retention of Goodwin to serve the subpoena drafted by Fulbright does not alleviate the conflict issue, which is fundamental to the case. Goodwin is nothing more than Fulbright's agent in this proceeding, and takes its instructions directly from Fulbright.[6] It was Fulbright, not Goodwin, that drafted the subpoena and decided what discovery should be pursued from Staples.

Moreover, the communications between counsel for Staples and Goodwin reveal that Goodwin did not have any authority to negotiate the subpoena issues independently of Fulbright, and lacked sufficient familiarity with the case to negotiate the proper scope of the subpoena. Huston Decl., ¶ 5. For example, in a telephone conversation on January 6, 2009, Julia Huston (counsel for Staples) asked David Hosp (Goodwin counsel) why Ampad would not have certain information about the PULL & SEAL designation, and whether it was really necessary for NEC to pursue it from Staples instead of Ampad. Mr. Hosp stated that he did not know what discovery Ampad had produced, and could therefore not address the issues without conferring with Fulbright. *Id.* This was but one example of several communications that revealed that Goodwin did not have authority to negotiate the subpoena issues independently of Fulbright, and lacked sufficient familiarity with the case to negotiate the proper scope of the subpoena. In addition, Goodwin has not appeared in this Court on behalf of NEC, and Fulbright remains the sole counsel of record for NEC to this day.[7] In short, Fulbright is impermissibly using Goodwin as a front to take action that it could not ethically take in

---

[6] It is worth noting that in a recent deposition, when Fulbright attorney Colin Foley marked Staples document STA 558 for identification and stated, "I'm going to represent to you that this was a document that [was] produced to me in response to a subpoena by Staples." Huston Decl., Ex. 7 (emphasis added). The Staples document had been produced to Goodwin, not Fulbright.

[7] Goodwin's failure to file an appearance is telling, as counsel for Staples had suggested that Goodwin file an appearance as counsel for NEC in the case, so that Staples and Ampad could be assured that certain Staples documents would be treated as confidential by Goodwin pursuant to the Protective Order. Huston Decl., ¶ 4. Goodwin curiously declined to appear or even to execute the undertaking attached to the Protective Order as Exhibit A, preferring instead to make a representation by way of a private letter between counsel which was not on its face copied to anyone at NEC. *Id.* at ¶ 4 and Ex. 3.

its own name in relation to the subpoena. And of course, Goodwin's involvement with the subpoena is completely irrelevant to Fulbright's general representation of NEC in the case.

## E. Staples Has Appropriately Pursued this Issue and Has Not Waived its Right to Relief

Staples has asserted the conflict of interest issue from its very first involvement in this proceeding, and has in no way waived its rights to bring this motion for disqualification. As set forth above, Fulbright first contacted Staples about the NEC subpoena on August 19, 2008. On or about September 8, 2008, the subpoena was served on Staples by Goodwin. Notwithstanding and while reserving its objections, and despite its deep misgivings and concern about the circumstances, Staples attempted from the outset to address the issues in a practical manner. Staples hoped to avoid unnecessary disruptions to its outside counsel relationships, particularly given the importance to Staples of the long-standing relationship between Staples and Fulbright, and the fact that Fulbright was actively preparing a major Staples case for imminent trial. Accordingly, Staples produced nearly 800 pages of documents to Goodwin in November and December of 2008 in response to the subpoena, explicitly reserving its rights as to the conflict issue. Huston Decl., Ex. 3. Mr. Hosp had initially indicated, and Staples had hoped, that the production of documents by Staples would potentially be sufficient to resolve this matter and that Staples would have no further involvement in the case. Cotter Decl., ¶ 12.

In January of 2009, Staples learned that the case was proceeding to mediation. A settlement would potentially resolve the immediate issues posed by the subpoena and Fulbright's representation of NEC. The case was mediated on or about January 29, 2009. On February 2, 2009, counsel for Staples learned from counsel for Ampad that there had been further developments following the mediation and that settlement appeared to be likely. Cotter Decl., ¶ 14. Counsel for Staples followed up periodically, and was told by counsel for Ampad that the parties were still trying to reach a settlement and that the prospects of settlement remained good. *Id.* It was not until

February 25, 2009 that Mr. Hosp informed counsel for Staples that the post-mediation settlement efforts were not successful. Huston Decl., ¶ 7.

At various times and January and February of 2009, counsel for Staples explored with Mr. Hosp whether it was possible to narrow the deposition subpoena to try to address some of Staples' objections and concerns but also to reach a practical resolution to the dispute. Those discussions were unavailing. Huston Decl., ¶ 6. Fulbright, through Goodwin, refused to narrow the subpoena.

