IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
NATIONAL ENVELOPE CORPORATION   :
    and                              :
NATIONAL ENVELOPE-WH LLC,        :
     *Plaintiffs*,                   :
                                 :  Civil Action No. 1:06-CV- 12988 (SHS/RLE)
       -against-           :
                                 :
AMERICAN PAD & PAPER LLC,        :
     *Defendant.*               :
------------------------------------------------------- x

## PLAINTIFFS' OPPOSITION TO STAPLES'S
## MOTION TO INTERVENE AND TO DISQUALIFY

Mark N. Mutterperl
Colin Foley
Chehrazade Chemcham
Fulbright & Jaworski L.L.P.
666 Fifth Avenue
New York, New York 10103
Telephone:  (212) 318-3000
Facsimile:  (212) 318-3400

J. Jeffery Richardson
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Telephone:  (214) 855-8121
Telephone:  (214) 855-8200

Dated: April 16, 2009           Attorneys for Plaintiffs National Envelope
                                   Corporation and National Envelope-WH LLC

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

FACTUAL BACKGROUND ....................................................................................................... 2

    A.    Based largely upon Ampad's filings with the PTO and the PTO's suspension of Staples's trademark application, Fulbright determined that Ampad, not Staples, was the adverse party............................................................ 2

    B.    A law firm other than Fulbright (the Dunner Law Firm) filed a petition with the PTO to cancel Staples's registration and Staples stated this lawsuit is not dispositive of the cancellation proceeding...................................... 3

    C.    Plaintiffs determined that discovery from Staples was necessary in 2008 and Fulbright followed the ABA Opinion to comply with its ethical requirements.................................................................................................. 4

    D.    Plaintiffs hired Goodwin Procter to seek discovery from Staples ......................... 4

ARGUMENT ............................................................................................................................... 6

I.    INTERVENTION SHOULD BE DENIED BECAUSE IT IS UNTIMELY ................... 6

II.    DISQUALIFICATION IS DISFAVORED ..................................................................... 9

III.    BECAUSE STAPLES FAILS TO SHOW THAT THE TRIAL  WOULD BE TAINTED, THE MOTION SHOULD BE DENIED ...................................................... 10

IV.    A LAWYER CAN REPRESENT A CLIENT WITH INTERESTS ADVERSE TO ANOTHER CLIENT AS LONG AS THE LAWYER DOES NOT REPRESENT ONE CLIENT AGAINST ANOTHER IN THE SAME ACTION .......... 12

V.    THE "PER SE" OR "PRIMA FACIE" RULE DOES NOT APPLY BECAUSE FULBRIGHT HAS NOT SUED STAPLES.................................................................... 13

VI.    GOODWIN PROCTER SEEKING DISCOVERY FROM STAPLES DOES NOT CREATE A CONFLICT BETWEEN STAPLES AND FULBRIGHT ......................... 14

    A.    No conflict existed or could be identified at the outset of the lawsuit................. 15

    B.    Once discovery from Staples was  required, Fulbright followed the ABA Opinion ................................................................................................................ 17

VII.    PROTECTIVE ORDER BREACH DOES NOT SUPPORT DISQUALIFICATION .................................................................................................. 20

VIII.    THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS WOULD BE PREJUDICED BY THE DISQUALIFICATION OF THEIR CHOSEN COUNSEL ....................................................................................................................... 20

CONCLUSION............................................................................................................................ 23

TABLE OF AUTHORITIES

Page(s)

CASES

*Board of Education v. Nyquist,*
    590 F.2d 1246 (2d Cir. 1979)...................................................................10, 11

*British Airways, PLC v. The Port Authority of New York & New Jersey*,
    862 F. Supp. 889 (E.D.N.Y. 1994) .......................................................1, 13, 14

*Cinema 5, Ltd. v. Cinerama, Inc.,*
    528 F.2d 1384 (2d Cir. 1976)...................................................................13, 14

*Hempstead Video, Inc. v. Inc. Village of Valley Stream,*
    409 F.3d 127 (2d Cir. 2005)..............................................................................9

*Leber Assocs., LLC v. The Entertainment Group Fund, Inc.,*
    No. 00 Civ. 3759, 2001 U.S. Dist. LEXIS 20352 (S.D.N.Y. Dec. 7, 2001).....................11

*Occidental Hotels Management B. V. v. Westbrook Allegro L.L.C.,*
    440 F. Supp. 2d 303 (S.D.N.Y. 2006)...............................................................9

*Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*,
    No. 01 CV 1574 (ILG)(RML), 2006 WL 2013471 (E.D.N.Y. July 18, 2006).................21

*Travelers Indemnity Co. v. Gerling Global Reinsurance Corp.,*
    99 Civ. 4413, 2000 U.S. Dist. LEXIS 11639 (S.D.N.Y. Aug. 15, 2000) ...................13, 14

*Tylena M. v. Heartshare Human Services*,
    No. 02Civ.8401 (VM)(THK), 2004 WL 1252945 (S.D.N.Y. June 7, 2004).........20, 21, 22

*U.S. v. Newman*,
    534 F. Supp. 1113 (S.D.N.Y. 1982)...................................................20, 21, 22

*U.S. v. Stein*,
    410 F. Supp. 2d 316 (S.D.N.Y. 2006)...................................................17, 19

*W.T. Grant Co. v. Haines*,
    531 F.2d 671 (2d Cir. 1976)................................................................20, 21, 22

RULES AND STATUTES

Rule 1.7(a), NEW YORK RULES OF PROFESSIONAL CONDUCT .......................................................12

Comment 6, Rule 1.7, NEW YORK RULES OF PROFESSIONAL CONDUCT........................................12

Comment 24, Rule 1.7, NEW YORK RULES OF PROFESSIONAL CONDUCT....................................12

OTHER AUTHORITIES

ABA Formal Op. 92-367 (1992)................................................................................2, 4, 14, 17, 19

National Envelope Corporation and National Envelope-WH LLC ("Plaintiffs") file this opposition to Staples, Inc.'s motion to intervene and to disqualify Fulbright & Jaworski L.L.P. ("Fulbright") from acting as Plaintiffs' counsel in this case.

