Steven C. Krane
Lawrence S. Elbaum
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
Tel:    212.969.3000
Fax:    212.969.2900

Julia Huston (admitted *pro hac vice*)
Peter J. Karol (admitted *pro hac vice*)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel:    617.443.9292
Fax:    617.443.0004

Attorneys for Intervenor, Staples, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – X

NATIONAL ENVELOPE CORPORATION and
NATIONAL ENVELOPE-WH LLC,

                     Plaintiffs,

         -against-

AMERICAN PAD & PAPER COMPANY OF DELAWARE,
INC. and AMERICAN PAD & PAPER LLC.

                    Defendants.

– – – – – – – – – – – – – – – – – – – – – – – – – – X

Civil Action No. 06 CV 12988
(SHS) (RLE)

**ECF CASE**

**MEMORANDUM IN SUPPORT OF INTERVENOR STAPLES, INC.'S OBJECTIONS TO AND MOTION TO SET ASIDE MAGISTRATE JUDGE ELLIS' MAY 27, 2009 RULING DENYING MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL ON GROUNDS OF CONFLICT OF INTEREST**

SUMMARY ...................................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 4

    A.    Fulbright Is Staples' Long-Standing and Present Counsel............................ 4

    B.    Staples and NEC are Adverse to Each Other, as NEC has Stated that this Litigation is "Dispositive" and "Binding" in Relation to NEC's Claims Against Staples Regarding PULL & SEAL in the TTAB ............................ 6

    C.    Fulbright Undertook Representation of NEC in this Case Knowing that NEC's Interests Were Adverse to the Interests of Fulbright's Existing Client, Staples ..................................................................................................... 7

    D.    Fulbright Inappropriately Sought to Take Discovery of Staples on Behalf of NEC ................................................................................................................ 8

    E.    Staples Has Been Severely Prejudiced by Fulbright's Misconduct and Will Continue to Be Prejudiced Absent Disqualification .................................. 10

    F.    Any Prejudice to NEC Resulting from Disqualification Would Be Minimal, and is Far Outweighed by the Prejudice to Staples and the Court's Interest in Enforcing Ethical Rules ............................................................................. 11

ARGUMENT ................................................................................................................. 12

I.    THE MAGISTRATE JUDGE CLEARLY ERRED IN APPLYING THE WRONG LEGAL STANDARD FOR DISQUALIFICATION............................................. 12

    A.    The New York Rules of Professional Conduct Prohibit Fulbright from Representing Current Clients with Differing Interests................................ 12

    B.    The *Per Se* Rule of Disqualification Applies Because Staples Is A Current Client of Fulbright and the Interests of Staples and NEC are Adverse ...... 13

    C.    The Magistrate Judge Erred in Imposing a Separate Requirement that Staples be a Named Party in Order to Apply the *Per Se* Rule ................................ 16

    D.    The Magistrate Judge Erred in Requiring Staples to Show a "Substantial Relationship," Which is the Test for Former Clients but not Current Clients ........... 21

    E.    ABA Opinion 92-367 Does Not Permit Fulbright to Avoid the Conflict and Further Shows That the Client Need Not Be a Named Party to Show Disqualifying Adversity ............................................................................. 22

II. EVEN UNDER THE INCORRECT "SUBSTANTIAL RELATIONSHIP" TEST FOR FORMER CLIENTS, DISQUALIFICATION IS REQUIRED............................................. 23

III. DISQUALIFICATION IS NECESSARY .............................................................................. 23

IV. REGARDLESS OF HOW THIS MOTION IS DECIDED, STAPLES SHOULD BE MADE WHOLE WITH AN AWARD OF ATTORNEYS' FEES ......................................... 25

CONCLUSION ........................................................................................................................ 25

Pursuant to Fed. R. Civ. P. 72(a), Intervenor Staples, Inc. ("Staples") hereby objects to and moves to set aside the May 27, 2009 ruling of Magistrate Judge Ellis (the "Magistrate Judge") denying Staples' motion to disqualify Fulbright & Jaworski L.L.P. ("Fulbright") from representing the plaintiffs, National Envelope Corporation and National Envelope-WH LLC (collectively, "NEC"), in this action against one of Staples' suppliers, American Pad & Paper Company of Delaware, Inc. and American Pad & Paper LLC (collectively, "Ampad"), which as demonstrated herein is adverse to Staples. As grounds for this motion, as is more fully set forth below, the Magistrate Judge applied the wrong legal standard and treated Staples' motion to disqualify as though Staples were a former client rather than a current client of Fulbright. Accordingly, his order is both clearly erroneous and contrary to law, and must be set aside pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a). In further support of its motion, Staples relies on the papers submitted in support of its motion to disqualify, including the declarations of Brenda M. Cotter ("Cotter Decl.") [D.N. 64] and Julia Huston ("Huston Decl.") [D.N. 63] filed on April 23, 2009.[1]

## SUMMARY

Staples finds itself in the unusual and untenable position of trying to stop Fulbright, Staples' own current attorneys, from litigating against Staples and Staples' interests in this litigation. Staples first became involuntarily embroiled in this matter when it was served with a Rule 30(b)(6) subpoena in this action, a subpoena drafted by Fulbright. Fulbright attempted to serve that subpoena on the same day that Fulbright's other client NEC, the plaintiff in this action, sued Staples in the Trademark Trial and Appeal Board ("TTAB"). In this action, NEC takes the position that Ampad's use of the designation PULL & SEAL is likely to be confused with NEC's mark PEEL & SEEL and therefore infringes NEC's trademark. Likewise, in the TTAB proceeding against Staples, NEC takes the position that Staples' PULL & SEAL designation is likely to be confused with NEC's mark PEEL & SEEL and therefore seeks to cancel Staples' registration for PULL & SEAL. Only nine days after filing the TTAB action,

---

[1] For the convenience of the Court, Staples has provided an appendix containing copies of certain documents from the record and cases that are referenced in this memorandum.

NEC moved to stay the TTAB proceeding stating that this litigation is "binding" on Staples and "dispositive" of NEC's claims against Staples in the TTAB proceeding. In other words, Fulbright is litigating this case for one client, NEC, despite NEC's position that this case binds another client, Staples, to an adverse judgment.

Fulbright has been one of Staples' key law firms and a trusted partner for many years, and is currently handling litigation for Staples. In spite of that, Fulbright is directly adverse to Staples in this litigation including (without limitation) as follows:

- Fulbright is representing NEC in this litigation in which NEC claims that a result in its favor would be "binding" on Staples and "dispositive" of NEC's pending claims against Staples.

- Fulbright drafted and tried to serve Staples with a subpoena that is not a routine non-party discovery request but is more in the nature of party discovery and focuses in large part on Staples' (rather than Ampad's) use and registration of PULL & SEAL.

- Fulbright improperly disclosed not one but three Staples documents produced pursuant to that subpoena which were prominently labeled "CONFIDENTIAL-ATTORNEY'S EYES ONLY."

- A member of the Fulbright Professional Responsibility Committee, not otherwise an attorney of record in this action, jumped into the fray directly to take positions highly adverse to Staples, Fulbright's client, *e.g.,* that the confidential documents that were improperly disclosed were not entitled to confidentiality.

Staples comes before this Court at the direction of Judge Young of the United States District Court for the District of Massachusetts. Staples sought the assistance of the federal court in Massachusetts to quash the subpoena in this action because of, among other things, the violation of the ethical rules barring attorneys from litigating against their own current clients. It is important to note that Judge Young was reviewing the essential conflict with respect to this case and the subpoena issued to Staples, and did not know about the improper document disclosures (which ironically occurred on the same day as the hearing before Judge Young) or Fulbright's other actions directly adverse to Staples following those disclosures. Nonetheless, Judge Young commented as follows:

[T]here are extremely serious <u>allegations of conflict of interest</u> here and I will tell you that I am <u>candidly taken aback by them</u>. <u>They seem to be supported in the record</u>.

