Steven E. Ross (SR 9361)
William D. Dunn (WD 6998)
Michael P. Cooley (MC 1214)
GARDERE WYNNE SEWELL LLP
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
Telephone: (214) 999-4824
Facsimile: (214) 999-3824

Anthony F. Lo Cicero (AL 7538)
Marc J. Jason (MJ 0934)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY  10016
(212) 336-8000 – Telephone
(212) 336-8001 - Facsimile

COUNSEL FOR AMERICAN PAD & PAPER, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- X
NATIONAL ENVELOPE CORPORATION            :
AND NATIONAL ENVELOPE-WH LLC,            :
                                         :
        PLAINTIFFS,                      :
                                         :
V.                                       :       CIVIL ACTION No. 1:06-CV-12988-CSH
                                         :
AMERICAN                                 :
PAD & PAPER LLC,                         :
                                         :
        DEFENDANT.                       :
---------------------------------------------------- :
                                         X

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT REPORT
<u>AND TESTIMONY OF WALTER BRATIC</u>**

## TABLE OF CONTENTS

Page

I. SUMMARY ..........................................................................................................................2

II. SUPPORTING EVIDENCE .............................................................................................4

III. BACKGROUND FACTS ..................................................................................................4

IV. ARGUMENTS AND AUTHORITIES ............................................................................6

    A.     Ampad timely disclosed its claimed costs and deductions. .....................................6

    B.     Bratic's opinions about lost profits and reasonable royalty are directly relevant to and rebut Kedrowski's evaluation of damages issues ...........................7

    C.     Issues of surprise and prejudice. ............................................................................10

V. CONCLUSION ................................................................................................................12


# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*A&H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.*,
  967 F. Supp. 1457 (E.D. Pa. 1997) ......................................................................... 9

*Am. Honda Motor Co., Inc. v. Two Wheel Corp.*,
  918 F.2d 1060 (2d Cir. 1990) ................................................................................ 7

*Bandag, Inc. v. Al Bosler's Tire Stores*,
  750 F.2d 903 (Fed. Cir. 1984) ............................................................................. 10

*Daubert, v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ............................................................................................. 8

*Deering, Milliken & Co., Inc. v. Gilbert*,
  296 F.2d 191 (2d Cir. 1959) ................................................................................ 7

*DeLuca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
  No. 06 Civ 5474 (JGK), 2008 WL 857492 (S.D.N.Y. March 31, 2008) ............ 11

*F.D.I.C. v. Wrapwell Corp.*,
  No. 93 Civ. 859 CSHKNF, 2000 WL 1576889 (S.D.N Y. Oct. 23, 2000) ........ 12

*Go Med. Indus. Pty., Ltd. v. Inmed Corp.*,
  471 F.3d 1264 (Fed. Cir. 2006) ........................................................................... 10

*Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*,
  No. 04 Civ. 7369(LTS)(H), 2006 WL 2128785 (S.D.N.Y. July 28, 2006) ......... 7

*Louis Vuitton S.A. v. Spencer Handbags Corp.*,
  765 F.2d 966 (2d Cir. 1985) ................................................................................ 6

*Ramada Inns, Inc. v. Gadsden Motel Co.*,
  804 F.2d 1562 (11th Cir. 1986) ......................................................................... 10

*Reebok Int'l Ltd. v. Pak*,
  No. 87 Civ 2727 (TGP), 1990 WL 91644 (S.D.N.Y. June 28, 1990) .................. 6

*Sans, Taylor & Wood Co. v. Quaker Oats Co.*,
  978 F.2d 947 (7th Cir.1992) ................................................................................ 9

*The Apollo Theater Found., Inc. v. W. Int'l Syndication*,
  No. 02-civ.-10037(DLC), 2005 WL 1041141 (S.D.N.Y. May 5, 2005) ............ 10

*U.S. v. DiDomenico*,
  985 F.2d 1159 (2d Cir.1993) ................................................................................ 8