On March 3, 2009, Goodwin served Staples with a deposition subpoena that was in all respects identical to the prior subpoena drafted by Fulbright. Huston Decl., ¶ 8 and Ex. 4. The following day, NEC filed a motion in the District of Massachusetts to compel Staples to comply with the subpoena. *Id.*, ¶ 9 and Ex. 5. Staples thereafter filed a motion to quash the subpoena in Massachusetts on March 4, 2009, based in substantial part on the arguments set forth here regarding Fulbright's conflict of interest.[8] *Id.*, ¶ 9 and Ex. 6.

A hearing on Staples' motion and on NEC's cross-motion to compel compliance with the deposition subpoena was held on March 19, 2009. At the hearing, Judge William G. Young stated in part:

> [T]here are extremely serious <u>allegations of conflict of interest</u> here and I will tell you that I am candidly taken aback by them. <u>They seem to be supported in the record.</u>
>
> <u>How does Fulbright & Jaworski think they can get around the fact that they are both prosecuting this case on behalf of National Envelope and they represent Staples.</u>"
>
> ***
>
> How does Fulbright & Jaworski get around what <u>appears to this Court to be a manifest violation of the conflict of interest policies?</u>
>
> ***
>
> You go back and tell your Fulbright and Jaworski people that <u>I take this conflict of interest matter extraordinarily seriously. And in the Commonwealth of Massachusetts and by</u>

---

[8] Staples also sought to quash the subpoena on other grounds, including the burden of responding to discovery as though Staples was a party and the overbreath of the deposition topics (many of which related to the use of PULL & SEAL by Staples rather than Ampad, and/or called for irrelevant and highly sensitive information such as sales data). In light of Fulbright's express, demonstrated intent not to abide by the Protective Order regarding Staples' confidentiality designations, Staples' concerns are even further heightened.

derivation in the District Court of Massachusetts, we would take it very seriously. . . . . You will within, you, Staples, will, if you're serious, within two weeks [i.e. by April 2] file a motion to disqualify Fulbright and Jaworski in the Southern District of New York . . . on the ground of conflict of interest. . . . However the New York [court] speaks . . . the case may proceed on the merits.

Huston Decl., Ex. 7 (Transcript, pp. 2-3, 7-8). Even after receiving the transcript, Fulbright still

refused to acknowledge that there was a conflict or to withdraw from representation of NEC.

In an extraordinary confluence of events, on the very same day that Judge Young expressed the

view that Fulbright was in violation of the conflict of interest rules, an attorney for Ampad notified

Staples that Fulbright had misused Staples' confidential information in a deposition with an Ampad

witness in direct violation of the Protective Order in this case. Cotter Decl., ¶ 16 and Ex. E; *see*

Motion of Non-Party Staples, Inc. for Contempt for Plaintiff's Violation of Protective Order, filed

simultaneously herewith. Staples immediately demanded that Fulbright take appropriate steps to

remedy the disclosure, and sought assurances that no other unauthorized disclosures had occurred.

Huston Decl., Ex. 9. Fulbright did not respond to Staples' letter and instead sent a letter to

Magistrate Judge Ellis, signed by an attorney identifying himself as "a member of Fulbright's

Professional Responsibility Committee," in which Fulbright admitted that it violated the Protective

Order, but argued that its actions were justified because it did not view the documents as

confidential. Huston Decl., ¶ 13 and Ex. 10. Fulbright's recent actions highlight the direct adversity

of the parties and the real and substantial prejudice to Staples if Fulbright is allowed to continue

representing NEC in clear violation of the firm's ethical obligations to its client, Staples.

**F. Staples has been Severely Prejudiced by Fulbright's Misconduct and Will Continue to be Prejudiced Absent Disqualification**

Fulbright has represented and is representing Staples in multiple matters, including complex

commercial litigations. For many years, Fulbright has been a trusted partner and confidant to

Staples, and Staples has invested significantly in that relationship. Given Fulbright's intimate and

very extensive knowledge of Staples, it would be highly inappropriate and prejudicial to allow

Fulbright to continue to litigate against its own client, Staples. For years, Fulbright has enjoyed unfettered access to the trial strategy, cost benefit analyses, internal policies and the strategic styles of lawyers in the Staples in-house law department, and has a sound understanding of Staples' business goals and risk tolerance. Indeed, Fulbright's lawyers just spent six weeks with the head of the Staples litigation department trying a major case for Staples. Cotter Decl., ¶ 3. Fulbright should not be allowed to assume a position in which this information, and other confidential and privileged information shared over the years, could be used to the detriment of Staples.