<u>INTRODUCTION</u>

Staples's motion to intervene should be denied because the motion is untimely. Defendant American Pad & Paper LLC ("Ampad") notified Staples in August of 2006 of facts related to the purported conflict. Two years later, in August of 2008, Fulbright notified Staples about the need for discovery in this case. Also in August of 2008, the Dunner Law Firm (not Fulbright) filed an action in the United States Patent and Trademark Office ("PTO") on behalf of Plaintiffs against Staples, an action which Staples claims created or exacerbated a conflict. In spite of this knowledge, Staples did not move to intervene until April 2, 2009. Because Staples chose to wait until April of 2009 (after the fact discovery deadline), the motion to intervene should be denied.

If the Court permits Staples to intervene, Staples's motion to disqualify should be denied because Staples fails to meet the requirements for disqualification. First, a disqualification movant such as Staples must show that the trial in this matter would be tainted by the representation. Staples fails to show any taint. Second, the prohibition against simultaneous representation does not apply where a lawyer such as Fulbright represents clients with adverse interests as long as the lawyer does not represent one client adversely to another client in the same action. Third, Staples invokes the "*per se*" or "*prima facie*" rule, but that rule only applies when an attorney is actively suing his or her client. Since Fulbright is not suing Staples and is not representing anyone in an action adverse to Staples, the "*per se*" or "*prima facie*" rule does not apply.

Fourth, Fulbright followed the guidance of the ABA Committee On Ethics and

Professional Responsibility, Formal Op. 92-367 (1992) (the "ABA Opinion") in determining how to proceed in order to enable Plaintiffs to obtain discovery from Staples. Plaintiffs hired a separate law firm and the undisputed evidence shows that Goodwin Procter made its own determinations about what to do in seeking and negotiating for discovery. Plaintiffs' use of a separate law firm to pursue discovery from Staples is permissible and appropriate. Staples's basis for suggesting that the ABA Opinion does not apply – because Fulbright should have identified the purported conflict – does not comport with the facts. Fulbright did not identify, and could not have identified, the purported conflict identified by Staples's counsel because the Trademark Trial and Appeal Board ("TTAB") suspended Staples's trademark application for "PULL & SEAL" ten months before the lawsuit was filed. The first time that the purported conflict identified by Staples's counsel could have been identified by Fulbright was after May 22, 2008, when Staples filed a request for registration of the trademark after the PTO cancelled Ampad's trademark at Ampad's request, but that was 18 months after this case had been filed. As a result, the ABA Opinion provided a reasoned approach to obtaining discovery.

Finally, even if a conflict existed, the motion to disqualify should be denied because of the prejudice that Plaintiffs would suffer if their chosen counsel were replaced at this late date.

<u>FACTUAL BACKGROUND</u>

Plaintiffs filed this lawsuit on November 7, 2006, seeking damages and an injunction to prevent Ampad from manufacturing and selling products using the name PULL & SEAL and for breach of contract.

A.   Based largely upon Ampad's filings with the PTO and
the PTO's suspension of Staples's trademark application,
<u>Fulbright determined that Ampad, not Staples, was the adverse party</u>

After Plaintiffs discovered that Ampad was manufacturing and selling envelopes using the name PULL & SEAL, Fulbright began an investigation of relevant facts to help Plaintiffs

protect the PEEL & SEEL trademark.  (Declaration of Mark Mutterperl ("Mutterperl decl."), ¶ 5.)  Fulbright learned that Ampad filed its application for trademark registration on October 3, 2005.  (*Id*., ¶ 6.)  Fulbright also learned that Staples had applied for trademark registration, but that on January 19, 2006, the PTO suspended Staples's application because Ampad asserted that Ampad first used the name on May 15, 2003, years before Staples's used the name.  (*Id*.)  Thus, Ampad had priority in the trademark.  (*Id*.)

Under the PTO rules, Staples could present arguments against the suspension, including that it had prior rights in the trademark, but it did not do so.  (*Id*.)  Fulbright concluded that the entity that Plaintiffs needed to be adverse to, and to challenge, was Ampad and not Staples.  (*Id*., ¶ 9.)  At the time of filing the lawsuit, Fulbright did not anticipate that discovery would be needed from Staples or any other retailer.  (*Id.*, ¶ 10.)  Fulbright believed that NEC could obtain all necessary discovery from Ampad.  (*Id.*)  In fact, NEC has not sought discovery from any retailer who purchases PULL & SEAL products from Ampad other than Staples.  (*Id.*)  Staples had no apparent trademark rights in PULL & SEAL and no basis for obtaining a trademark registration in PULL & SEAL because, among other reasons, Ampad had prior use of the name. (*Id.*)

On January 22, 2008, the PTO refused registration of Staples's alleged mark because Ampad's mark had been registered previously.  (*Id.*, ¶ 13.)  After the PTO cancelled Ampad's registration (at Ampad's request) on April 15, 2008, Staples asked the PTO to register its PULL & SEAL mark on May 22, 2008.  (*Id.* ¶¶ 14-15.)  On July 1, 2008, the PTO issued a registration to Staples.  (*Id.* ¶ 15.)

B.     A law firm other than Fulbright (the Dunner Law Firm) filed a
       petition with the PTO to cancel Staples's registration and Staples
       stated this lawsuit is not dispositive of the cancellation proceeding

On August 19, 2008, on behalf of National Envelope Corporation, the Dunner Law Firm,

and not Fulbright, filed a petition to cancel Staples's registration with the TTAB.  (Mutterperl decl., ¶ 16.)  On August 28, 2008, that same law firm filed a motion to stay the proceedings with the TTAB.  (*Id*.; Cotter decl., exs. A, B.)

On September 16, 2008, Staples filed a response in which it stated that it did not oppose suspension of the proceeding.  (Mutterperl decl., ¶ 17.)  In the response, Staples stated that this lawsuit is not "'dispositive' of this cancellation proceeding."  (Cotter decl., ex. C.)  The matter was stayed and no further proceedings have occurred before the TTAB.  (Mutterperl decl., ¶ 17.)

> C.   Plaintiffs determined that discovery from Staples was necessary in 2008 and Fulbright followed the ABA Opinion to comply with its ethical requirements

In 2008, Plaintiffs determined that the Plaintiffs needed to take discovery from Staples after taking discovery from Ampad.  (Mutterperl decl., ¶ 19.)  Because Staples was a firm client, Fulbright asked Staples whether it wanted a law firm other than Fulbright to serve discovery on and take discovery from Staples.  (*Id*., ¶ 20.)  Staples said a law firm other than Fulbright should handle the discovery.  (*Id*., ¶ 21.)  Fulbright did not serve a subpoena on Staples and did not attempt to serve a subpoena on Staples.  (*Id*.)  Fulbright decided that it would follow the American Bar Association's relevant opinion in dealing with the Staples's discovery.  (*Id*., ¶ 19.)