> How does Fulbright & Jaworski think they can get around the fact that they are both prosecuting this case on behalf of National Envelope and they represent Staples.
>
> ***
>
> How does Fulbright & Jaworski get around what appears to this Court to be a manifest violation of the conflict of interest policies?
>
> ***
>
> You go back and tell your Fulbright and Jaworski people that I take this conflict of interest matter extraordinarily seriously. And in the Commonwealth of Massachusetts and by derivation in the District Court of Massachusetts, we would take it very seriously. . . . . You will within, you, Staples, will, if you're serious, within two weeks file a motion to disqualify Fulbright and Jaworski in the Southern District of New York . . . on the ground of conflict of interest. . . .

Huston Decl., Ex. 7 (Transcript, pp. 2-3, 7-8) [D.N. 63].[2]

Judge Young accordingly declined to rule on the motion to quash (or the motion to compel that NEC had filed the day before Staples' motion), deferring to this Court to address the fundamental conflict in the case. Judge Young told Staples to file a motion to disqualify in this Court or waive the conflict in this case. Accordingly, since Staples does not wish to authorize its current counsel to litigate against it, Staples came to this Court and filed the instant motion to disqualify.

The Magistrate Judge denied Staples' motion to disqualify, but the basis of his ruling was incorrect as a matter of law. The Magistrate Judge declined to apply the "*per se*" rule of disqualification applicable to situations where a law firm is adverse to a current client because, he ruled, the *per se* rule is inapplicable where the proponent of the motion is technically not a party to this case. There is no case that supports this proposition. On the contrary, it is fundamentally at odds with the applicable ethical rules and case law. The conflict rules apply to the provision of legal services of all types, including corporate transactions and providing legal advice behind the scenes, not just pending litigations. Indeed, according to the Magistrate Judge's ruling, a law firm can take action—any action—adverse to a current client as long as the law firm avoids naming the client as a party. This view is not only incorrect, it is contrary to the duty of undivided loyalty that a lawyer owes a current client and eviscerates the relevant ethical rules and a long line of cases enforcing those rules.

---

[2] It is worth noting that, despite these comments by Judge Young, a Fulbright partner who identified himself as a member of Fulbright's Professional Responsibility Committee stated in a letter to Magistrate Judge Ellis that Judge Young "brushed aside Staples' objections to being deposed." Huston Decl., Ex. 9 [D.N. 63].

3

Instead of applying the correct "*per se*" standard, the Magistrate Judge borrowed the "substantial relationship" test that is applicable to matters adverse to <u>former</u> clients. It permits adverse representation in certain circumstances if the prior representation was unrelated to the present situation. Even apart from the fact that this standard does not apply in any respect to this situation, the facts here warrant disqualification even if this incorrect standard is applied. Fulbright has not merely handled one or two matters for Staples that can be walled off from the present dispute. Fulbright has been one of Staples' key relationship partners and, in that capacity, has been privy to Staples' most sensitive and confidential information including, without limitation, its general litigation, trial and settlement strategies, cost-benefit analyses, internal policies and the strategic styles of lawyers in the Staples in-house legal department, as well as the business goals and risk tolerance of Staples as a company. In this circumstance, even application of the substantial relationship test warrants disqualification.

Despite the fact that Fulbright has aggressively flouted the ethical rules governing conflicts of interest, somehow the burden has fallen squarely – and unfairly – on Staples to try to protect itself. While Judge Young in Massachusetts perceived the conflict issues correctly, the Magistrate Judge applied a legal standard that he created himself, and which is directly contrary to the law of the Second Circuit and this district. Staples requests that this Court apply the *per se* rule and enforce the fundamental ethical precept that counsel owes a duty of undivided loyalty to its current client. The Court must set aside the Magistrate Judge's erroneous ruling and grant Staples' motion for disqualification. In the alternative, if the Court declines to disqualify Fulbright from further representation from NEC, Staples requests that it be protected from any further involvement in this case.

## FACTUAL BACKGROUND

### A. Fulbright Is Staples' Long-Standing and Present Counsel

Fulbright has represented Staples in a significant number of major commercial litigation matters since at least as early as 2002. Indeed, by virtue of this long-standing relationship, the variety and number of cases that it has handled, and the importance of many of those cases to Staples, Fulbright is

viewed by Staples as one of its leading outside law firms. Over just the past few years, Fulbright has billed Staples, and Staples has paid Fulbright, millions of dollars in connection with its representation of Staples. Cotter Decl., ¶ 2 [D.N. 64].

Fulbright has represented Staples in at least seven substantial litigation matters over the last year, and Fulbright's representation of Staples continues to the present. For one example, in January and February of 2009, Fulbright's lawyers spent six weeks with the head of the Staples litigation department and other key Staples personnel in New Jersey trying a major case for Staples. Due to the intensive demands of the trial, Fulbright's attorneys spent nearly every waking hour with the head of the Staples litigation department during this period, communicating about, among other things, trial and settlement strategy, confidential business information, and other highly sensitive matters concerning both that specific trial and Staples' litigation generally. Cotter Decl., ¶ 3 [D.N. 64].

Fulbright's representation of Staples has extended across a wide spectrum of matters, including wage and hour disputes, accounting disputes, tax disputes, general commercial disputes, and class actions. As a result, Fulbright has had access to confidential information from many different business units within Staples, and its lawyers have interacted with many lawyers in Staples' in-house legal department. In short, in connection with its cases, Staples has shared highly confidential information with Fulbright relating to virtually all aspects of Staples' business. Cotter Decl., ¶ 4 [D.N. 64].

In the course of its representation of Staples over many years, Fulbright has also been privy to Staples' general litigation, trial and settlement strategies, cost-benefit analyses, internal policies and the strategic styles of lawyers in the Staples in-house legal department, as well as the business goals and risk tolerance of Staples as a company. As a result of its long-standing relationship with Fulbright, Staples trusted Fulbright with its most intimate and confidential information. Staples never would have revealed such information to Fulbright if Staples thought that the information could end up being wielded against it on behalf of an adversary of Staples. Cotter Decl., ¶ 5 [D.N. 64].

**B. Staples and NEC are Adverse to Each Other, as NEC has Stated that this Litigation is "Dispositive" and "Binding" in Relation to NEC's Claims Against Staples Regarding PULL & SEAL in the TTAB**

On November 9, 2004, Staples applied for federal registration of the designation PULL & SEAL for use with envelopes. The application proceeded to registration on the Supplemental Register on July 1, 2008.[3] Shortly thereafter, on August 19, 2008, NEC petitioned to cancel Staples' registration in the TTAB on grounds of an alleged likelihood of confusion with NEC's PEEL & SEEL mark. Cotter Decl., ¶ 6 and Ex. A [D.N. 64]. On that very same day, in what was clearly a coordinated strategy, Fulbright (through the partner responsible for Fulbright's relationship with Staples) asked Staples to accept service of a subpoena in this litigation. Cotter Decl., ¶ 8 and Ex. D [D.N. 64]. Staples declined to accept it.