*U.S. v. Dukagjini*,
 326 F.3d 45 (2d Cir. 2003) ...................................................................................... 7, 10

*U.S. v. Williams*,
 506 F.3d 151 (2d Cir. 2007) ......................................................................................... 8

*Ventra v. U.S.*,
 121 F. Supp. 2d 326 (S.D.N.Y. 2000) ........................................................................ 10

**STATUTES**

15 U.S.C. § 1117(a) ............................................................................................................. 8

**OTHER AUTHORITIES**

FED. R. CIV. P. 26 ......................................................................................................... 6, 10

FED. R. CIV. P. 37 ............................................................................................................. 10

FED. R. EVID. 401 ............................................................................................................... 8

FED. R. EVID. 702 ........................................................................................................... 7, 8

Steven E. Ross (SR 9361)
William D. Dunn (WD 6998)
Michael P. Cooley (MC 1214)
GARDERE WYNNE SEWELL LLP
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
Telephone: (214) 999-4824
Facsimile: (214) 999-3824

Anthony F. Lo Cicero (AL 7538)
Marc J. Jason (MJ 0934)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY  10016
(212) 336-8000 – Telephone
(212) 336-8001 - Facsimile

COUNSEL FOR AMERICAN PAD & PAPER, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X
NATIONAL ENVELOPE CORPORATION          :
AND NATIONAL ENVELOPE-WH LLC,          :
                                       :
        PLAINTIFFS,                    :
                                       :
V.                                     :    CIVIL ACTION No. 1:06-CV-12988-CSH
                                       :
AMERICAN                               :
PAD & PAPER LLC,                       :
                                       :
        DEFENDANT.                     :
------------------------------------------------- :
                                       X

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF WALTER BRATIC

Defendant American Pad & Paper LLC ("Ampad") submits this memorandum of law in opposition to Plaintiffs National Envelope Corporation and National Envelope-WH LLC's

1

(collectively, "NEC") motion (the "Motion") to exclude Rebuttal Expert Report of Walter Bratic (the "Bratic Report").

## I. SUMMARY

After asserting a lost profits claim against Ampad for two and one-half years, NEC now concedes it suffered no direct damages from the alleged infringement. The evidence developed in discovery proves that Ampad earned no profits from selling products bearing the allegedly infringing mark, and would not have paid NEC any material sum as a reasonable royalty to license NEC's alleged mark. Because NEC cannot recover monetary relief based on a fair presentation of the facts, it seeks to manipulate the procedural rules so that the jury hears only one side of the "damages" story.

NEC's primary goal is to exclude all evidence of costs and deductions that must be subtracted to calculate profit or loss from the allegedly infringing sales. If its ploy succeeds, the only damages evidence the jury will hear is the opinion of NEC's expert that Ampad's *gross sales* totaled hundreds of millions of dollars over many years. Gross sales is an inflated and ultimately irrelevant figure that in no way represents the real economic impact of the relevant sales on Ampad's business. NEC contends this amazingly misleading and unjust result is warranted because Ampad's expert should have identified relevant costs and deductions *before NEC's expert identified relevant sales.* That contention belies common sense, the well-established sequence of proof in Lanham Act cases, and NEC's own statements to the Court.

NEC engaged an expert to "evaluate economic damages issues related to NEC's claims against Ampad." The resulting "damages evaluation" consisted of a rudimentary "preliminary" report stating an opinion about Ampad's gross sales. Only then did the burden shift to Ampad to rebut gross sales by identifying claimed costs or deductions. Ampad's expert did just that, in

2

accordance with the schedule for disclosing rebuttal experts and reports. In fact, NEC's service of a "preliminary" report itself belies any contention that Ampad had any initial burden.