In addition, the adversarial nature of Fulbright's conflict of interest has prejudiced Staples because NEC and Fulbright have pursued the subpoena as vigorously as though Staples were a party. The extent of the adversity has recently reached a fever pitch, with a professional responsibility attorney for Fulbright sending a letter to Magistrate Judge Ellis on behalf of NEC accusing Staples – an existing client of Fulbright – of raising conflict of interest and confidentiality issues as part of a "tactical plan." While styled as a third-party subpoena, the content of the subpoena, the manner in which it has been pursued and the context of this matter make clear that NEC is attempting improperly to use discovery in this litigation to fish for evidence in connection with NEC's existing claim against Staples before the TTAB.[9] Yet, as a non-party subject to a subpoena, Staples does not have any of the protections that a party to a litigation would have. For example, Staples has not seen any of the discovery responses of NEC or Ampad, which gives NEC an unfair advantage over Staples. Staples does not have the ability to file a dispositive motion, before burdensome and expensive discovery is undertaken, with respect to NEC's claim that PEEL & SEEL is a valid trademark infringed by PULL & SEAL in relation to envelopes that have the functionality that these terms describe. In addition, the conflict presented Staples from having any meaningful communications with NEC about settlement, because Mr. Hosp of Goodwin lacks

---

[9] Discovery, including depositions, is and will be available to NEC in the TTAB proceeding.

sufficient information about the case. Staples should not be subject to these burdens, particularly on top of the burden and prejudice it is already suffering as a result of Fulbright's breach of its ethical obligations by undertaking representation of NEC in the first instance.

Prejudice also flows from Fulbright's disclosure of Staples' documents designated as "CONFIDENTIAL – ATTORNEYS EYES ONLY" pursuant to the Protective Order. This relates both to the conflict issue and the Protective Order, which is subject to a separate motion filed herewith. It is hard to imagine what could be more prejudicial than a client's own counsel taking it upon itself to disclose documents that it knows the client designated as confidential, and then refusing to inform the client what occurred or indeed communicate with the client about it in any manner whatsoever. Significantly, Fulbright still refuses to respond to Staples' request for assurances that no other unauthorized disclosures of Staples' confidential documents have been made. It is abundantly clear, particularly from recent correspondence in this case such as the March 23 letter to Magistrate Judge Ellis, that Fulbright cannot meet its professional and ethical obligations to both Staples and NEC. Staples should not bear the burden and prejudice arising from Fulbright's conflict, especially where Fulbright undertook representation of NEC with its eyes wide open as to Staples' involvement in the issues in the case.

## G. Any Prejudice to NEC Resulting from Disqualification Would Be Minimal, and is Far Outweighed by the Prejudice to Staples and the Court's Interest in Enforcing Ethical Rules

The appropriate remedy is to disqualify Fulbright from further representation of NEC in this proceeding. Many lawsuits are transitioned to new counsel after the close of discovery and, as here, well in advance of trial.[10] Any inconvenience to NEC of having to find appropriate successor counsel is far outweighed by the seriousness of the ethical violations and significant prejudice to Staples as set forth above.

---

[10] No trial date has yet been set. The deadline for filing dispositive motions is currently July 30, 2009. *See* Docket No. 39 (Scheduling Order).

14

It bears repeating that this is not a case in which a conflict only recently arose or otherwise came as a surprise to Fulbright. Fulbright knew full well at the time the Complaint was filed in 2006 that Staples had applied for its own registration of PULL & SEAL on the Supplemental Register and that Staples was selling Ampad's PULL & SEAL envelopes. *See* pp. ___, above. Fulbright certainly knew of the conflict when it sent the subpoena, as NEC sued Staples in the TTAB the very same day. Fulbright "made its own bed" with respect to the conflict issue, and cannot possibly be surprised that this issue would come home to roost when it sought to take discovery of Staples and thereby revealed its representation of NEC. In these circumstances, Fulbright is responsible to NEC for any inconvenience its withdrawal from representation may cause, and it is up to Fulbright to mitigate any damage to NEC if it so chooses. To force Staples to bear the burden of Fulbright's unethical conduct alone would be manifestly unjust.

In light of the Court's interest in ensuring that the lawyers before it act ethically and observe its orders, the ability of NEC to retain new counsel in this matter, and the prejudice to and burdens upon Staples which cannot otherwise be alleviated (including the burdens imposed by its own counsel litigating against it, the breach of the trust relationship, the prejudice of being treated as a party for discovery purposes but without the protections of a party, and the unauthorized disclosure of its confidential information), disqualification is required. In the unlikely event that the Court rules that disqualification is not appropriate, however, at the very least Staples should be protected from further direct involvement in the case.