> D.   Plaintiffs hired Goodwin Procter to seek discovery from Staples

Recognizing that Fulbright should not cross-examine Staples and should not issue and negotiate the scope of a subpoena with Staples, on or about September 2, 2008, Plaintiffs hired Goodwin Procter LLP ("Goodwin"), specifically R. David Hosp at Goodwin, to obtain discovery from Staples in this case.  (Declaration of R. David Hosp ("Hosp decl."), ¶¶ 3-4.)  Goodwin's representation of Plaintiffs is and has been genuine.  (*Id*., ¶ 5.)  Goodwin is not "Fulbright's agent" that "takes its instructions directly from Fulbright."  (Hosp. decl. ¶ 5)  Goodwin discusses strategic issues with NEC.  (*Id*., ¶ 6.)  Fulbright does not direct Goodwin's representation of

NEC in this matter.  (*Id*., ¶ 6.)

On September 8, 2008, Goodwin issued a subpoena to Staples.  (*Id*., ¶ 8.)  The subpoena was returnable to Goodwin.  (*Id*.)  Staples's initial response to the subpoena for documents and deposition came from Brenda Cotter, in-house counsel for Staples.  (*Id*., ¶ 9.)  In a September 18, 2008 letter, Ms. Cotter stated that "Staples hopes that we can proceed cooperatively with respect to responding to that subpoena" and while it "must protect itself by making appropriate objections, it is very willing to engage in a cooperative process."  (*Id*., ex. 2.)  Staples did not initially object to the subpoena on conflict of interest grounds.  (*Id*. 9.)

Mr. Hosp directly negotiated with both Staples's in-house counsel and outside counsel to limit the scope of the subpoena to reduce any burden without prejudicing Plaintiffs' need for appropriate discovery.  (*Id*. ¶ 10.)  Mr. Hosp had the authority for such negotiations, subject to confirmation from Plaintiffs.  (*Id*.)  Eventually, Staples agreed to produce and actually did produce documents responsive to the subpoena issued by Goodwin.  (*Id*.)

Goodwin reviewed and analyzed the documents produced by Staples for the purpose of preparing to take the Rule 30(b)(6) deposition of Staples, which Staples has refused to schedule.  (*Id*., ¶ 11.)  This review, analysis and preparation was done without input, direction or discussion with Fulbright.  (*Id*.)

In addition, Fulbright and Goodwin never discussed who should be deposed in the case, what position or level of employee at Staples would likely have relevant information, or what documents to use at the Staples deposition.  (*Id*. ¶ 12.)  All of these issues, among others, were discussed exclusively between Goodwin and Plaintiffs and Hosp made decisions about how to proceed based on his conversations with Plaintiffs and his judgment as Plaintiffs' counsel.  (*Id*.)

On November 10, 2008, Staples's outside counsel, Bromberg & Sunstein, served formal

written responses and objections to the subpoena and produced 166 pages of documents.  (*Id.*, ¶ 13.)  In General Objection No. 14, Staples stated that it did not waive its right to object to the subpoena on conflict of interest grounds relating to Fulbright's representation of Plaintiffs.  In later correspondence, Staples explicitly agreed to produce a witness for a deposition.  (*Id.*)

In the six months after the subpoena was served on Staples, Staples did not refuse to produce a witness or refuse to produce documents based on any purported conflict of interest on Fulbright's part.  (*Id.*, ¶ 14.)  Staples only refused to produce a witness based on a purported conflict of interest after Goodwin moved to compel the production of a Staples Rule 30(b)(6) deposition witness because of an impending discovery deadline.  (*Id.* ¶ 15.)  Goodwin, not Fulbright, made the decision to move to compel the deposition.  (*Id.* ¶ 14.)  Goodwin, not Fulbright, briefed and argued that motion before the United States District Court for the District of Massachusetts.  (*Id.*)  Fulbright did not draft the motion to compel filed by Goodwin. (Mutterperl decl., ¶ 24.)

Goodwin and Fulbright have been conscious of and observed the limits of what is proper to discuss in light of Fulbright's representation of Staples in unrelated matters.  (*Id.*, ¶ 26; Hosp decl., ¶ 18.)

<u>ARGUMENT</u>

I.    <u>INTERVENTION SHOULD BE DENIED BECAUSE IT IS UNTIMELY</u>

A Rule 24 motion to intervene must be filed timely.  *E.g., Mastercard Int'l Inc. v. Visa Int'l Serv. Ass'n,* 471 F.3d 377, 390-91 (2d Cir. 2006) (affirming denial of intervention motion because filed five months after notice).  "'If it is untimely, intervention must be denied.'"  *Id.* at 391 (quoting *NAACP v. New York*, 413 U.S. 345, 365 (1973)); *see also D'Amato v. Deutsche Bank,* 236 F.3d 78, 84 (2d Cir. 2001) (affirming denial of intervention motion because filed three months after notice).

Because Ampad put Staples on notice of the facts that Staples claims show a purported conflict two and one-half years before Staples filed its motion and because Staples received further notice seven months before filing its motion to intervene, the motion should be denied. *See Mastercard,* 471 F.3d 377, 390 (motion to intervene five months after notice was untimely); *D'Amato,* 236 F.3d 78, 84 (motion to intervene three months after notice, untimely); *U.S. v. Pitney Bowes*, 25 F.3d 66, 71 (2d Cir. 1994) (motion to intervene 15 months after constructive knowledge, 7 months after actual knowledge, untimely); *U.S. v. New York,* 820 F.2d 554, 557 (2d Cir. 1987) (motion to intervene 15 months after notice, untimely); *Drywall Tapers and Pointers of Greater New York, Local Union 1974 of I.B.P.A.T., AFL-CIO v. Bovis Lend Lease Interiors, Inc., et al.,* 2007 U.S. Dist. LEXIS 68961, at *13 (E.D.N.Y. Sept. 18, 2007) (motion to intervene five months after notice, untimely).