NEC almost immediately moved to stay the TTAB proceeding pending the outcome of the instant litigation against Ampad. Cotter Decl., ¶ 7 and Ex. B [D.N. 64]. NEC stated, "This pending civil action involves the same mark and issue that is involved in this cancellation proceeding (*i.e.* likelihood of confusion with the PULL & SEAL mark), and determination of this issue in the federal court will be dispositive of this cancellation proceeding." (emphasis added). *Id.*, ¶ 7 and Ex. B. Indeed, NEC went so far as to state that "the civil action will be binding on the Board." *Id.* (emphasis added). Staples disagreed that the civil litigation against Ampad was dispositive or binding in the TTAB action, but did not otherwise oppose the suspension.[4] *Id.*, ¶ 7 and Ex. C. Given NEC's position that this litigation is "dispositive" of its claims against Staples and "binding" in the TTAB proceeding, there can be no dispute that the interests of Staples and NEC are directly adverse in this matter. The adversity is made even starker by the aggressive manner in which NEC and Fulbright have pursued discovery against Staples, as further detailed below, and by Fulbright's violation of the Protective Order.[5]

---

[3] The Supplemental Register, in contrast to the Principal Register, allows for the registration of descriptive designations.
[4] The fact that Staples disagreed with NEC's position does not make the parties any less adverse, and Fulbright's argument to the contrary set forth in its opposition before the Magistrate Judge is absurd. By Fulbright's twisted logic, if NEC had sued Staples in this proceeding and Staples had contested liability, the parties would similarly not be adverse.
[5] Fulbright's multiple violations of the Protective Order were detailed in Staples' separate motion for contempt [D.N.

## C. Fulbright Undertook Representation of NEC in this Case Knowing that NEC's Interests Were Adverse to the Interests of Fulbright's Existing Client, Staples

Fulbright commenced this proceeding on behalf of NEC on November 7, 2006. At that time, Fulbright knew that NEC's interests in the matter were directly adverse to those of Staples, an existing client of Fulbright, but undertook representation of NEC anyway. At the time Fulbright filed NEC's Complaint against Ampad, Fulbright admits that it knew of Staples' application for PULL & SEAL, which was a matter of public record.[6] Moreover, Fulbright knew at the time the Complaint was filed that Staples was one of the "several nationally recognized brand names" under which Ampad's envelopes were sold, as alleged in Paragraph 22 of the Complaint in this action. Complaint [D.N. 1]; Sealed Document [D.N. 86]. Staples was at that time selling PULL & SEAL envelopes through its hundreds of stores nationwide, its website, and/or its catalogs. *See, e.g.*, Cotter Decl., ¶ 17 and Ex. 8 [D.N. 64] (Staples catalog marked STA 52-55, showing prices through January 15, 2005, featuring PULL & SEAL envelopes and Ampad-branded envelopes).

Fulbright undertook representation of NEC fully aware that NEC's interests were adverse to Staples. Fulbright cannot be heard to complain that the conflict was unforeseeable or arose only recently. Indeed, Fulbright has not accepted or recognized its ethical obligations to Staples in this matter, even with full knowledge of the circumstances of the conflict between Staples and NEC. For example, when Fulbright contacted Staples on August 19, 2008 to inquire whether Staples would accept a subpoena from NEC in this case, the Fulbright attorney stated:

> Discovery indicates that there have been some dealings between AmPad and Staples relating to PULL & SEAL. My colleagues in New York believe they need to do some discovery of Staples relating to those dealings. We do not currently see any adversity between our client and Staples, and of course, we will not be adverse to Staples.

---

68] and supporting declaration and reply brief [D.N. 67 & 84] previously filed in this case.

[6] Fulbright admits that, prior to commencing this lawsuit against Ampad in 2006, it knew that Staples owned a trademark application for PULL & SEAL for envelopes, and that Staples' application had been suspended pending the registration of Ampad's co-pending application for PULL & SEAL for envelopes which was referenced in the Complaint. Fulbright Opposition, p. 3 [D.N. 75]; Mutterperl Decl., ¶ 9 [D.N. 76]. It was not reasonable for Fulbright to believe, if in fact it did believe, that Staples had abandoned any rights it may have in PULL & SEAL as a result of the suspension of its application, because Staples owned an application that had not been abandoned and was also still actively selling products under the PULL & SEAL name. *See* Staples' Reply [D.N. 85] at pp. 11-12.

Cotter Decl., Ex. D [D.N. 64]. Yet, on the very day its counsel sent this email to Staples, NEC filed a Petition for Cancellation against Staples in the TTAB, seeking to cancel Staples' registration for PULL & SEAL on the Supplemental Register based on an alleged likelihood of confusion with NEC's mark PEEL & SEEL. Cotter Decl., Ex. A [D.N. 64]. Fulbright's statement that it failed to "see any adversity" is disingenuous and false. Even after Staples briefed the conflict of interest issue in a proceeding to quash the subpoena and Judge Young of the District of Massachusetts said that "Fulbright & Jaworski . . . appears to this Court to be [in] manifest violation of the conflict of interest policies," Fulbright still continues to take the position that no conflict exists.

This situation stands in stark contrast to other cases in which an unforeseeable conflict with respect to a garden-variety third party subpoena arises after representation of the second client is undertaken, and the conflicted firm appropriately recognizes the conflict and works in good faith towards a solution that protects the rights of the first client. This is not the situation here. The subpoena is not a "garden variety" subpoena, but is rather in the nature of party discovery. Further, Fulbright and NEC went on the offensive against Staples, accusing Staples of "a tactical plan," and even sought (unsuccessfully) to recover attorneys' fees from Staples in the Massachusetts proceeding. Fulbright knew of the adversity between NEC and Staples since before the Complaint in this action was filed, and took the position – then and now – that it could disregard its ethical obligations to Staples without consequences.

### D. Fulbright Inappropriately Sought to Take Discovery of Staples on Behalf of NEC

Staples first learned of Fulbright's conflict when Fulbright sought to serve Staples with a subpoena in this matter. The subpoena and all of the activities surrounding it are outgrowths of Fulbright's fundamental conflict in representing NEC – the fruit of the poisonous tree, as it were. Fulbright acts as though the subpoena were the only problem that the Court needs to address. However, even if it were, quite apart from Fulbright's fundamental conflict in representing NEC, the subpoena standing alone presents a conflict of interest as well.

The subject matter of NEC's subpoena to Staples and the aggressive manner with which it has been pursued illuminate and exacerbate Fulbright's conflict and compellingly demonstrate the adversity between Staples and NEC. On August 19, 2008, the same day that NEC filed its Petition for Cancellation against Staples in the TTAB, Fulbright asked Staples if it would accept a third party subpoena *duces tecum* from Fulbright on behalf of NEC in this litigation. Cotter Decl., ¶ 8 and Ex. D [D.N. 64]. Staples declined to accept it in light of Fulbright's ongoing representation of Staples in other litigation matters. *Id.*, ¶ 9. Shortly thereafter, on or about September 8, 2008, the exact same subpoena was served on Staples by R. David Hosp of the Boston office of Goodwin Procter LLP ("Goodwin"). *Id.*, ¶ 10; Huston Decl., Ex. 2 [D.N. 63]. In its objections to the subpoena, Staples stated, "Staples' response to the Plaintiffs' subpoena shall not be construed as a waiver by Staples of any conflict of interest arising from Fulbright & Jaworski L.L.P.'s representation of Plaintiffs in the underlying matter, or any right Staples may have to object to such a representation." Huston Decl., Ex. 1 [D.N. 63].

Fulbright is wrong in thinking that it can avoid its conflict by retaining other counsel. The retention of Goodwin to serve the subpoena does not alleviate the conflict issue, which is fundamental to the case. In any event, it was Fulbright, not Goodwin, that drafted the subpoena and decided what discovery should be pursued from Staples. Goodwin appeared to lack authority to negotiate the subpoena issues independently of Fulbright, and certainly lacked sufficient familiarity with the case to negotiate the proper scope of the subpoena. Huston Decl., ¶ 5 [D.N. 63]. In addition, Goodwin has not appeared in this Court on behalf of NEC, and Fulbright remains the sole counsel of record for NEC to this day.[7] In short, Fulbright is impermissibly trying to use Goodwin as a front in relation to the Fulbright subpoena to Staples. And of course, Goodwin's involvement with the subpoena is completely irrelevant to Fulbright's general representation of NEC in the case.