Further, on May 26, 2009 – the same day on which Ampad timely served the Bratic Report – NEC's counsel represented to the Court that Bratic's opinions on costs and deductions were rebuttal opinions due that very day:

> [Counsel for NEC:] They've also failed to give us expert reports from their financial expert, *who is rebutting our expert report* which merely sets out their gross revenues, so their financial expert is *doing nothing more than showing what deductions they're claiming need to be set off against our showing of their gross revenues.*
>
> * * *
>
> [The Court:] . . . and [the damages rebuttal report is] due today, right?
>
> [Counsel for NEC:] *That is due today, Your Honor.*

*See* Transcript of May 26, 2009 Conference, Motion at Ex. 8 pp. 24-25 (emphasis added). Thereafter, NEC had one month to serve a rebuttal report from its own expert contesting Ampad's costs and deductions. NEC served its rebuttal report in late July, one month after the June 26 deadline for remaining rebuttal reports. NEC likewise had two months before the July 31 discovery deadline to depose Ampad's expert, but elected not to do so. Instead, NEC waited until September 15, 2009 – almost four months after service of the Bratic Report – to file the current Motion. Ampad's disclosure of claimed costs and deductions was exactly on time and, in any event, caused NEC no conceivable harm or prejudice.

NEC's "don't ask, don't tell" approach to other issues fundamental to a fair evaluation of damages in this case is equally disingenuous. Just because NEC's expert chose not to address NEC's admission that it suffered no direct damages, or an alternative reasonable royalty theory grounded in fact rather than economic fantasy, does not mean those issues are not relevant. The

3

jury should hear all probative evidence bearing on the economic consequences (or lack thereof) of the alleged infringement and make an objective and fully informed decision about whether NEC is entitled to monetary relief.

## II. SUPPORTING EVIDENCE

Ampad attaches and incorporates by reference the Declaration of William D. Dunn and Exhibits in support of this Opposition (the "Dunn Dec.").

## III. BACKGROUND FACTS

The amended Scheduling Order established the following schedule for reports and discovery pertinent to damages experts:

- Service of expert reports and disclosures for issues on which a party has the burden of proof: April 20, 2009
- Service of rebuttal expert reports and disclosures: May 26, 2009
- Service of all other rebuttal expert reports: June 26, 2009
- Completion of expert depositions: July 31, 2009

[Docket Nos. 39, 90]; Transcript of May 26, 2009 Conference, Motion at Ex. 8 pp. 22, 25; Dunn Dec. ¶ 3.

On April 20, 2009, NEC served the Preliminary Expert Report of Kathleen M. Kedrowski (the "Preliminary Report") in which she describes the scope of her engagement as follows:

> I have been engaged by [NEC's counsel] to evaluate economic damages issues related to NEC's claims against Ampad.

*See* Motion at Ex. 5 ¶ 2. The remainder of the Preliminary Report sets forth Ms. Kedrowski's "damages opinions" and "opinions of damages in this case." *Id.* at Ex. 5 ¶¶ 20, 21. Ultimately, those opinions boil down to a quantification of alleged gross infringing sales in support of a disgorgement theory. *Id.* at Ex. 5 ¶¶ 24-30. In stating that opinion, Kedrowski noted her "understand[ing] it is the burden of Ampad to prove all elements of cost or deduction claimed

4

[and reserved] the right to review and provide opinions on any evidence put forth by Ampad on these matters." *Id.* at Ex. 5 ¶ 5.

Until receiving the Preliminary Report on April 20, 2009, Ampad did not know (i) if NEC intended to designate a damages expert, (ii) who that person would be, or (iii) what opinions and conclusions they might offer about NEC's alleged damages. Dunn Dec. at ¶ 3. Shortly thereafter, Ampad engaged Walter Bratic to rebut Kedrowski's evaluation of economic damages issues. Dunn Dec. at ¶ 4; *see* Motion at Ex. 1 ¶ 1 (defining scope of Bratic's engagement; "I have been retained . . . to evaluate the alleged damages, if any, sustained by [NEC] as a result of the alleged infringement . . . .").