## ARGUMENT

### I. FULBRIGHT'S REPRESENTATION OF NEC IS IN VIOLATION OF THE APPLICABLE CONFLICT OF INTEREST RULES

#### A. The New York Rules of Professional Conduct Prohibit Fulbright from Representing Clients with Differing Interests

New York Rule of Professional Conduct 1.7 provides as follows:

15

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . (1) the representation will involve the lawyer in representing differing interests; . . . (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if . . . (4) each affected client gives informed consent, confirmed in writing.

New York Rule of Professional Conduct 1.7, in effect as of April 1, 2009 (to be codified in 22 N.Y.C.R.R. Part 1200).[11] The representation of clients with differing interests is prohibited, even if the lawyer's representation of one client does not relate to those particular interests.[12]

Pursuant to the New York rules, a lawyer owes a duty of undivided loyalty to the client that broadly and categorically precludes the lawyer from taking any steps that impact adversely upon the interests of another current client.[13] Where the simultaneous representation of current clients is involved, Courts apply a *"per se"* or *"prima facie"* rule of disqualification. In establishing this rule, the Second Circuit explicitly rejected the notion that a current client seeking to disqualify its counsel from representing an adversary must show a relationship between the present controversy and the firm's representation of the client, as representation adverse to an existing client is *prima facie* improper even where no such relationship exists. *Cinema 5 Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1385-88 (2d Cir. 1976). The Court stated:

---

[11] The New York Code of Professional Responsibility, which was in effect prior to the commencement of this litigation and continued in effect up through March 31, 2009, similarly provided that, "(A) A lawyer shall decline proffered employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under DR 5-105; (B) A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under DR 5-105; (C) In the situations covered by DR 5-105 [1200.24] (A) and (B), a lawyer may represent multiple clients if a disinterested lawyer would believe that the lawyer can competently represent the interest of each and if each consents to the representation after full disclosure of the implications of the simultaneous representation and the advantages and risks involved." DR 5-105 (codified at 22 N.Y.C.R.R. § 1200.24) (emphasis added).

[12] The comments to the New York Rules of Professional Conduct provide in part, "The duty to avoid the representation of differing interest prohibits, among other things, undertaking representation directly adverse to a current client without that client's informed consent. For example, absent consent, a lawyer may not advocate in one matter against another client that the lawyer represents in some other matter, even when the matters are wholly unrelated. The client as to whom the representation is directly adverse is likely to feel betrayed and the resulting damage to the client-lawyer relationship is likely to impair the lawyer's ability to represent the client effectively." Rule 1.7 of the New York Rules of Professional Conduct, Comment 6 (emphasis added).

[13] *See Cinema 5 Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976); *Correspondent Services Corp. v. J.V.W. Inv. Ltd.*, 2000 WL 1174980 (S.D.N.Y. Aug. 18, 2000); *Flather v. United States Trust Co. of New York*, 1994 WL 376088, at *4 (S.D.N.Y. July 15, 1994).

[The disqualified lawyers] say that they should not be disqualified unless the relationship between the controversies is substantial, and they contend there is nothing substantial in the relationship between [the separate litigations handled on behalf of each client].

The 'substantial relationship' test is indeed the one that we have customarily applied in determining whether a lawyer may accept employment against a former client. However, in this case, suit is not against a former client, but an existing one. . . . The propriety of this conduct must be measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients.

A lawyer's duty to his client is that of a fiduciary or trustee. When [the first client retained its attorney], it was entitled to feel that at least until that litigation was at an end, it had his undivided loyalty as its advocate and champion, and could rely upon his 'undivided allegiance and faithful, devoted service.' Because 'no man can serve two masters', it had the right to expect also that he would 'accept no retainer to do anything that might be adverse to his client's interests.'

\*\*\*

Where the relationship is a continuing one, adverse representation is prima facie improper. . .
.

\*\*\*

Because 'an attorney must avoid not only the fact, but even the appearance, of representing conflicting interests,' this requires his disqualification.

*Cinema 5*, 528 F.2d at 1385-88 (citations omitted). "Based on the analysis and holding of *Cinema 5*, courts in this circuit apply the "per se" or "prima facie" rule to disqualification motions when the attorney whose disqualification is sought is actively suing his client in other related, or non-related actions." *British Airways, PLC v. The Port Authority of New York and New Jersey*, 862 F. Supp. 889, 893 (E.D.N.Y. 1994) (Glasser, J.) (disqualifying plaintiff's counsel under *per se* rule where counsel represented defendant in unrelated matters); *accord Travelers Indemnity Co. v. Gerling Global Reins. Corp.*, 2000 WL 1159260 (S.D.N.Y. August 15, 2000) (McKenna, J.) (ordering disqualification under *per se* rule due to appearance of divided loyalty arising from plaintiff's counsel's long-standing representation of defendant's affiliate in unrelated matters). Where the *per se* rule applies, "all doubts must be resolved in favor of disqualification." *British Airways*, 862 F. Supp. at 900; *Travelers*, 2000 WL 1159260 at \*3. The courts in *Cinema 5, Travelers*, and *British Airways* found that disqualification was required even though the courts found in each of those cases that the conflicts had arisen inadvertently and that the attorneys had acted in good faith could be