When a movant such as Staples knows about a lawsuit, discusses the lawsuit with a litigant at the time of filing, and waits five months to move for intervention, the intervention should be denied as untimely. *Mastercard,* 471 F.3d at 390 (motion untimely where "[movant] ha[d] been in contact with [Defendant] throughout the course of this litigation, and [Plaintiff's] complaint and other filings . . . are publicly available for anyone to access. . . ."). In addition, when a movant knows of the litigation, but chooses to pursue a different strategy instead of immediately seeking leave to intervene to protect its interests, the motion to intervene should be denied. *Drywall Tapers,* 2007 U.S. Dist. LEXIS 68961, at *14 (motion untimely where "instead of seeking intervention, [movant] chose a different means of attempting to protect its interests").

In this case, Ampad informed Staples over two and one-half years ago that Ampad was concerned that Staples could become "a possible third party" in this lawsuit. On August 11, 2006, Ampad wrote Staples and stated that "in order to protect any of our customer's [s.i.c.] from

becoming a possible third party in a potential suit, [Ampad's lawyers] have recommended we do not forward copies of the letter and our response to this potential claim." (Mutterperl decl., ¶ 27, ex. 6.[1])  In other words, as of August 2006, Staples was on notice of the facts that Staples claims creates the purported conflict.  Staples did not seek to intervene until April of 2009.

In addition to its notice two and one-half years prior to filing its motion to intervene, Staples had further notice of the facts it claims constitute a conflict.  In August of 2008, Fulbright notified Staples about the need for discovery in this case.  (*Id.*, ¶ 20.)  On August 19, 2008, Plaintiffs (represented by the Dunner Law Firm) filed a petition to cancel Staples's PULL & SEAL registration with the TTAB (one of the purported bases of the purported conflict).  (*Id.*, ¶ 16.)  Instead of filing a motion to intervene after learning that Plaintiffs sought discovery from Staples and after the action was filed against Staples by Plaintiffs in the TTAB, Staples informed David Hosp of Goodwin Proctor LLP, on September 18, 2008, that "Staples hopes that we can proceed cooperatively with respect to responding to that subpoena."  (Hosp decl. ¶ 9; ex. 2.)

Since at least August 2006, Staples has had knowledge of the facts that it claims create a purported conflict and yet it waited to file its motion to intervene until after the close of discovery.  Although Staples proffers various excuses for why it waited to file its motion to intervene, the motion should be denied because Staples provides no excuse for delaying its motion to intervene from August 2006 until August of 2008, and its excuses for delaying its motion to intervene from August of 2008 until April of 2009 were tactical decisions that prejudice Plaintiffs (*see* section VIII) and that do not avoid denial of the motion to intervene. *See, e.g., Mastercard,* 471 F.3d at 390 (motion untimely where movant knew of lawsuit, discussed lawsuit with a litigant at the time of filing the lawsuit, and waited five months to move

---

[1] The letter from Ampad to Staples was produced by Ampad during discovery in this lawsuit.

for intervention); *Drywall Tapers,* 2007 U.S. Dist. LEXIS 68961, at *14 (motion untimely where "instead of seeking intervention, [movant] chose a different means of attempting to protect its interests").  The motion to intervene should be denied.

## II.     DISQUALIFICATION IS DISFAVORED

Motions to disqualify are "generally viewed with disfavor because disqualification of counsel impinges on a party's right to employ counsel of choice, and such motions are often interposed for tactical purposes."  *Sumitomo Corp. v. J.P. Morgan & Co., Inc.,* Nos. 99 Civ. 8780 (JSM), 99 Civ. 4004 (JSM) 2000 U.S. Dist. LEXIS 1252, at *7 (S.D.N.Y. Feb. 8, 2000) (denying motion to disqualify where lawyer represented clients adverse to each other, but did not represent either client in the lawsuit where the clients were adverse).  Courts are reluctant to grant motions to disqualify because granting motions to disqualify "'inevitably cause delay.'" *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 792 (2d Cir. 1983) (reversing disqualification) (quoting *Board of Education of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).

Movants are held to a high standard of proof because "disqualification has an immediate adverse effect on the client by separating [the client] from counsel of [its] choice."  *Nyquist*, 590 F.2d at 1246.  "The party moving for disqualification must meet a 'high standard of proof' before opposing counsel will be disqualified."  *Correspondent Services Corp. v. J.V.W. Investment Ltd.*, No. 99 Civ. 8934 (RWS), 2000 WL 1174980, at *10 (S.D.N.Y. Aug. 18, 2000) (denying motion to disqualify).  The "moving party bears the burden of establishing the need for disqualification." *Id*.

"Although [Second Circuit] decisions on disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules, such rules … merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification."  *Hempstead Video, Inc. v. Inc. Village of Valley Stream,* 409 F.3d 127,

132 (2d Cir. 2005) (affirming denial of motion to disqualify) (citations omitted).

III.   **BECAUSE STAPLES FAILS TO SHOW THAT THE TRIAL
        WOULD BE TAINTED, THE MOTION SHOULD BE DENIED**

In order to support disqualification, a movant must show that an attorney's conduct would "taint" the underlying trial. *Nyquist,* 590 F.2d at 1247 (affirming denial of motion to disqualify where no evidence of unfair advantage or representation "anything less than vigorous"); *see also Occidental Hotels Mgmt. B. V. v. Westbrook Allegro L.L.C.,* 440 F. Supp. 2d 303, 309 (S.D.N.Y. 2006) (denying motion to disqualify); *Medical Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC,* 542 F. Supp. 2d 296, 316 (S.D.N.Y. 2008) (denying motion to disqualify because movant failed to show taint and because substantial prejudice would result by disqualifying the lawyer close to the end of discovery). When a movant fails to show a threat of taint, the motion to disqualify should be denied. *Bottaro v. Hatton Assocs.*, 680 F.2d 895, 896 (2d Cir. 1982); *W.T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976) ("The business of the court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice here unless the questioned behavior taints the trial of the cause before it"); *United States Football League v. National Football League*, 605 F. Supp. 1448, 1463 n. 31 (S.D.N.Y. 1985) ("Courts are not policemen of the legal profession; that is a matter for the disciplinary arm of the bar. Disqualification is granted to protect the integrity of the proceedings, not to monitor the ethics of attorneys' conduct").

The "trial taint" required for disqualification is either: (1) "where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client," or (2) "where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, . . . thus giving his present client an unfair advantage." *Nyquist,* 590 F.2d at 1246. Staples fails to identify any "trial taint."