---

[7] Goodwin's failure to file an appearance is telling, as counsel for Staples had suggested that Goodwin file an appearance as counsel for NEC in the case, so that Staples and Ampad could be assured that certain Staples documents would be treated as confidential by Goodwin pursuant to the Protective Order. Huston Decl., ¶ 4. Goodwin curiously declined to appear or even to execute the undertaking attached to the Protective Order as Exhibit A, preferring instead to make a representation by way of a private letter between counsel which was not on its face copied to anyone at NEC. *Id.* at ¶ 4 and Ex. 3.

**E. Staples Has Been Severely Prejudiced by Fulbright's Misconduct and Will Continue to Be Prejudiced Absent Disqualification**

Fulbright has represented and is representing Staples in multiple matters, including complex commercial litigations. Given Fulbright's intimate and very extensive knowledge of Staples, it would be highly inappropriate and prejudicial to allow Fulbright to continue to litigate against its own client, Staples. For years, Fulbright has enjoyed unfettered access to the trial strategy, cost benefit analyses, internal policies and the strategic styles of lawyers in the Staples in-house law department, and has a sound understanding of Staples' business goals and risk tolerance. Cotter Decl., ¶¶ 2-5 [D.N. 64]. Fulbright should not be allowed to assume a position in which this information, and other confidential and privileged information shared over the years, could be used to the detriment of Staples.

In addition, the adversarial nature of Fulbright's conflict of interest has prejudiced Staples because NEC and Fulbright have pursued the subpoena as vigorously as though Staples were a party. The extent of the adversity has reached a fever pitch, with a professional responsibility attorney for Fulbright sending a letter to Magistrate Judge Ellis on behalf of NEC disputing the confidentiality of Staples' documents and accusing Staples – an existing client of Fulbright – of raising conflict of interest and confidentiality issues as part of a "tactical plan." While styled as a third-party subpoena, the content of the subpoena, the manner in which it has been pursued and the context of this matter make clear that NEC is attempting improperly to use discovery in this litigation to fish for evidence in connection with NEC's existing claim against Staples before the TTAB.[8] Yet, as a non-party subject to a subpoena, Staples does not have any of the protections that a party to a litigation would have. For example, Staples has not seen any of the discovery responses of NEC or Ampad, which gives NEC an unfair advantage over Staples. Staples does not have the ability to file a dispositive motion, before burdensome and expensive discovery is undertaken, as it would have if NEC properly sought discovery from Staples in the TTAB rather than in the back-door manner currently being pursued. In addition, the conflict prevented Staples from having any meaningful communications with NEC about settlement, because

---

[8] Discovery, including depositions, is and will be available to NEC in the TTAB proceeding.

Goodwin lacks sufficient information about the case. Staples should not be subjected to these burdens, particularly on top of the burden and prejudice it is already suffering as a result of Fulbright's breach of its ethical obligations by undertaking representation of NEC in the first instance.

Prejudice also flows from Fulbright's disclosure of Staples' documents designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the Protective Order. This relates both to the conflict issue and the Protective Order, which was subject to a separate motion. It is hard to imagine what could be more prejudicial and <u>adversarial</u> than a client's own counsel taking it upon itself to disclose documents that it knows the client designated as confidential, and then refusing to inform the client what occurred or indeed communicate with the client about it in any manner whatsoever. Significantly, Fulbright refused to respond to Staples' request for assurances that no other unauthorized disclosures of Staples' confidential documents had been made until Staples filed a motion with the Court for contempt. It is abundantly clear, particularly from correspondence in this case such as the March 23 letter to Magistrate Judge Ellis, that Fulbright cannot meet its professional and ethical obligations to both Staples and NEC. Staples should not bear the burden and prejudice arising from Fulbright's conflict, especially where Fulbright undertook representation of NEC with its eyes wide open as to Staples' involvement in the issues in the case.

### F. Any Prejudice to NEC Resulting from Disqualification Would Be Minimal, and is Far Outweighed by the Prejudice to Staples and the Court's Interest in Enforcing Ethical Rules

The only appropriate remedy is to disqualify Fulbright from further representation of NEC in this proceeding. Many lawsuits are transitioned to new counsel after the close of discovery and, as here, well in advance of trial.[9] Any inconvenience to NEC of having to find appropriate successor counsel is far outweighed by the seriousness of the ethical violations and significant prejudice to Staples as set forth above.

---

[9] No trial date has yet been set. The deadline for filing dispositive motions is August 31, 2009. *See* Docket No. 90.

It bears repeating that this is not a case in which a conflict only recently arose or otherwise came as a surprise to Fulbright. Fulbright knew full well at the time the Complaint was filed in 2006 that Staples had applied for its own registration of PULL & SEAL on the Supplemental Register and that Staples was selling Ampad's PULL & SEAL envelopes. Fulbright certainly knew of the conflict when it sent the subpoena, as NEC sued Staples in the TTAB the very same day. Fulbright "made its own bed" with respect to the conflict issue, and cannot possibly be surprised that this issue would come home to roost when it sought to take discovery of Staples and thereby revealed its representation of NEC. In these circumstances, Fulbright is responsible to NEC for any inconvenience its withdrawal from representation may cause, and it is up to Fulbright to mitigate any damage to NEC if it so chooses. To force Staples to bear the burden of Fulbright's unethical conduct would be manifestly unjust.

In light of the Court's interest in ensuring that the lawyers before it act ethically and observe its orders, the ability of NEC to retain new counsel in this matter, and the prejudice to and burdens upon Staples which cannot otherwise be alleviated (including the burdens imposed by its own counsel litigating against it, the breach of the trust relationship, the prejudice of being treated as a party for discovery purposes but without the protections of a party, and the unauthorized disclosure of its confidential information), disqualification is required. In the unlikely event that the Court rules that disqualification is not appropriate, however, at the very least Staples should be protected from further direct involvement in the case with respect to further discovery from Staples or in any other respect.

## ARGUMENT

### I. THE MAGISTRATE JUDGE CLEARLY ERRED IN APPLYING THE WRONG LEGAL STANDARD FOR DISQUALIFICATION

#### A. The New York Rules of Professional Conduct Prohibit Fulbright from Representing Current Clients with Differing Interests

New York Rule of Professional Conduct 1.7 provides as follows:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . (1) the representation will involve the lawyer in representing <u>differing interests</u>; . . . (b) Notwithstanding the existence of a concurrent conflict of interest

under paragraph (a), a lawyer may represent a client if . . . (4) each affected client gives <u>informed consent</u>, confirmed in writing.

New York Rule of Professional Conduct 1.7, in effect as of April 1, 2009 (to be codified in 22 N.Y.C.R.R. Part 1200).[10] The representation of clients with differing interests is prohibited, even if the lawyer's representation of one client does not relate to those particular interests.[11] Pursuant to the New York rules, a lawyer owes a duty of undivided loyalty to the client that broadly and categorically precludes the lawyer from taking any steps that impact adversely upon the interests of another current client.[12]

## B. The *Per Se* Rule of Disqualification Applies Because Staples Is A Current Client of Fulbright and the Interests of Staples and NEC are Adverse

Significantly, Judge Young in the District of Massachusetts addressed Fulbright's concurrent representation of NEC and Staples under the Massachusetts Rules of Professional Conduct. Although the "directly adverse" standard in the Massachusetts rule is more permissive than the broad "differing interests" preclusion of the New York rule,[13] Judge Young nevertheless expressed serious concerns that an ethical violation had occurred. At a motion hearing on March 19, 2009, Judge Young pointedly asked, "How does Fulbright & Jaworski get around what appears to this Court to be a <u>manifest violation of the conflict of interest policies</u>?" and noted, "[T]here are <u>extremely serious allegations of conflict of interest here</u> and I will tell you that I am candidly taken aback by them. <u>They seem to be supported in the record.</u> . . . You go back and tell your Fulbright and Jaworski people that I take this conflict of interest matter extraordinarily seriously." Huston Decl., Ex. 7 (Transcript, pp. 2-3, 7-8) [D.N. 63]

---

[10] The New York Code of Professional Responsibility, which was in effect prior to the commencement of this litigation and continued in effect up through March 31, 2009, similarly prohibited a lawyer from "representing differing interests" without the consent of each client. DR 5-105 (codified at 22 N.Y.C.R.R. § 1200.24).