On the applicable May 26, 2009 deadline, Ampad timely served the Bratic Report. Dunn Dec. at ¶ 5; *see* Motion at Ex. 1. The Bratic Report sets forth four basic conclusions, each of which disproves NEC's claim that it suffered damages from Ampad's alleged infringement:

1. That NEC has not suffered direct damages such as lost sales or profits from the alleged infringement. Motion at Ex. 1 ¶¶ 10, 29-37.

2. That a reasonable royalty is an appropriate alternative measure of damages – particularly where the plaintiff admits it suffered no direct loss – a fact Kedrowski should have considered but did not. *Id.* at Ex. 1 ¶¶ 11-12, 38-48, 53.

3. That Kedrowski overstated relevant sales by claiming gross sales instead of net sales and sales predating Ampad's bankruptcy discharge. *Id.* at Ex. 1 ¶¶ 13, 50-53.

4. That substantial costs and deductions must be made from relevant sales to determine Ampad's profit or loss from infringing sales. *Id.* at Ex. 1 ¶¶14, 54-69.

On May 26, 2009, NEC told the Court that Bratic's opinions on costs and deductions were rebuttal opinions due that day. *See* Motion at Ex. 8 pp. 24-25. After timely receiving the Bratic Report on May 26, NEC had (i) 31 days (until the June 26 deadline for serving remaining rebuttal reports) to serve a rebuttal report addressing the issues raised in the Bratic Report, and

5

(ii) 66 days (until the July 31 deadline for expert discovery) to take Bratic's deposition. Dunn Dec. at ¶ 6.

On July 27 – long after the June 26 deadline for rebuttal reports and two days before Kedrowski's July 29 deposition – NEC served Kedrowski's Supplemental and Rebuttal Report (the "Kedrowski Rebuttal Report").[1] *See* Dunn Dec. at ¶ 8, Ex. 2. The Kedrowski Rebuttal Report states Kedrowski's rebuttal opinions regarding Bratic's analysis of claimed costs and deductions. Dunn Dec. at Ex. 2 ¶¶ 8, 16-45. It does not address Bratic's opinion about alternative reasonable royalty damages, although Kedrowski claims to be an expert in the field of trademark royalties. Motion at Ex. 5 ¶ 38. Nor does the Kedrowski Rebuttal Report rebut or even acknowledge the undisputed lack of any direct damages to NEC. And, although it deposed every other expert witness designated by Ampad, NEC chose not to depose Bratic. Dunn Dec., ¶ 7, Ex. 1.

## IV. **ARGUMENTS AND AUTHORITIES**

### A.  **Ampad timely disclosed its claimed costs and deductions.**

Section 35 of the Lanham Act establishes a burden-shifting sequence of proof in connection with a claim for disgorgement of profits. The plaintiff must first establish the amount of defendant's gross sales of infringing goods. *See Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir. 1985); *Reebok Int'l Ltd. v. Pak*, No. 87 Civ 2727 (TGP), 1990 WL 91644, at * 1 (S.D.N.Y. June 28, 1990). The burden *then shifts* to the defendant to prove all elements of cost or deduction claimed. *Id.*; *Reebok*, 1990 WL 91644, at *1. In other words, the defendant has no burden to prove costs or deductions until the plaintiff meets its initial burden of

---

[1] Remarkably, it is the Kedrowski Rebuttal Report – not the Bratic Report – that is untimely. The Scheduling Order, as amended on May 29, 2009, states "Remaining Rebuttal Expert Reports and Disclosures shall be produced on or before June 26, 2009." [Docket No. 90.] Further, the Federal Rules of Civil Procedure specifically require a party to disclose expert testimony offered as rebuttal evidence within 30 days after disclosure by the other party. *See* FED. R. CIV. P. 26(a)(2)(C)(ii). Although the deadline for remaining rebuttal reports and the 30-day deadline under Rule 26(a)(2)(C)(ii) ran on June 26, NEC did not serve Kedrowski's Rebuttal Report until July 27, 31 days late.