otherwise relied upon to voluntarily refrain from inappropriately disclosing client confidences. These facts are a far cry from the facts of the instant case, to say the least.

As both NEC and Staples are current clients of Fulbright, the *per se* rule applies. As is set forth in detail above, the interests of Staples and NEC are directly adverse and most certainly "differing" within the meaning of the ethical rules. NEC represented in the TTAB proceeding that this litigation was "dispositive" of NEC's claims against Staples, and even "binding" against Staples and on the TTAB. The fact that NEC is represented in the TTAB case by a law firm other than Fulbright is of no consequence, because as counsel for NEC in this action Fulbright is engaging in a course of conduct that it intends to be directly and materially adverse to Staples in the TTAB action, and indeed a Fulbright professional responsibility attorney and the relationship partner for Staples have participated in this conduct. By virtue of its long-standing representation of Staples in a wide variety of matters, Fulbright has been privy to Staples' most confidential information, including its trial and litigation strategies. There is no question that Fulbright has conflicting loyalties and Staples is paying the price for it, and Staples is even being forced to defend against direct attacks made by its own counsel. Fulbright's attempts to use a surrogate law firm to evade its ethical obligations with respect to the subpoena are completely unavailing, and do not relieve the fundamental conflict with respect to Fulbright's representation of NEC in any event.[14] Fulbright is in clear violation of the New York conflict of interest rules.

**B. Judge Young has Already Expressed the View that Fulbright is in Violation of the Massachusetts Rules Governing Conflicts of Interest**

The conflict of interest issue was fully briefed to the Massachusetts Court in connection with Staples' motion to quash the subpoena and NEC's motion to compel. The issue presented to Judge

---

[14] This direct adversity exists completely independently of the subpoena, although of course the subject matter of the subpoena (which seeks information about the use and registration of PULL & SEAL by Staples rather than Ampad) and the adversarial manner in which NEC and Fulbright have litigated this issue against Staples (culminating in a letter to Magistrate Judge Ellis from Fulbright's professional responsibility attorney making statements directly adverse to Staples) compellingly demonstrate the severity of the conflict.

Young was whether Fulbright violated the Massachusetts Rules of Professional Conduct governing conflicts of interest, as Staples was seeking to quash a Massachusetts subpoena served upon Staples as a Massachusetts company. Massachusetts Rule of Professional Conduct 1.7(a) provides, "A lawyer shall not represent a client if the representation of that client will be <u>directly adverse</u> to another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client, and (2) each client consents after representation" (emphasis added).

Although the "directly adverse" standard is more permissive than the broad "differing interests" preclusion of the New York rule, Judge Young nevertheless expressed serious concerns that an ethical violation had occurred. At a motion hearing on March 19, 2009, Judge Young pointedly stated:

> [T]here are extremely serious <u>allegations of conflict of interest</u> here and I will tell you that I am candidly taken aback by them. <u>They seem to be supported in the record.</u>
>
> <u>How does Fulbright & Jaworski think they can get around the fact that they are both prosecuting this case on behalf of National Envelope and they represent Staples.</u>"
>
> ***
>
> How does Fulbright & Jaworski get around what <u>appears to this Court to be a manifest violation of the conflict of interest policies</u>?
>
> ***
>
> You go back and tell your Fulbright and Jaworski people that <u>I take this conflict of interest matter extraordinarily seriously. And in the Commonwealth of Massachusetts and by derivation in the District Court of Massachusetts, we would take it very seriously.</u>

Huston Decl., Ex. 7 (Transcript, pp. 2-3, 7-8). Judge Young then referred the conflict issue to this Court, by stating that Staples may file a motion to disqualify Fulbright in this proceeding within two weeks (*i.e.,* by April 2, 2009). *Id.*, p. 8. This motion followed.