With respect to the first type of taint ("the court's confidence in the vigor of the attorney's representation"), Staples fails to show how Fulbright has failed, or would fail, to vigorously represent the Plaintiffs.  "[D]isqualification is only appropriate . . . where the attorney's conflict undermines a court's confidence in the vigor of the attorney's representation of [the attorney's] client."  *Sumitomo Corp.*, 2000 U.S. Dist. LEXIS 1252, at *11.  Staples's motion to disqualify itself indicates that Fulbright has been vigorously representing Plaintiffs and will continue to vigorously represent Plaintiffs.  *Id*. at *12.  Further, because the issues in this case are unrelated to the issues in the matters where Fulbright represents Staples, Fulbright's representation will not be adversely impacted by the representation of both clients and the motion to disqualify should be denied.  *Id*.  Finally, the status of Staples as a non-party to this lawsuit supports the denial of the motion to dismiss.  *See Leber Assocs., LLC v. Entertainment Group Fund, Inc.,* No. 00 Civ. 3759, 2001 U.S. Dist. LEXIS 20352, at *23 (S.D.N.Y. Dec. 7, 2001) (non-party status of movant identified as reason to deny motion to disqualify).  As a result, the motion to disqualify should be denied.

Under the second potential "trial taint," Staples fails to show how Fulbright would be in a position to use Staples's privileged information to provide an unfair advantage to Plaintiffs. Staples does not suggest that Fulbright has ever represented it with respect to trademarks generally, or the trademark at issue in this case specifically.  Staples alleges that Fulbright possesses information such as Staples's "trial strategy, cost benefit analyses, internal policies[,] . . . strategic styles of lawyers in the Staples in-house law department, . . . and Staples' business goals and risk tolerance."  (Staples Br. at 13.)  Even if Fulbright possessed such information, that information would not provide Plaintiffs with an unfair advantage in this lawsuit against Ampad. This is a lawsuit between Plaintiffs and Ampad.  The internal policies and business goals of

Staples could not affect this proceeding and do not pose a conflict of interest to merit disqualification.  Therefore, no trial taint exists and the motion to disqualify should be denied.

IV.    A LAWYER CAN REPRESENT A CLIENT WITH INTERESTS
       ADVERSE TO ANOTHER CLIENT AS LONG AS THE LAWYER DOES
       NOT REPRESENT ONE CLIENT AGAINST ANOTHER IN THE SAME ACTION

Staples mistakenly relies upon Rule 1.7(a) of the NEW YORK RULES OF PROFESSIONAL CONDUCT to argue that disqualification is necessary.  "No decision, however, has found that the . . . prohibition against simultaneous representation extends to the situation" where a lawyer such as Fulbright represents one client such as Plaintiffs against a nonclient in one case and in a different case a different lawyer represents the first client (Plaintiffs) against a second client such as Staples in another lawsuit.  *Sumitomo*, 2000 U.S. Dist. LEXIS 1252, at *10-11 (denying motion to disqualify where lawyer represented clients adverse to each other, but did not represent either client in the lawsuit where the clients were adverse); *see also Medical Diagnostic Imaging,* 542 F. Supp. 2d at 307 n.13 (lawsuit where lawyer did not represent either party where the parties were directly adverse could not provide a basis for disqualification).

"The mere fact that advocating a legal position on behalf of one client might create precedent adverse to the interests of a client represented by the lawyer in an unrelated matter does not create a conflict of interest."   Comment 24, Rule 1.7, NEW YORK RULES OF PROFESSIONAL CONDUCT.  "[S]imultaneous representation in unrelated matters of clients whose interests are only economically adverse," does not create a conflict.  Comment 6, Rule 1.7, NEW YORK RULES OF PROFESSIONAL CONDUCT.  *See also In re Congoleum Corp.*, 426 F.3d 675, 688 (3d Cir. 2005) ("Comments to the ABA version of this rule [1.7] explain …. a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter").

As the court explained in a case where a similar motion was denied, "[w]hile one can understand that [the movant's] in-house counsel might be unhappy that a law firm which

represents it in some matters was taking a position in litigation involving another client that, if adopted, would prejudice an argument that [the movant] was advancing in a separate case, that does not mean that the law firm is violating a confidence of its client or engaging in unethical conduct." *Sumitomo Corp.*, 2000 U.S. Dist. LEXIS 1252, at *12-13 (denying motion to disqualify).

The brief filed by a lawyer (not Fulbright) for Plaintiffs in the TTAB proceeding arguing that this lawsuit is dispositive of the TTAB proceeding does not support disqualification because Staples itself replied "that the outcome of [this lawsuit] is not … 'dispositive' of [the TTAB] cancelation proceeding." (Cotter decl., ex. C.) With the parties in disagreement in the TTAB proceeding about whether this lawsuit is dispositive of the TTAB proceeding, the arguments advanced in the TTAB about the effect of this lawsuit on the TTAB proceeding do not support disqualification. Even if this case were dispositive of the TTAB action, the motion to disqualify should be denied. *See Sumitomo Corp.*, 2000 U.S. Dist. LEXIS 1252, at *12-13 (argument in one case that negatively impacts a client in another matter does not support disqualification); Comment 6, 12, Rule 1.7, New York Rules of Professional Conduct.

V.    THE *"PER SE"* OR *"PRIMA FACIE"* RULE DOES NOT
      <u>APPLY BECAUSE FULBRIGHT HAS NOT SUED STAPLES</u>

In support of its Motion for Disqualification, Staples argues that the *"per se"* or *"prima facie"* rule requires disqualification. (Br. at 16-18 citing *Cinema 5, Ltd. v. Cinerama, Inc.,* 528 F.2d 1384, 1387 (2d Cir. 1976); *British Airways, PLC v. Port Auth. of New York and New Jersey,* 862 F. Supp. 889, 893 (E.D.N.Y. 1994); *Travelers Indemnity Co. v. Gerling Global Reinsurance Corp.,* 99 Civ. 4413, 2000 U.S. Dist. LEXIS 11639 (S.D.N.Y. Aug. 15, 2000)). The *"per se"* or *"prima facie"* rule, however, only applies "[b]ased on the analysis and holding of *Cinema 5, . . .* when the attorney whose disqualification is sought is actively suing his client in other related, or