[11] *See* Rule 1.7, Comment 6 ("absent consent, a lawyer may not advocate in one matter against another client that the lawyer represents in some other matter, <u>even when the matters are wholly unrelated</u>").

[12] *See Cinema 5 Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976); *Correspondence Services Corp. v. J.V.W. Inv. Ltd.*, 2000 WL 1174980 (S.D.N.Y. Aug. 18, 2000); *Flather v. United States Trust Co. of New York*, 1994 WL 376088, at *4 (S.D.N.Y. July 15, 1994).

[13] Massachusetts Rule of Professional Conduct 1.7(a) provides, "A lawyer shall not represent a client if the representation of that client will be <u>directly adverse</u> to another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client, and (2) each client consents after representation" (emphasis added).

(emphasis added). It is even more clear under the stricter New York rules that Fulbright is engaged in a conflict of interest, and disqualification is required.

Where the simultaneous representation of current clients is involved, Courts apply a "*per se*" or "*prima facie*" rule of disqualification. The principle underlying the *per se* rule is that disqualification flows from concurrent representation of clients with adverse or differing interests automatically, or *per se*, and it is not necessary to show a "substantial relationship" between the representation of the two clients as is the case when a former client is involved. In establishing this rule in the seminal *Cinema 5* case, the Second Circuit explicitly rejected the notion that a current client seeking to disqualify its counsel from representing an adversary must show a relationship between the present controversy and the firm's representation of the client, as representation adverse to an existing client is *prima facie* improper even where no such relationship exists. The Court stated:

> [The disqualified lawyers] say that they should not be disqualified unless the relationship between the controversies is substantial, and they contend there is nothing substantial in the relationship between [the separate litigations handled on behalf of each client].
>
> The 'substantial relationship' test is indeed the one that we have customarily applied in determining whether a lawyer may accept employment against a former client. However, in this case, suit is not against a former client, but an existing one. . . . The propriety of this conduct must be measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients.
>
> A lawyer's duty to his client is that of a fiduciary or trustee. When [the first client retained its attorney], it was entitled to feel that at least until that litigation was at an end, it had his undivided loyalty as its advocate and champion, and could rely upon his 'undivided allegiance and faithful, devoted service.' Because 'no man can serve two masters', it had the right to expect also that he would 'accept no retainer to do anything that might be adverse to his client's interests.'
>
> ***
>
> Where the relationship is a continuing one, adverse representation is prima facie improper, and the attorney must be prepared to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation. We think that appellants have failed to meet this heavy burden. . . .

*Cinema 5 Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1385-88 (2d Cir. 1976) (citations omitted). "Based on the analysis and holding of *Cinema 5*, courts in this circuit apply the "per se" or "prima facie" rule to disqualification motions when the attorney whose disqualification is sought is actively suing his client in

other related, or non-related actions." *British Airways, PLC v. The Port Authority of New York and New Jersey*, 862 F. Supp. 889, 893 (E.D.N.Y. 1994) (Glasser, J.) (disqualifying plaintiff's counsel under *per se* rule where counsel represented defendant in unrelated matters); *accord Travelers Indemnity Co. v. Gerling Global Reins. Corp.*, 2000 WL 1159260 (S.D.N.Y. August 15, 2000) (McKenna, J.) (ordering disqualification under *per se* rule due to appearance of divided loyalty arising from plaintiff's counsel's long-standing representation of defendant's affiliate in unrelated matters). Where the *per se* rule applies, "all doubts must be resolved in favor of disqualification." *British Airways*, 862 F. Supp. at 900; *Travelers*, 2000 WL 1159260 at *3. The courts in *Cinema 5, Travelers*, and *British Airways* found that disqualification was required even though the courts found in each of those cases that the conflicts had arisen inadvertently and that the attorneys had acted in good faith and could be otherwise relied upon to voluntarily refrain from inappropriately disclosing client confidences.

As both NEC and Staples are current clients of Fulbright, the *per se* rule applies. As is set forth in detail above, the interests of Staples and NEC are directly adverse and most certainly "differing" within the meaning of the New York rules. NEC has asserted in the TTAB proceeding that this litigation is "dispositive" of NEC's claims against Staples, and even "binding" against Staples in the TTAB. The fact that NEC is represented in the TTAB case by a law firm other than Fulbright is of no consequence, because as counsel for NEC in this action Fulbright is engaging in a course of conduct that is, according to NEC, directly and materially adverse to Staples in the TTAB action. There is no question that Fulbright has conflicting loyalties and Staples is paying the price for it. In sum, Staples is being forced to defend against direct and overt attacks made by its own counsel. Fulbright's attempts to use a surrogate law firm to evade its ethical obligations with respect to the subpoena do not relieve the fundamental conflict with respect to Fulbright's representation of NEC, and are unavailing in any event because Fulbright drafted the subpoena, obtained documents pursuant to that subpoena, improperly disclosed those documents in violation of the Protective Order, refused to communicate with Staples about the disclosure in further violation of the Protective Order, and repeatedly took adverse positions

against Staples in relation to whether the documents were confidential.[14] Fulbright is in clear violation of the New York conflict of interest rules.

## C. The Magistrate Judge Erred in Imposing a Separate Requirement that Staples be a Named Party in Order to Apply the *Per Se* Rule

In declining to impose the *per se* test, the Magistrate Judge created a legal requirement that is not found in any ethical rules or the case law. He held that a current client must be a named party in the proceeding in which disqualification is sought in order to be entitled to a duty of undivided loyalty and warrant application of the *per se* rule. *See* Ex. A (Transcript of Conference, May 26, 2009), p. 6, lines 2-11; p. 10, lines 15-21; p. 11, line 23 - p. 12, line 13. This is simply wrong. The Magistrate Judge suggested that if Staples, or even a corporate affiliate of Staples,[15] had been named a defendant, he probably would have come to a different conclusion. *Id.*, p. 6, lines 2-5; p. 12, lines 12-13. Because the Magistrate Judge erred in requiring Staples to be a named party to invoke the duty of loyalty, and it was the foundation of his ruling, this Court must set aside the ruling and order disqualification under the correct *per se* test.

The touchstone of the *per se* test that governs conflicts among current clients is adversity and, in New York, whether the client has interests that differ from those of the other client. Whether the clients' interests are adverse or differing is measured by actual harm that a client will or may suffer, and does

---

[14] This direct adversity exists completely independently of the subpoena, although of course the subject matter of the subpoena (which seeks information about the use and registration of PULL & SEAL by Staples) and the adversarial manner in which NEC and Fulbright have litigated this issue against Staples (culminating in a letter to Magistrate Judge Ellis from Fulbright's professional responsibility attorney making statements directly adverse to Staples) compellingly demonstrate the severity of the conflict.