proving relevant sales. *See, e.g., Am. Honda Motor Co., Inc. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2d Cir. 1990) ("The statute thus allocates the initial burden of proving gross sales to the trademark plaintiff, and the <u>subsequent</u> <u>burden</u> of proving costs to the infringing defendant") (emphasis added); *Deering, Milliken & Co., Inc. v. Gilbert,* 296 F.2d 191, 193 (2d Cir. 1959) (holding that after the plaintiff rested "the burden of going forward with evidence to refute the plaintiff's estimates of sales passed to" the defendant); *see also Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*, No. 04 Civ. 7369(LTS)(H), 2006 WL 2128785, at *8 (S.D.N.Y. July 28, 2006) (denying motion *in Limine* with regard to defendant's "rebuttal report to [plaintiff's expert] as to the amount of profits earned").

Kedrowski's April 20 Preliminary Report addresses NEC's initial burden to prove relevant sales. Until NEC disclosed that opinion, Ampad had no burden to prove costs or deductions. At that point, the burden shifted to Ampad to rebut NEC's evidence of sales with evidence of the elements of cost or deduction claimed. Ampad did exactly that by timely serving the Bratic Report on May 26. NEC's new position – that Ampad should have anticipated Kedrowski's damages opinions and disclosed its evidence of costs and deductions before even knowing her opinions on disgorgement and relevant sales – contradicts the basic sequence of proof in trademark cases. *See, e.g., Johnson & Johnson*, 2006 WL 2128785, at *8. As NEC's counsel represented to the Court at the May 26 hearing, Ampad's disclosure of Bratic's rebuttal opinions regarding claimed costs and deductions was exactly on time.

    **B.**    **Bratic's opinions about lost profits and reasonable royalty are directly relevant to and rebut Kedrowski's evaluation of damages issues.**

The Federal Rules of Evidence provide a "liberal standard for the admissibility of expert testimony." *U.S. v. Dukagjini*, 326 F.3d 45, 52 (2d Cir. 2003). Under Rule 702, "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702, Advisory Committee

7

Notes to 2000 Amendments. Like all evidence, expert testimony must be relevant. FED. R. EVID. 401; *Daubert, v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). An expert's testimony is relevant if his reasoning and methodology can be properly applied to the facts at issue and can assist the jury in understanding the evidence or determining any fact in issue. *Daubert*, 509 U.S. at 591. Whether an expert's opinion on the subject will "assist the trier of fact" turns on whether the opinion would be helpful to the jury.[2] *See U.S. v. DiDomenico*, 985 F.2d 1159, 1163 (2d Cir.1993).

The ultimate issue to be decided in this case is whether NEC is entitled to monetary relief as a result of Ampad's alleged infringement and, if so, how much. Section 35 of the Lanham Act provides several alternative forms of monetary relief to a prevailing plaintiff, and vests the district court with broad discretion in awarding damages in accordance with the circumstances of the case. 15 U.S.C. § 1117(a) (the plaintiff shall be entitled . . . *subject to the principles of equity*, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . . If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may *in its discretion enter judgment for such sum as the court shall find to be just . . . .*") (emphasis added). NEC claims it was damaged by Ampad's conduct and is entitled to monetary relief. Bratic's opinions regarding the lack of direct damages and an alternative reasonable royalty help explain why NEC has suffered no (or at most nominal) damages. Any opinion or conclusion that bears on the nature or amount of monetary relief, if any, that should be awarded to NEC in the circumstances of this case goes directly to the ultimate question that the jury and Court must decide.

---

[2] An expert's opinion must also be sufficiently reliable. FED. R. EVID. 702; *Daubert*, 509 U.S. at 597; *U.S. v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). NEC does not assert that any aspect of Bratic's testimony is unreliable.

8

NEC complains that Bratic's opinions do not rebut Kedrowski's calculation of gross sales. The scope of Kedrowski's engagement was much broader – to "evaluate economic damages issues related to NEC's claims against Ampad." *See* Motion at Ex. 5 ¶ 2. The result of her evaluation of damages issues was an opinion on Ampad's gross sales. That does not mean that gross sales are the only issue relevant to a fair and unbiased assessment of relevant damages issues in this case.