## II. EVEN IF THE ONLY CONFLICT WAS IN RELATION TO THE SUBPOENA TO STAPLES, THE CONFLICT CANNOT BE ALLEVIATED BY USING LOCAL COUNSEL, BECAUSE THE PARTIES ARE ADVERSE, THE CONFLICT WAS FORESEEABLE, AND LOCAL COUNSEL IS A MERE AGENT OF FULBRIGHT

As noted above, the conflict of interest is fundamental to the case. Fulbright is representing NEC in litigation that NEC claims is "dispositive" and "binding" on Staples. However, even if this conflict did not exist, the subpoena would present a direct conflict in and of itself which Fulbright cannot sidestep by engaging other counsel. It is axiomatic that lawyers may not circumvent their professional obligations by hiring others to commit unethical acts for them.[15] In addition, the adversity between NEC and Staples in the overall dispute and the foreseeability that such a conflict would emerge independently precludes Fulbright from using "conflict counsel" as a cure for its ethical dilemma in relation to the subpoena.

In the Massachusetts proceeding, the only authority that NEC and Fulbright cited in defense of their position that a conflicted law firm may retain local counsel to take discovery of the firm's own client is ABA Comm. On Ethics and Prof'l Responsibility, Formal Op. 92-367 (1992). However, the opinion expressly provides that, "It is assumed, for purposes of this opinion, that whatever the purposes for which the third party witness-client's evidence is offered or sought, the litigation in which this occurs is not itself adverse to that client." Huston Decl., Ex. 12 (ABA opinion, p. 32, note 1) (emphasis added). This makes perfect sense, of course, as the conflicted counsel should not have undertaken representation of the party at all in circumstances where the litigation was adverse to an existing client, and would not properly be in a position to take discovery of anyone. That is exactly the case here. NEC has alleged in its TTAB motion, and has not disputed at any time since then, that its interests are adverse to Staples in connection with this litigation and, accordingly, it was a conflict of interest for Fulbright to undertake representation of NEC.

---

[15] See DR 1-102 [1200.3] ("A. A lawyer or law firm shall not: . . . 2. Circumvent a Disciplinary Rule through actions of another") (in effect through March 31, 2009); Rule 8.4 ("A lawyer or law firm shall not: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . .") (in effect April 1, 2009). In this case, as discussed above, the subpoena was drafted by Fulbright, not Goodwin, and it was Fulbright that made all of the decisions as to what discovery would be sought from Staples and whether the subpoena would be narrowed in any manner. The Goodwin attorney did not know what discovery the parties had produced, and could not address how and whether the subpoena to Staples should be narrowed without conferring with Fulbright. Huston Decl., ¶ 5. Goodwin did not appear in the case on behalf of NEC, and Fulbright remains NEC's sole counsel of record.

Even in the circumstances addressed in the ABA opinion, where the non-party from whom the discovery is sought is not directly adverse to the party seeking discovery in relation to the subject matter of the case,[16] the ABA warns that lawyers should ordinarily not seek discovery from their own clients and third parties, and that using local counsel to work around any conflicts arising from such efforts is only appropriate where no conflict was foreseeable:

> The Committee concludes that a lawyer's examining the lawyer's client as an adverse witness, or conducting third party discovery of a client, will ordinarily present a conflict of interest that is disqualifying absent consent of one or both of the clients involved (depending, as will be explained, on the nature and degree of the conflict), and that the individual lawyer's disqualification will, again in the absence of consent, be imputed to all other lawyers in the lawyer's firm as well.
>
> ***
>
> Where one of the two representations is prospective only, and conflict is clearly foreseeable, then the solution, absent client consent, is clear enough: the prospective engagement must be declined. The solution may not be so simple, however, in a case where the conflict arises, or becomes foreseeable, only after both representations are well under way.

Huston Decl., Ex. 12 (ABA opinion, p. 22) (emphasis added). Here, the conflict was clearly foreseeable prior to filing this litigation, and Fulbright should have declined representation of NEC.

The ABA Ethics Committee further highlighted three likely consequences of seeking to take non-party discovery from a client, even where the litigant and non-party are not directly adverse in relation to the subject matter of the litigation: "(1) to pit the duty of loyalty to each client against the duty of loyalty to the other; (2) to risk breaching the duty of confidentiality to the client-witness; and (3) to present a tension between the lawyer's own pecuniary interest in continued employment by the client-witness and the lawyer's ability to effectively represent the litigation client. *Id.* All of these factors are clearly in play here, and Staples has been prejudiced and will continue to be prejudiced as a result of Fulbright's representation of NEC in this action. The prejudice is not

---

[16] The ABA opinion addresses the more "garden variety" conflict situation in which, for example, a firm has a physician as a client and seeks to depose him as an expert for an opposing party in another case. In those circumstances, the need to conduct a vigorous cross-examination may require impeaching the physician's qualifications and the like, giving rise to a conflict which in "may" – in "some circumstances" – be cured by conducting the discovery through another law firm. Huston Decl., Ex. 12 (ABA opinion, pp. 22-23). This is not the case here, where NEC and Staples are directly adverse in relation to the discovery sought.

alleviated by Fulbright's retention of Goodwin as surrogate counsel, and this does not absolve Fulbright from its ethical responsibility to refrain from representing NEC in this matter at all.