non-related actions."  *British Airways,* 862 F. Supp. at 893; *see also Brown & Williamson Tobacco Corp. v. Pataki*, 152 F. Supp. 2d 276, 281 (S.D.N.Y. 2001) (denying motion to disqualify explained that *Cinema 5* prohibits "adverse concurrent representation against an existing client"); *Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp. 2d 449, 452 (S.D.N.Y. 2000) (in denying motion to disqualify explained that the *per se* rule in *Cinema 5* prohibits "an attorney to participate in a lawsuit against his or her own client").  In fact, each of the cases cited by Staples in support of the application of the *"per se"* or *"prima facie"* rule involved a lawyer who was suing a client or a client's affiliate.  *See Cinema 5, Ltd.,* 528 F.2d 1384 (lawyer was a partner in law firm that represented the plaintiff and was a partner in a different law firm that represented defendant); *British Airways,* 862 F. Supp. 889 (plaintiff's lawyer sued current client); *Travelers,* 2000 U.S. Dist. LEXIS 11639 (plaintiff's lawyer also represented defendant's affiliate); *Correspondent Services*, 2000 WL 1174980, at *10 (motion to disqualify denied because lawyer did not represent movant who was a party to the lawsuit); *Flather v. United States Trust Co. of New York*, No. 93 Civ. 7504 (RPP), 1994 WL 376088 (S.D.N.Y. Jul. 15, 1994) (plaintiff lawyer also represented defendant).  That is not the circumstance in this case. Fulbright has not sued Staples.  Therefore, the *"per se"* or *"prima facie"* rule does not apply and the motion should be denied.  *E.g. British Airways,* 862 F. Supp. at 893.

## VI.   GOODWIN PROCTER'S REQUEST FOR DISCOVERY FROM STAPLES DOES NOT CREATE A CONFLICT BETWEEN STAPLES AND FULBRIGHT

Goodwin Procter instead of Fulbright has represented Plaintiffs in seeking discovery from Staples.   (Mutterperl decl., ¶¶ 21-26; Hosp decl., ¶ 5.)   Staples complains that the applicable ABA Opinion (ABA Committee On Ethics and Professional Responsibility, Formal Op. 92-367 (1992)) that Fulbright relied upon in deciding how to proceed when Plaintiffs and Fulbright determined that discovery was needed from Staples does not provide protection from

disqualification (a) because Fulbright should have recognized a conflict at the beginning of the lawsuit and (b) because Goodwin Procter is an agent of Fulbright.  (Staples Br. at 9, 20-21.) Both assertions are false.

A.    No conflict existed or could be identified at the outset of the lawsuit.

The purported conflict identified by Staples's counsel could not have been identified prior to the lawsuit and could not have been identified by Fulbright until after May 22, 2008, the date when Staples again requested trademark registration after its registration had been refused.

In 2006, Fulbright analyzed the relevant facts to help Plaintiffs protect the PEEL & SEAL trademark.  (Mutterperl decl., ¶ 5.)  When Plaintiffs filed suit against Ampad in November 2006, Fulbright did not identify, and could not have identified, any adversity to Staples because (1) the PTO had determined that Ampad had prior rights in the PULL & SEAL name over Staples (and had suspended Staples's request for trademark registration as a result) that would prevent Staples from obtaining trademark registration in the PULL & SEAL name; (2) in the 10 months between the PTO's suspension of Staples's application for trademark registration and the filing of this lawsuit, Staples could have challenged the suspension, but it did not; (3) Ampad's response to Fulbright's cease and desist letter indicated that Ampad was the owner of the alleged PULL & SEAL mark and that it had been using the name since 2003, well before Staples claimed first use in 2005; and (4) Ampad's response to Fulbright's cease and desist letter did not identify Staples as the owner of the alleged PULL & SEAL trademark.  (*Id.,* ¶¶ 6-10, 12.) Because of these factors, Fulbright reasonably believed that no conflict with Staples existed. (*Id*., ¶ 12.)  Staples appeared to have abandoned its claim to the ownership of the trademark. (*Id*., ¶ 9.)  Staples did not take any of the steps that a trademark owner probably would have taken upon learning that another company (Ampad) was applying to register a mark that someone else (Staples) allegedly owned.  (*Id.*)  Because Ampad manufactured and supplied the

PULL & SEAL products to retailers using Ampad's own alleged trademark PULL & SEAL, Plaintiffs did not need to be adverse to any retailer in order to protect the PULL & SEAL trademark.  (*Id.*)  In addition, Fulbright did not believe that discovery would be necessary from Staples or any other retailer that sold products Ampad manufactured and sold under the PULL & SEAL name.  (*Id.*, ¶ 10.)  In fact, no discovery has been sought from any retailer other than Staples. (*Id.*)

On August 7, 2007, the PTO issued a registration to Ampad for PULL & SEAL.  (*Id.,* ¶ 13.)  On January 22, 2008, the PTO refused registration of Staples's alleged mark because Ampad's mark had been registered.  (*Id.*)  The PTO cancelled Ampad's registration[2] on April 15, 2008, after Ampad relinquished its registration.  (*Id.* ¶ 14.)

On May 22, 2008, Staples asked the PTO to give it a registration for PULL & SEAL.  (*Id.*, ¶ 15.)  On July 1, 2008, the PTO issued a registration to Staples.  (*Id.*)

Between the time when the PTO suspended Staples's application for trademark registration on January 26, 2006, and May 22, 2008, Staples did not take any action before the PTO to overcome the suspension or to avoid the denial of its application.  (Mutterperl decl., ¶¶ 6, 9, 12; ex. 2, pp. 43, 76-77.)  In other words, the purported conflict that Fulbright was supposed to have recognized did not exist and could not have been recognized (if it is a conflict of any type) until after Staples asked the PTO to take action on May 22, 2008, about one and one-half years after Fulbright filed the lawsuit.  Therefore, the ABA Opinion applies and the exception to the ABA Opinion that Staples seeks to invoke does not apply.

---

[2] Although Ampad relinquished its trademark registration, it continues to manufacture and sell products with the PULL & SEAL name on it in violation of Plaintiffs' trademark and Ampad continues to argue that Plaintiffs' trademark is unenforceable.