[15] The Magistrate Judge appeared to correctly recognize that, where a corporate affiliate of the client is a named party, application of the *per se* rule of disqualification is appropriate. *See, e.g., Travelers Indemnity Co. v. Gerling Global Reins. Corp.*, 2000 WL 1159260 (S.D.N.Y. August 15, 2000) (McKenna, J.) (ordering disqualification under *per se* rule due to appearance of divided loyalty arising from plaintiff's counsel's long-standing representation of defendant's affiliate in unrelated matters); *Discotrade Ltd. v. Wyeth-Ayerst Int'l, Inc.*, 200 F. Supp. 2d 355, 360 (S.D.N.Y. 2002) (Buchwald, J.) (disqualifying law firm that represented opposing party's sister corporation in unrelated matters); *Stratagem Dev. Corp. v. Heron Int'l N.V.*, 756 F. Supp. 789 (S.D.N.Y. 1991) (Kram, J.) (disqualifying law firm that represented opposing party's wholly owned subsidiary in unrelated matters). In these cases, disqualification was appropriate because an unfavorable result would have an adverse economic impact on the client, regardless of the subject matter of the representation. Here, there is an even more direct adverse impact on Staples – NEC argues that a judgment here would be binding against Staples itself. This is a far more compelling basis for disqualification than the usual cases involving affiliates of clients, because the impact on Staples will be direct and immediate, and not merely an economic impact as a result of a corporate relationship.

not turn on the technicality of whether the client is named as a party in the proceeding in which disqualification is sought. If this were the case, law firms could take action adverse to their clients as a matter of course, as long as they were careful not to name their clients as defendants in lawsuits. This is simply not consistent with the ethical rules, which make no mention of any requirement that the party seeking disqualification be a party to the proceeding, and no court has imposed such a requirement.

Numerous cases both within and outside this district affirm that the *per se* rule for disqualification does not turn on whether the client is a party to the case. For example, in *Credit Index, L.L.C. v. RiskWise Int'l L.L.C.*, 744 N.Y.S.2d 326, 296 A.D.2d 318 (N.Y.A.D. 1 Dept. 2002), the Supreme Court of New York County affirmed disqualification based on the defendant's counsel's current representation of the plaintiff's majority shareholder who was not a named party, stating: "The law firm representing defendants was properly disqualified upon a record showing that plaintiff's majority shareholder was a current client of the firm when the firm first appeared in the action, and that the shareholder is personally involved in the litigation even though he is not a named party.") (emphasis added, citation omitted).[16] The court noted that the shareholder had some involvement with the litigation (just as Staples has received a subpoena in this case) and received a letter from the defendant suggesting that the defendant might assert claims against the shareholder (just as NEC has sued Staples in the TTAB). Indeed, the facts of the present case are more compelling than in *Credit Index*, as Staples is subject to an existing lawsuit by NEC based on the same marks that are at issue in this litigation.

Likewise, a judge in the Eastern District of Texas granted the motion of a non-party client to disqualify plaintiff's counsel where the client had been sued on the same patent in a separate lawsuit in which the plaintiff was represented by different counsel. In *Rembrandt Technologies, LP v. Comcast Corp.*, 2007 WL 470631 (E.D. Texas 2007), Fish & Richardson represented the plaintiff in the lawsuit against Comcast in which disqualification was sought, and also represented non-party Time Warner in

---

[16] The court also held, as an independent ground for disqualification, that the firm had represented the shareholder in the past in a substantially related matter. This substantial relationship was not part of the court's holding that disqualification is required because of the present, as opposed to the past, client relationship. *Id.*

an unrelated patent matter. The plaintiff, represented by counsel other than Fish & Richardson, then sued Time Warner on the same patent. Time Warner moved to intervene in the case against Comcast to disqualify Fish & Richardson from representing the plaintiff. The court granted the motion, even though Time Warner was not a party in the Comcast action, on the grounds that the plaintiff's infringement theory in the Comcast case would be directly adverse to Time Warner in the other case.[17] Of course, the facts of this case go well beyond those in *Rembrandt*, because NEC has asserted that the outcome of this case against Ampad is "binding" and "dispositive" in the TTAB action against Staples.

The Supreme Court of Appeals of West Virginia addressed this issue at length in *Committee On Legal Ethics v. Frame*, 189 W.Va. 641, 433 S.E.2d 579 (W. Va. 1993) (affirming sanctions for concurrent representation of one client in individual capacity and a second client adverse to that client's majority-owned corporation in an unrelated proceeding). The court emphatically rejected the notion that party status was necessary in order for a conflict to arise under the Rules of Professional Conduct:

> The Respondents maintain that they had no duty to refrain from representation or obtain consent because no <u>direct adversity</u> existed between the two clients, Ms. McMillen and Mr. Baamonde. By definition, no violation of Rule 1.7(a) can occur if representation of one client will not be directly adverse to another client.
>
> ***
>
> The conclusive question is whether representation of one client was directly adverse to the other.
>
> ***
>
> We also addressed the "directly adverse" requirement in *State ex rel. Morgan Stanley & Co., Inc. v. MacQueen*, 187 W.Va. 97, 416 S.E.2d 55 (1992). In that case, we recognized that being <u>named as a party to a lawsuit is not a prerequisite to creating the direct adversity</u> element needed to establish a conflict of interest. *Morgan Stanley* involved an attempt to disqualify a law firm based, in part, upon the provisions of Rule 1.7(a). The firm represented both the State and certain state employees in the State's action to recover investment fund losses. In finding that a conflict of interest existed, we also explained that <u>"[t]he critical issue is the existence or potentiality of conflicts of interest and not the inclusion of all adverse parties in a lawsuit."</u> *Id.* at 102, 416 S.E.2d at 60. Similarly, while Ms. McMillen was not personally named as a defendant in the Baamonde suit, her status as a majority shareholder of the named defendant corporation created a potential, if not actual, conflict of interest.

---

[17] Finding the direct adversity requirement of ABA Model Rule 1.7 to be met, the court stated that, "The practical significance of Rembrandt's infringement theory is to indict for patent infringement all major cable companies who follow the industry standards. A finding of infringement and an injunction issued by this court against a cable company for compliance with industry standards would have a <u>significant practical effect on Time Warner</u>." *Id.* at *4 (emphasis added).

We agree with the Committee's findings that the Respondents' representation of Mr. Baamonde "was directly adverse to Ms. McMillen in her capacity as a majority shareholder, corporate officer, and manager of Markwoods, Inc." While the Respondents did not directly represent Ms. McMillen in the personal injury suit, they did represent Ms. McMillen in an unrelated divorce action; she was still their client, and Rule 1.7(a) still applies. The Respondents also appear to place great emphasis on the fact that no deleterious impact was actually created by the simultaneous representation. That begs the question. To establish an ethical violation under Rule 1.7(a), one does not have to prove prejudicial impact, negative result, or an exchange of confidential information. The only prerequisites for the establishment of an ethical violation are those clearly set forth in the rule itself; namely, representation of one client that is "directly adverse" to another client without the consent of each client. The "directly adverse" language does not imply that a bad result must occur before representation is impermissible.

189 W.Va. at 643-44, 433 S.E.2d at 581-82 (emphasis added).

Numerous other courts have rejected the argument that a client must be a party to the proceeding in which disqualification is sought in order to demonstrate adversity and invoke the *per se* rule. *See, e.g., Harry A. v. Duncan*, 330 F.Supp.2d 1133, 1136-37 (D. Mont. 2004) (ordering disqualification in absence of consent of clients even though "there are no apparent conflicts among those who are named parties in this action" because counsel for defendants represent some of plaintiff's witnesses in unrelated matters); *Snapping Shoals Electronic Membership Corp. v. RLI Ins. Corp.*, 2006 WL 1877078 *4 (N.D.Ga. 2006) (explicitly rejecting argument that movant was not a party and allowing motion to disqualify plaintiff's counsel where non-party movant had contractual obligation to indemnify defendant);[18] *Oxford Systems, Inc. v. Cellpro, Inc.*, 45 F.Supp.2d 1055 (W.D. Wash. 1999) (granting non-party's motion to disqualify defendants' counsel on the basis of adversity where non-party was asserting claim against defendant in another case); *see also Baden v. Koch*, 1982 U.S. Dist. LEXIS 13340 *6 (S.D.N.Y. 1982) (Haight, J.) (granting non-party's motion to disqualify based on status as a past client, and explicitly rejecting argument that non-party status precludes adversity because the non-party "is clearly a principal architect of Baden's dismissal [which gave rise to the suit], and his personal integrity, as well as the proper functioning of his office, are implicated in this litigation").