Ampad engaged Bratic to rebut Kedrowski's evaluation of damages and his report does exactly that. Bratic rebuts Kedrowski's calculation of gross sales by quantifying the costs and deductions that must be subtracted to determine profits or losses. Motion at Ex. 1 ¶¶ 49-69. Bratic discusses the undisputed lack of *any evidence* that NEC lost sales or suffered direct damages from Ampad's conduct – a glaring void that goes directly to the scope of monetary relief that is appropriate on the facts of this case which Kedrowski simply ignores. *Id.* at Ex. 1 ¶¶ 10, 29-37. Bratic calculates a reasonable royalty that Ampad would have paid NEC for a license to use the alleged mark in a hypothetical negotiation – a widely recognized remedy for infringement especially where, as here, the plaintiff has suffered no direct loss – which Kedrowski (a purported expert in the field of trademark royalties) should have considered in evaluating damages but did not. *Id.* at Ex. 1 ¶¶ 38-48; *see Sans, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 963 (7th Cir.1992) (remanding and holding award of profits was inequitable and that a "reasonable royalty . . . would more accurately reflect both the extent of [defendant's] unjust enrichment and the interest of [plaintiff] that has been infringed"); *A&H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.*, 967 F. Supp. 1457, 1479 (E.D. Pa. 1997) (finding "the most appropriate and accurate damages remedy" to be a reasonable royalty and noting that "[o]ther Circuits have stated that a reasonable royalty may be a proper measure of

damages in a trademark case") (citing *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986); *Bandag, Inc. v. Al Bosler's Tire Stores*, 750 F.2d 903, 920 (Fed. Cir. 1984)); *The Apollo Theater Found., Inc. v. W. Int'l Syndication*, No. 02-civ.-10037(DLC), 2005 WL 1041141, at *13 (S.D.N.Y. May 5, 2005) (recognizing reasonable royalty method of damages for trademark infringement); *see also Go Med. Indus. Pty., Ltd. v. Inmed Corp.*, 471 F.3d 1264, (Fed. Cir. 2006) (upholding district court's reasonable royalty award). All of Bratic's opinions are directly relevant to NEC's damages claim and disprove the relevance and reliability of Kedrowski's opinion.

### C. Issues of surprise and prejudice.

Under Federal Rule of Civil Procedure 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, *unless such failure is harmless*, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." (emphasis added). Courts in this Circuit recognize that preclusion of evidence pursuant to Federal Rule of Civil Procedure 37(c)(1) is a drastic remedy and should be exercised with discretion and caution. *Rhone v. U.S.*, 04 Civ. 5037, 2007 WL 3340836, at *8 n. 6 (S.D.N.Y. Nov. 9, 2007); *Ventra v. U.S.*, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000). Here, Ampad's justified disclosure of the Bratic Report was both timely and (even if not) caused no harm to NEC.

Here, the equities overwhelmingly favor Ampad's position. NEC seeks to confine the evidence pertinent to its economic damages claim to the only aspect with a potential upside for NEC – its own expert's opinion about Ampad's gross sales. As explained in detail in the Bratic Report, Kedrowski's gross sales figures are incorrect and significantly overstated. Motion at Ex. 1 ¶¶ 51-52. Even worse, they do not take into account any of the related costs incurred by

10

Ampad and, therefore, bear no relationship to the amount of profits, if any, Ampad generated from sales of the accused products. Motion at Ex. 1 ¶¶ 54-69. While arbitrarily confining damages evidence to Kedrowski's opinion as to hundreds of millions of dollars in gross sales would certainly serve NEC's purposes, it would also wildly distort the economic reality of this case, deceive the jury, and be extraordinarily unfair and prejudicial to Ampad.