## III. DISQUALIFICATION IS NECESSARY

Disqualification is required as a result of Fulbright's *per se* ethical violations of the conflict of interest rules. As the Second Circuit stated in the seminal case establishing the *per se* rule in cases involving representation of current clients, "Because 'an attorney must avoid not only the fact, but even the appearance, of representing conflicting interests,' this requires his disqualification." *Cinema 5 Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976) (emphasis added). District courts have likewise recognized that once a *per se* ethical violation of the conflict rules has been shown, "all doubts must be resolved in favor of disqualification." *British Airways, PLC v. The Port Authority of New York and New Jersey*, 862 F. Supp. 889, 900 (E.D.N.Y. 1994) (Glasser, J.); *Travelers Indemnity Co. v. Gerling Global Reins. Corp.*, 2000 WL 1159260 at *3 (S.D.N.Y. August 15, 2000) (McKenna, J.). Significantly, in each of these three cases, the conflicted counsel did not possess any client information regarding the specific matter in which the motion to disqualify was made, so there was no immediate possibility that the client's information would be disclosed to an adversary, yet disqualification was required because the conflicted counsel could not meet the "heavy burden" of showing that there would be no "real or apparent conflict in loyalties." *Cinema 5*, 528 F.2d at 1387; *British Airways*, 862 F. Supp. at 897, 899; *Travelers*, 2000 WL 1159260 at *6.[17]

The facts of this case are of course far more egregious than in these cases, as Staples is suffering serious prejudice as a result of Fulbright's unrepentant breach of loyalty. Staples is suffering and will continue to suffer real and substantial prejudice absent disqualification, including the violation of the relationship of trust, the risk (and apparent reality) that Staples' sensitive strategic information

---

[17] As Judge McKenna aptly observed, "Speculation aside, it is the mere risk of divided loyalty that the Court is concerned with, not only ethical scenarios that can be readily envisioned at this juncture. The purpose of Canon 5 is to protect a client not only from outright and egregious examples of divided loyalty, but also the subtle and indefinable impact that it might have on an attorney's representation." *Travelers*, 2000 WL 1159260 at *6 (emphasis added).

will be used against it, the misuse of Staples' confidential information, and the overly aggressive attempts to take discovery of Staples as though it were a party in this case. Fulbright is in possession of Staples' most confidential strategic information regarding how Staples litigates, settles, and tries cases and even knows, for example, Staples' internal processes for responding to discovery requests. Even if it was appropriate to consider any burden that NEC might experience in retaining new counsel,[18] any such burden would be far outweighed by the extraordinary burdens and prejudice to which Fulbright is subjecting its long-standing client, Staples. It is hard to imagine a more egregious breach of the duty of loyalty than the one presented here. Even a member of Fulbright's Professional Responsibility Committee and the Fulbright partner in charge of Fulbright's relationship with Staples have engaged in conduct directly adversarial to Staples. Nothing short of disqualification can protect Staples from further prejudice and harm.[19]

Moreover, it would be contrary to public policy to allow Fulbright and NEC to avoid disqualification, and would make a mockery of the conflict of interest rules. This is not a case where Fulbright could not have reasonably foreseen a conflict coming, and took appropriate action once it arose. To the contrary, Fulbright knew of the adversity between Staples and NEC before this action was filed in 2006, and has refused to even recognize, much less honor, its ethical obligations to Staples at any time between then and now. To countenance Fulbright's position by allowing its continued representation of NEC is fundamentally inconsistent with the ethical rules governing

---

[18] Fulbright cannot be heard to argue that any burden on NEC in finding successor counsel justifies its course of action and deprives Staples of a remedy, as Fulbright knew at the outset of this case in 2006 that Staples was adverse to NEC in this case yet chose to proceed in the face of this obvious conflict. In any event, the parties have only recently completed discovery, and there is nothing special about this case that would prevent NEC from locating competent successor counsel with experience in trademark issues.

[19] Even if this were not a case where the *per se* ethical violation mandated disqualification, disqualification would be required because there is simply no other way in which Staples' rights can be protected. For example, an "ethical wall" does not resolve the issues because, *inter alia*, the Staples relationship partner tried to serve the subpoena upon Staples and a member of the Fulbright Professional Responsibility Committee wrote a letter directly adverse to Staples in this case, and Fulbright has already demonstrated its propensity to disclose Staples' confidential information to the benefit of NEC even in violation of a direct court order. An "ethical wall" is also inappropriate in light of the large number of Fulbright attorneys who have represented Staples over many years, and the wide-ranging nature of that representation.

attorney conduct, and offends all notions of justice. If the conflict of interest rules are to have any meaning, disqualification must be ordered.