B.     Once discovery from Staples was required, Fulbright followed the ABA Opinion.

In 2008, Plaintiffs determined that they needed discovery from Staples.   (Mutterperl decl., ¶ 19.)   Plaintiffs and Fulbright did not believe that discovery was necessary from Staples until more than one year after the lawsuit had been filed and after discovery was taken from Ampad.   (*Id.*)   Because Staples was a firm client, Fulbright asked Staples whether Staples wanted another firm to serve discovery on and handle the discovery from Staples.   (*Id.* ¶ 20.)   After Staples decided that it wanted a firm other than Fulbright to handle the discovery, Fulbright followed the ABA Opinion dealing with taking discovery from a third party represented by a lawyer needing discovery in a case.   (*Id.*, ¶¶ 19, 21.)

The pertinent sections of the ABA Opinion concerning how to handle a potential conflict in conducting discovery of a lawyer's client shows that Fulbright did and continues to do what the ABA recommends as the appropriate course of action.   The ABA Opinion states that "...a satisfactory solution may be the retention of another lawyer solely for the purpose of examining the principal lawyer's client."   ABA Opinion at 22-23.   *See also U.S. v. Stein*, 410 F. Supp. 2d 316, 330 (S.D.N.Y. 2006) (denying motion to disqualify because cross-examination of witness would be handled by a separate law firm).   Plaintiffs followed the ABA Opinion.   (Mutterperl decl., ¶¶ 19, 21.)

Staples attempts to impugn Fulbright's conduct by arguing that Goodwin is a mere "agent" of Fulbright that "takes its instructions directly from" Fulbright.   (Staples Br. 9.)   Staples is incorrect.

As an initial matter, Staples's brief ignores the declaration filed by R. David Hosp, a partner at Goodwin, in response to a similar assertion filed by Staples in the United States District Court for the District of Massachusetts.   That declaration filed by Mr. Hosp makes clear that Goodwin is not and has not been an agent of Fulbright and genuinely represents the

Plaintiffs. (Declaration filed in the District of Massachusetts attached as exhibit 7 to Mutterperl decl.) Staples provides no evidence that Mr. Hosp's declaration is untrue. Goodwin's representation of Plaintiffs is and has been genuine. (Hosp decl., ¶ 5.) Goodwin is not "Fulbright's agent" that "takes its instructions directly from Fulbright." (*Id.*)

Goodwin reviewed and analyzed the documents produced by Staples[3] for the purpose of preparing to take the Rule 30(b)(6) deposition of Staples, which Staples has refused to schedule. (*Id.*, ¶ 11.) This review, analysis and preparation was done without input, direction or discussion with Fulbright. (*Id.*) In addition, Fulbright and Goodwin did not discuss who should be deposed in the case, what position or level of employee at Staples would likely have relevant information, or what documents to use at the Staples deposition. (*Id.*, ¶ 12.) Plaintiffs and Mr. Hosp made decisions about how to proceed based on their conversations and Mr. Hosp's judgment as Plaintiffs' counsel. (*Id.*)

Although Staples agreed to produce a Rule 30(b)(6) witness, it eventually refused to produce a witness based on a purported conflict with Fulbright after Goodwin filed a motion to compel the deposition because of an impending discovery deadline in this case. (*Id.*, ¶¶ 14-15.) Goodwin, not Fulbright, made the decision to move to compel the deposition. (*Id.* ¶ 14.) Goodwin, not Fulbright, briefed and argued that motion before the District of Massachusetts. (*Id.*)

Despite allegations to the contrary, Goodwin's interaction with Fulbright has been relatively limited. (*Id.*, ¶ 16.) Fulbright provided Goodwin with background on the matter and the nature of the case and identified arguments made and positions taken by Ampad with respect

---

[3] Staples argues that Plaintiffs sought discovery in this lawsuit to assist the TTAB action even though Staples admits that Plaintiffs do not need to obtain discovery in this case for the TTAB action since discovery is available in that case. (Staples Br. 13 & n. 9.) It is unclear what advantage Staples believes Plaintiffs could have sought by obtaining discovery in this case for the TTAB action when they could obtain discovery in that matter.

to Ampad's relationship with Staples.  (*Id*. ¶ 16.)  Goodwin also discussed scheduling issues with Fulbright and provided periodic updates on the status of Staples's "compliance" with the subpoena.  (*Id*.)  Fulbright also kept Goodwin informed with respect to the status of mediation and settlement negotiations, between Ampad and NEC, which impacted the timing and necessity of bringing a motion to compel.  (*Id*.)  Thus, while Goodwin communicated with Fulbright during the pendency of the Staples subpoena, Fulbright has not directed Goodwin's efforts.  (*Id*.)

On or about January 6, 2009, during a discussion between Goodwin and Julia Huston, Staples's outside counsel, Ms. Huston asked questions regarding whether or not certain documents and information were contained in Ampad's disclosures in this lawsuit.  (Hosp decl., ¶ 17.)  Goodwin had not, and has not, reviewed the entirety of Ampad's disclosures.  (*Id*.)  As a result, Goodwin indicated that it would check with Fulbright.  (*Id*.)  Contrary to Ms. Huston's claims, *see* Huston decl. ¶ 5, Goodwin's need to check with Fulbright about the documents produced by Ampad in this lawsuit did <u>not</u> mean "that Goodwin did not have the authority to negotiate the subpoena issues independently of Fulbright" or "lacked sufficient familiarity with the case to negotiate the proper scope of the subpoena."  (*Id*.)  Instead, it is evidence of the clear division of representation of a common client, namely, Goodwin's role as Plaintiffs' counsel with respect to obtaining discovery from Staples and Fulbright's role as Plaintiffs' counsel with respect to this lawsuit other than the discovery from Staples.  (*Id*.)

Goodwin and Fulbright have been conscious of and observed the limits of what is proper to discuss in light of Fulbright's representation of Staples in unrelated matters.  (*Id*., ¶ 18; Mutterperl decl., ¶ 26.)

Fulbright and Plaintiffs acted in accordance with the reasoned guidance provided by the ABA Opinion.  The motion to disqualify should be denied as a result.  *See e.g. Stein*, 410 F.

Supp. 2d at 330 (denying motion to disqualify because cross-examination of witness would be handled by a separate law firm).