---

[18] The court stated in part, "Paul Hastings' argument that there is no direct adversity because plaintiff could not name L-3 Titan [movant] as a defendant and that the liability of L-3 Titan arises under a contract not at issue is unavailing. . . . Paul Hastings is representing a party whom, if successful, puts a current client directly at risk of financial harm. Accordingly, the court finds that the instant action is directly adverse to the interests of Paul Hastings' current client." *Id.* at *4 (emphasis added).

The Magistrate Judge clearly erred in imposing an entirely unprecedented requirement that Staples be a named party in order for the *per se* rule of disqualification to apply. This ruling flies in the face of the ethical rules, which impose no such requirement, and many years of case law. None of the cases cited by Fulbright in its opposition to the motion for disqualification stand for the proposition that the *per se* rule only applies if the current client to whom an attorney is adverse is a party.[19] Indeed, no case stands for that proposition because it is not correct. As noted above, such a holding would mean that an attorney is free to be directly adverse to a current client as long as the attorney does not make the client an official party to a case. The ethical rule requiring loyalty to current clients does not contain this gaping exception, and indeed it does not contain any exception and no case creates one. The ethical rules proscribe adverse representation in all contexts, including in non-litigation matters, and the application of the rules cannot be restricted to pending litigations in which the client is a party.

To allow Fulbright to represent two clients who have such clearly adverse (and certainly "differing") interests over Staples' objections, based solely on the technicality that Staples is not named as a defendant in this case, does Staples a grave injustice and cannot stand. This is especially true because NEC has stated that this litigation is "binding" and "dispositive" with respect to NEC's claims against Staples in the TTAB, and it is also clear that any discovery that NEC obtains from Staples pursuant to the subpoena drafted by Fulbright will be used against Staples in the TTAB. Staples is adverse to NEC in this proceeding as surely as if Staples were a named party. Because Staples is a current client of Fulbright, and its interests are adverse to and differing from the interests of NEC, the Magistrate Judge clearly erred in declining to apply the *per se* rule of disqualification.

---

[19] Fulbright cited the *Correspondent Services* case in its brief opposing Staples' motion for disqualification for the proposition that "motion to disqualify denied because lawyer did not represent movant who was a party to the lawsuit". In that case, which has nothing to do with the proposition for which Fulbright cited it, the court found that the attorney did not and had not ever represented the party moving for disqualification (it has represented the corporation for whom movant worked). Here, there is no dispute that Fulbright has long represented, and does currently represent, the movant, Staples. The remaining cases cited by Fulbright merely stand for the uncontroversial point that an attorney cannot directly litigate against its current client as a party. They do not stand for the proposition that a current client has to be a party for the representation to be adverse.

**D. The Magistrate Judge Erred in Requiring Staples to Show a "Substantial Relationship," Which is the Test for Former Clients but not Current Clients**

The Magistrate Judge declined to disqualify Fulbright because the subject matter of NEC's lawsuit against Ampad is different than the subject matter of the cases in which Fulbright has represented Staples. Ex. A (Transcript of Conference, May 26, 2009), p. 4, line 22 - p. 6, line 8; p. 7, lines 2-6. Essentially, the Magistrate Judge applied the "substantial relationship" test applicable to former clients, rather than the *per se* test applicable to current clients. Indeed, on two occasions, the Magistrate Judge mistakenly referred to Staples as a former client in explaining his rulings. *Id.* at p. 5, line 5 (referring to "former representation") and lines 9-10 (referring to "prior representation"). However, Staples is a current client of Fulbright, and it was therefore legal error for the Magistrate Judge to refuse to apply the *per se* test for the reasons discussed in the preceding section.

The Second Circuit has explicitly held that, under the *per se* test, the burden is on the law firm representing two existing clients to show that there will be no "actual or apparent conflict in loyalties" without regard to the subject matter of the representations because "the 'substantial relationship' test does not set a sufficiently high standard by which the necessity for disqualification should be determined." *Cinema 5 Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1385-88 (2d Cir. 1976); *accord Discotrade Ltd. v. Wyeth-Ayerst Int'l, Inc.*, 200 F. Supp. 2d 355, 360 (S.D.N.Y. 2002) (Buchwald, J.) ("This 'substantial relationship' test has been expressly rejected with respect to conflicts among current clients, and we decline to entertain it here."). Imposing the "substantial relationship" standard on current clients such as Staples is also directly contrary to the commentary of the Rules of Professional Conduct governing conflicts between current clients, which plainly states that "a lawyer may not advocate in one matter against another client that the lawyer represents in some other matter, even when the matters are wholly unrelated." Rule 1.7 of the New York Rules of Professional Conduct, Comment 6 (emphasis added). For the reasons set forth above, the *per se* rule applies to Staples as a current client of Fulbright, and it was clear error for the Magistrate Judge to deny disqualification on the grounds that there was no substantial relationship between Fulbright's representation of Staples and the instant proceeding.

21

**E. ABA Opinion 92-367 Does Not Permit Fulbright to Avoid the Conflict and Further Shows That the Client Need Not Be a Named Party to Show Disqualifying Adversity**

Although it was not relied upon by the Magistrate Judge in his ruling, both Staples and NEC cited ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 92-367 (1992) in their motion papers. The opinion addresses a lawyer's attempt to take discovery of its own client as a third party witness and expressly provides that, "It is assumed, for purposes of this opinion, that whatever the purposes for which the third party witness-client's evidence is offered or sought, the litigation in which this occurs is not itself adverse to that client." Huston Decl., Ex. 12 [D.N. 63] (ABA Opinion, p. 32, note 1) (emphasis added). Of course, counsel should not undertake representation of a party at all in a litigation adverse to an existing client, and would not therefore properly be in a position to take discovery of the client or anyone else. Even where there is no adversity, the ABA Opinion states that an attorney should not undertake representation of another party where it is foreseeable that the attorney would have to conduct third party discovery of his or her own client. *Id.*, p. 22. Only where the litigation is not adverse to the client and the need for discovery from the client was not foreseeable may it be permissible to use "conflict counsel" to conduct discovery of the client. Use of such conflict counsel does not cure any underlying conflict, however. Fulbright's representation of NEC presents a fundamental conflict with respect to Staples which cannot be cured by outsourcing discovery of Staples to the Goodwin firm (and Fulbright drafted the subpoena in any event).

Because the Magistrate Judge did not rely upon the ABA Opinion, Staples will not address it further here, except to state that the very fact that the ABA opinion proscribes non-party discovery in adverse cases further demonstrates that a client need not be a named party in order for a conflict to arise. To the extent that the Court considers the ABA Opinion further, Staples directs the Court to its arguments regarding the ABA Opinion set forth in its memorandum [D.N. 65] at pp. 19-22 and reply [D.N. 85] at pp. 9-10 submitted to the Magistrate Judge.

## II. EVEN UNDER THE INCORRECT "SUBSTANTIAL RELATIONSHIP" TEST FOR FORMER CLIENTS, DISQUALIFICATION IS REQUIRED

Even under the "substantial relationship" test applicable to former clients, "When a party moves for the disqualification of his adversary's attorney, 'any doubt is to be resolved in favor of disqualification.'" *Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F.Supp.2d 273, 275 (S.D.N.Y. 2004) (Stein, J.) (granting defendant's motion to disqualify where defendant had formerly cooperated with plaintiff's attorney in defending against separate case against defendant's licensee).