NEC, in contrast, has not been surprised or prejudiced at all. NEC expected to receive the Bratic Report in rebuttal on the applicable May 26 due date. *See* Motion at Ex. 8 pp. 24-25. All opinions in the Bratic Report were timely disclosed and are directly relevant to rebutting NEC's claim for damages. NEC had a full and fair opportunity – two months after service of the Report – to conduct expert discovery and rebut those opinions. Its failure to do so is not Ampad's fault.[3]

NEC should not be allowed to exclude legitimate damages opinions just because its own expert failed to proffer a complete and accurate evaluation of the damages issues in this case. Doing so portrays a limited and distorted picture of the facts. Bratic's well-founded opinions that Ampad incurred substantial costs, that NEC suffered no lost profits, and that Ampad would pay nothing, or only a nominal reasonable royalty, for rights to NEC's alleged mark are relevant and reliable opinions based on the facts of the case. NEC should not be permitted to prevent the jury from deciding this case based on a full and fair presentation of the facts based on technical procedural objections.[4]

---

[3] NEC contends it would be prejudiced by Bratic's lost profits and reasonable royalty opinions because it "would be faced with the burden of rebutting his opinions without the benefit of discovery on these issues." Motion at 6. Of course, only NEC knows what sales or profits it claims to have lost as a result of the alleged infringement. After 29 months of discovery, NEC could identify none and elected to abandon that claim. Motion at Ex. 2. Likewise, after receiving the Bratic Report, NEC had more than two months to conduct discovery on and rebut Bratic's reasonable royalty opinion. Although Kedrowski is a self-professed expert on the topic of trademark royalties (Motion at Ex. 5 ¶ 38), NEC did not even bother to take Bratic's deposition or to address the issue in its untimely Rebuttal Report.

[4] In that regard, the cases cited by NEC for the proposition that the Bratic Report should be excluded as untimely are readily distinguishable. In *DeLuca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 06 Civ 5474 (JGK), 2008 WL

## V. <u>CONCLUSION</u>

As discussed above, the Bratic Report was timely, caused no prejudice to NEC, and is highly relevant to the determination of the damages (if any) from the allegedly infringing sales in this case. As a result, NEC's motion to exclude the expert report and testimony of Walter Bratic should be denied.

---

857492, at *12 (S.D.N.Y. March 31, 2008), the excluding court noted that "[t]he plaintiff never disclosed that he would be relying upon the testimony of an expert, and the defendant was not made aware of the expert until the plaintiff submitted his [summary judgment] opposition papers [more than four months after the close of discovery]." Similarly, the court in *F.D.I.C. v. Wrapwell Corp.*, No. 93 Civ. 859 CSHKNF, 2000 WL 1576889, at *2 (S.D.N Y. Oct. 23, 2000) excluded a report served after the close of discovery as part of a summary judgment response. In contrast, Ampad served the Bratic report in compliance with the rebuttal deadlines far in advance of the close of discovery.

Respectfully submitted,

Dated: September 29, 2009.  By: _____
Dallas, Texas

Steven E. Ross (SR 9361)
William D. Dunn (WD 6998)
Michael P. Cooley (MC 1214)
GARDERE WYNNE SEWELL LLP
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
(214) 999-4629 - Telephone
(214) 999-3629 – Facsimile

Anthony F. Lo Cicero (AL 7538)
Marc J. Jason (MJ 0934)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
(212) 336-8000 – Telephone
(212) 336-8001 - Facsimile

ATTORNEYS FOR DEFENDANT
AMERICAN PAD & PAPER LLC

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing pleading has been served upon counsel listed below, as indicated, on September 29, 2009:

Via the Court's ECF System

| | |
|---|---|
| Mark N. Mutterperl, Esq.<br>Colin Foley, Esq.<br>FULBRIGHT & JAWORSKI L.L.P.<br>666 Fifth Avenue<br>New York, NY  10103 | mmutterperl@fulbright.com<br>cfoley@fulbright.com |
| J. Jeffery Richardson, Esq.<br>FULBRIGHT & JAWORSKI L.L.P.<br>2200 Ross Avenue, Suite 2800<br>Dallas, Texas 75201-2784 | jrichardson@fulbright.com |

_____