## IV. REGARDLESS OF HOW THIS MOTION IS DECIDED, STAPLES SHOULD BE MADE WHOLE WITH AN AWARD OF ATTORNEYS' FEES

Fulbright's violation of the ethical rules regarding conflicts of interest have imposed a significant burden on Staples, not only with respect to damage to the attorney-client relationship, and its critical concerns regarding the confidences it has entrusted to Fulbright, but also due to the time, money and energy that Staples was required to spend to address these issues. Staples should not be forced to pay the price for its own counsel's misconduct. Staples has made every effort to address this issue with Fulbright and NEC without resort to resource-intensive motion practice, but to no avail. Regardless of whether this Court disqualifies Fulbright from representation of NEC in this case, Staples should be made whole with an award of attorneys' fees from Fulbright. There is no question that Fulbright breached its ethical obligations to Staples, and Staples should not be worse off than if the breach never occurred. With the permission of the Court, Staples will submit documentation of the monetary damages that Staples has suffered as a result of Fulbright's misconduct so that an appropriate award can be made.

## V. STAPLES HAS STANDING TO BRING THIS MOTION

There is no question that Staples has standing to bring this motion to disqualify Fulbright as counsel for NEC. A motion to disqualify may be made by a client based on its current counsel's representation of an adverse party, even if the client is not a party to the case in which the motion is made. *See Medical Diagnostic Imaging v. CareCore National*, 542 F. Supp. 2d 296 (S.D.N.Y. 2008); *Cole Mechanical v. National Grange Mutual*, 2007 WL 2593000 (S.D.N.Y. 2007); Fed R. Civ. P. 24(a). Moreover, Judge Young expressly indicated that Staples should raise the disqualification issue with this Court. Huston Decl., Ex. 7.

The case of *Cole Mechanical v. National Grange Mutual*, 2007 WL 2593000 (S.D.N.Y. 2007), is directly on point. The plaintiff in *Cole* had originally brought a motion to compel Cyan, a non-party, to produce a witness during discovery. *Cole*, 2007 WL 2593000 at *1. Cyan refused and argued that because plaintiff's counsel had previously represented it on related matters, plaintiff's counsel had a conflict of interest that required its disqualification. *Id.* at *2. The court granted Cyan's motion to intervene (and subsequently disqualified counsel), finding that "all the circumstances justifying intervention [we]re present." *Id.* at *4.[20]

Staples, like the non-party movant in *Cole*, satisfies each of the requirements to intervene for the purposes of disqualifying Fulbright from representing NEC. Staples is a current client of Fulbright. Cotter Decl., ¶¶ 2-5. Staples' interests are directly adverse to NEC in this matter, and indeed NEC has claimed that this action is "dispositive" and "binding" with respect to NEC's claims against Staples in the TTAB. None of the other parties to this action share Staples' interest in ensuring that its own law firm, Fulbright, adheres to its duty of loyalty under the New York ethics rules. Accordingly, Staples has standing to bring this motion.

## CONCLUSION

For the foregoing reasons, Staples should be allowed to intervene for the limited purpose for moving for disqualification of Fulbright, and Fulbright should be disqualified from representing NEC in this proceeding. Should the Court feel that disqualification is not appropriate given the circumstances, at the very least Staples should be protected from any further direct involvement in the case. Moreover, regardless of the Court's ruling, Staples should be made whole with an award of the costs and fees it has incurred in addressing the conflict issue.

---

[20] In applying the standard promulgated by the Second Circuit for intervention as of right under Rule 24(a), the court in *Cole* found that Cyan: (1) filed a timely motion; (2) demonstrated an interest in the litigation; (3) demonstrated that its interest may be impaired by the disposition of the action; and (4) demonstrated that its interest is not adequately protected by the parties to the action. *Id.* (citing *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197 (2d Cir. 2000)).

Dated: April 2, 2009
     New York, New York

Respectfully submitted,

PROSKAUER ROSE LLP,

By:/s/Steven C. Krane

     Steven C. Krane
     Lawrence S. Elbaum
     1585 Broadway
     New York, New York 10036-8299

*- and -*

Julia Huston (*pro hac vice* motion pending)
Peter J. Karol (*pro hac vice* motion pending)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110-1618

Attorneys for Staples, Inc., Non-Party Movant