VII.    PROTECTIVE ORDER BREACH DOES NOT SUPPORT DISQUALIFICATION

Fulbright explains in its opposition to the motion for contempt the facts related to the alleged breach of the protective order.  Staples fails to identify any authority for the proposition that a breach of a protective order could support disqualification and Plaintiffs have not found any authority.  Although the documents should not have been used in the deposition without following the procedures in the protective order, Staples did not suffer any injury and does not argue that it actually suffered any injury.  While that does not excuse the use of the documents, it suggests that disqualification should not be based on the disclosure of the documents in the deposition.  Staples's counsel does not identify any case law to support its argument that disqualification should follow from the disclosure of the documents in the deposition.

VIII.   THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS WOULD BE PREJUDICED BY THE DISQUALIFICATION OF THEIR CHOSEN COUNSEL

No conflict exists.  Even if a conflict or perception of a conflict existed, the motion to disqualify should be denied because of the prejudice that Plaintiffs would suffer.

On a motion to disqualify, a court should consider the prejudice that would result to the party threatened with deprivation of its counsel.  *See, e.g., Tylena M. v. Heartshare Human Servs.*, No. 02Civ.8401 (VM)(THK), 2004 WL 1252945, *3 (S.D.N.Y. Jun. 7, 2004) (denying motion to disqualify because "Plaintiffs would suffer severe prejudice should Mr. Lansner or his law firm be disqualified as counsel."); *U.S. v. Newman*, 534 F. Supp. 1113, 1127 (S.D.N.Y. 1982) (denying motion to disqualify observing that prejudice would be suffered by plaintiff).

A party will be prejudiced by disqualification of its counsel if counsel has devoted significant time and resources to a matter, *W.T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir.

1976) (counsel engaged "for well over a year"); proceedings are in an advanced stage, *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, No. 01 CV 1574 (ILG)(RML), 2006 WL 2013471, *8 (E.D.N.Y. Jul. 18, 2006) (discovery to be completed in one month); delay would result from the disqualification, *Newman*, 534 F. Supp. at 1127 (new counsel would need additional time to prepare); or the party losing its counsel would incur additional legal expenses, *W.T. Grant Co.,* 531 F.2d at 677 (substitution of new attorney would result in further expense to party).

Here, if Fulbright were disqualified, Plaintiffs would be prejudiced.  After working on this case for nearly two and one-half years, Fulbright cannot be replaced without inflicting prejudice on Plaintiffs.  (Declaration of John Grymes at ¶ 5 ("Grymes decl.").)  *See Tylena*, 2004 WL 1252945 at *3 (disqualification of counsel who had devoted two and a half years to case would prejudice party).

Plaintiffs would be separated from their counsel at a crucial stage in the proceedings. After twenty-eight months of vigorous litigation, fact discovery has closed, and dispositive motions are due by the end of July 2009.  (Grymes decl., ¶ 5.)  If Fulbright is disqualified at this juncture, Plaintiffs will be deprived of their chosen attorneys.  (*Id*.)  Plaintiffs would be prejudiced as a result.  *See Team Obsolete,* 2006 WL 2013471 at *8 (denying motion to disqualify where discovery to be completed in one month).

Fulbright's disqualification would further prejudice Plaintiffs by escalating their legal costs.  (Grymes decl., ¶ 6.)  Plaintiffs would be forced to retain new counsel at considerable expense.  (*Id*.)  Plaintiffs would have to compensate substitute counsel for the substantial time that substitute counsel would require to familiarize themselves with the case.  (*Id*.)  Deadlines probably would need to be postponed.  (*Id*.)  The added legal expense, however, would result in no further benefit to Plaintiffs.  (*Id*.)  *See W.T. Grant Co.,* 531 F.2d at 677 (substitution of new

attorney would result in further expense to party).

Under these circumstances, a motion to disqualify should be denied because of the prejudice to Plaintiffs.  *See, e.g., W.T. Grant Co.*, 531 F.2d at 677 ("we cannot lightly separate Grant from the counsel of its choice.  Counsel here has been engaged for well over a year in the investigation and preparation of this lawsuit.  Disqualification of present counsel and the substitution of a new attorney unfamiliar with the facts and the law will inevitably result in further harmful delay and expense to Grant."); *Tylena*, 2004 WL 1252945 at *3 (denying motion to disqualify because "[counsel] have invested significant time, energy and resources in pretrial activity since commencing this action over two-and-one-half years ago."); *Newman*, 534 F. Supp. at 1127 (denying motion to disqualify and stating:  "entirely new trial counsel . . . would require a considerable amount of time to prepare this complicated case for trial").

Because Plaintiffs would be prejudiced by Fulbright's disqualification, Staples's motion should be denied.

## <u>CONCLUSION</u>

For the reasons stated, the motion to intervene and to disqualify should be denied.

|  |  |
|---|---|
| | Respectfully submitted, |
| Dated: April 16, 2009 | FULBRIGHT & JAWORSKI L.L.P. |
| New York, New York | |

By:    /s/ Mark N. Mutterperl

Mark N. Mutterperl
Colin Foley
Chehrazade Chemcham
666 Fifth Avenue, 31st Floor
New York, New York  10103
Tel.:  (212) 318-3000
Fax:   (212) 318-3400
E-mails: mmutterperl@fulbright.com
       cfoley@fulbright.com
       cchemcham@fulbright.com

J. Jeffery Richardson
2200 Ross Avenue, Ste. 2800
Dallas, TX 75201
Tel:    214-855-8121
Fax:   214-855-8200
E-mail:   jrichardson@fulbright.com

*Attorneys for Plaintiffs National Envelope Corporation and National Envelope-WH LLC*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of: (1) Plaintiffs' Opposition To Staples's

Motion To Intervene And To Disqualify; (2) Declaration of R. David Hosp, Esq.; (3) Declaration

of Mark N. Mutterperl; and (4) Declaration  of John Grymes were served upon counsel listed

below via the Court's ECF system on April 16, 2009.

Steven E. Ross
1601 Elm Street
Suite 3000
Dallas, Texas 75201
(sross@garder.com)

Anthony Lo Cicero
Marc J. Jason
Amster Rothstein & Ebenstein, LLP
90 Park Avenue
New York, NY 10016
(alocicero@arelaw.com)
(mjason@arelaw.com)

Steven C. Krane
Lawrence S. Elbaum
Proskauer Rose
1585 Broadway
New York, New York 10036
(skrane@proskauer.com)

Julia Huston
Peter J. Karol
Bromberg & Sunstein LLP
125 Summer Street
Boston, MA 02110-1618
(jhuston@bromsun.com)
(pkarol@bromsun.com)

_____/s/ Colin Foley_____