Even if the substantial relationship test is applied, there is no question that it would be satisfied here, where Fulbright did not represent Staples on one or two isolated matters but rather on a wide range of important cases for many years, and Fulbright has been a key strategic partner of Staples and a trusted counselor. In this regard, Fulbright knows the most important content of Staples' prior litigation matters: litigation and settlement philosophy and practices, key personnel in many areas (and their potential strengths and weaknesses as witnesses), financial budgets and a wide variety of highly confidential information. There is no question that that information would overlap with the situation here. Accordingly, even the incorrect "insubstantial relationship" test is met.[20]

## III. DISQUALIFICATION IS NECESSARY

Disqualification is required as a result of Fulbright's *per se* ethical violations of the conflict of interest rules. Courts have recognized that once a *per se* ethical violation of the conflict rules has been shown, "all doubts must be resolved in favor of disqualification."[21] The facts of this case are far more

---

[20] *See, e.g., Mitchell v. Metropolitan Life Ins. Co., Inc.*, 2002 U.S. Dist LEXIS 4675 *14-16 (S.D.N.Y. 2002) (Pauley, J.) (ordering disqualification where movant "has demonstrated that [attorney], as a result of her prolonged and extensive prior representations of the company, acquired or was privy to confidential institutional information about [client], its [] division and [] personnel and that this information is relevant to this pending action" and further noting that "this is not a case where a lawyer previously represented a client in a narrowly-defined, single-issue lawsuit or may have simply assisted a client in settlement discussions in a small number of cases").

[21] *British Airways, PLC v. The Port Authority of New York and New Jersey*, 862 F. Supp. 889, 900 (E.D.N.Y. 1994) (Glasser, J.); *Travelers Indemnity Co. v. Gerling Global Reins. Corp.*, 2000 WL 1159260 at *3 (S.D.N.Y. August 15, 2000) (McKenna, J.); see also *Cinema 5 Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976). Significantly, in each of these three cases, the conflicted counsel did not possess any client information regarding the specific matter in which the motion to disqualify was made, so there was no immediate possibility that the client's information would be disclosed to an adversary, yet disqualification was required because the conflicted counsel could not meet the "heavy burden" of showing that there would be no "real or apparent conflict in loyalties." *Cinema 5*, 528 F.2d at 1387; *British*

23

egregious than in these cases, as Staples is suffering serious prejudice as a result of Fulbright's unrepentant breach of loyalty. Staples is suffering and will continue to suffer real and substantial prejudice absent disqualification, including the violation of the relationship of trust, the risk (and apparent reality) that Staples' sensitive strategic information will be used against it, the misuse of Staples' confidential information, and the overly aggressive attempts to take discovery of Staples as though it were a party in this case. Fulbright is in possession of Staples' most confidential strategic information regarding how Staples litigates, settles, and tries cases and even knows, for example, Staples' internal processes for responding to discovery requests. Even if it were appropriate to consider any burden that NEC might experience in retaining new counsel,[22] any such burden would be far outweighed by the extraordinary burdens and prejudice to which Fulbright is subjecting its long-standing client, Staples. Numerous Fulbright attorneys have acted in a manner directly adverse to Staples, including a member of Fulbright's Professional Responsibility Committee who authored a letter to Magistrate Judge Ellis in this proceeding. Nothing short of disqualification can protect Staples from further prejudice and harm.[23]

Moreover, it would be contrary to public policy to allow Fulbright and NEC to avoid disqualification, and would make a mockery of the conflict of interest rules. This is not a case where Fulbright could not have reasonably foreseen a conflict coming, and took appropriate action once it arose. To the contrary, Fulbright knew of the adversity between Staples and NEC before this action was filed in 2006, and has refused to even recognize, much less honor, its ethical obligations to Staples at

---

*Airways*, 862 F. Supp. at 897, 899; *Travelers*, 2000 WL 1159260 at *6.

[22] Fulbright cannot be heard to argue that any burden on NEC in finding successor counsel justifies its course of action and deprives Staples of a remedy, as Fulbright knew at the outset of this case in 2006 that Staples was adverse to NEC in this case yet chose to proceed in the face of this obvious conflict. In any event, the parties have only recently completed discovery, and there is nothing special about this case that would prevent NEC from locating competent successor counsel with experience in trademark issues.

[23] Even if this were not a case where the *per se* ethical violation mandated disqualification, disqualification would be required because there is simply no other way in which Staples' rights can be protected. For example, an "ethical wall" does not resolve the issues because, *inter alia*, the Staples relationship partner tried to serve the subpoena upon Staples and a member of the Fulbright Professional Responsibility Committee wrote a letter directly adverse to Staples in this case, and Fulbright has already demonstrated its propensity to disclose Staples' confidential information to the benefit of NEC even in violation of a direct court order. An "ethical wall" is also inappropriate in light of the large number of Fulbright attorneys who have represented Staples over many years, and the wide-ranging nature of that representation.

any time between then and now. To countenance Fulbright's position by allowing its continued representation of NEC is fundamentally inconsistent with the ethical rules governing attorney conduct, and offends all notions of justice. If the conflict of interest rules are to have any meaning, disqualification must be ordered.

## IV. REGARDLESS OF HOW THIS MOTION IS DECIDED, STAPLES SHOULD BE MADE WHOLE WITH AN AWARD OF ATTORNEYS' FEES

Fulbright's violation of the ethical rules regarding conflicts of interest have imposed a significant burden on Staples, not only with respect to damage to the attorney-client relationship, and its critical concerns regarding the confidences it has entrusted to Fulbright, but also due to the time, money and energy that Staples was required to spend to address these issues. Staples should not be forced to pay the price for its own counsel's misconduct. Staples has made every effort to address this issue with Fulbright and NEC without resort to resource-intensive motion practice, but to no avail. Regardless of whether this Court disqualifies Fulbright from representation of NEC in this case, Staples should be made whole with an award of attorneys' fees from Fulbright. There is no question that Fulbright breached its ethical obligations to Staples, and Staples should not be worse off than if the breach never occurred. With the permission of the Court, Staples will submit documentation of the monetary damages that Staples has suffered as a result of Fulbright's misconduct so that an appropriate award can be made.

## CONCLUSION

For the foregoing reasons, the Court should set aside the ruling of the Magistrate Judge of May 27, 2009, and enter an order that Fulbright be disqualified from representing NEC in this proceeding. Should the Court feel that disqualification is not appropriate given the circumstances, at the very least Staples should be protected from any further direct involvement in the case as a witness or otherwise. Moreover, regardless of the Court's ruling, Staples should be made whole with an award of the costs and fees it has incurred in addressing the conflict issue and the issues arising from Fulbright's improper disclosure of Staples' confidential documents.

Dated: June 10, 2009
New York, New York

Respectfully submitted,

PROSKAUER ROSE LLP,

By: /s/Steven C. Krane_____
    Steven C. Krane
    Lawrence S. Elbaum
    1585 Broadway
    New York, New York 10036-8299

- *and* -

Julia Huston (admitted *pro hac vice*)
Peter J. Karol (admitted *pro hac vice*)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110-1618

Attorneys for Staples, Inc., Intervenor

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a copy of the foregoing Notice of Motion was served this 10th day of June 2009 by ECF filing, and by U.S. Mail, upon the following counsel of record:

/s/Steven C. Krane_____
Steven C. Krane

| Plaintiffs | Defendants |
| --- | --- |
| Mark N. Mutterperl, Esq. | Steven Edward Ross |
| Fulbright & Jaworski L.L.P. | Gardere Wynne Sewell LLP |
| 666 Fifth Avenue | 1601 Elm Street |
| New York, New York 10103-3198 | Suite 3000, Thanksgiving Tower |
| United States of America | Dallas, TX 75201-4761 |
| ( 212) 318-3183 | 214-999-4430 |
| Fax: (212) 318-3400 | Fax: 214-999-3430 |
| LEAD ATTORNEY | Email: sross@gardere.com |
| ATTORNEY TO BE NOTICED | ATTORNEY TO BE NOTICED |