USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-25-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NE OPCO, INC.,

      Plaintiff,

   - against -

AMERICAN PAD & PAPER COMPANY OF
DELAWARE, INC., et al.,

      Defendants.

OPINION & ORDER

06 Civ. 12988 (SHS) (RLE)

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. Introduction

On November 7, 2006, National Envelope Corporation and National Envelope - WH LCC (collectively, "NEC") brought this action against the American Pad & Paper Company of Delaware, Inc. and American Pad & Paper, LLC (collectively "Ampad"), claiming 1) breach of contract under the laws of New York State; 2) trademark infringement in violation of 15 U.S.C. § 1114(1); 3) unfair competition and false designation of origin in commerce under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); 4) deceptive trade practices in violation of New York General Business Law § 349; 5) trademark dilution in violation of New York General Business Law § 360-1; 6) common law unfair competition under the laws of New York State; and 7) unjust enrichment under the laws of New York State. The case was dismissed without prejudice on June 25, 2010, when NEC declared bankruptcy. It was reopened on November 9, 2010, with NE Opco substituted as Plaintiff[1].

On November 15, 2010, Ampad moved *in limine* to exclude the expert report and

---

[1] The Parties continue to use the acronym "NEC" to refer to Plaintiff. To avoid confusion, the Court will use this convention.

testimony of Hal L. Poret. (Doc. No. 152.) For the reasons that follow, Ampad's motion to exclude Poret's expert report is **DENIED**.

## II. BACKGROUND

The background of this case has been set forth in other opinions (*see, e.g.,* Op. & Order, Doc. No. 125 at 2-3), and will only be summarized here. This case arose out of Ampad's use of the mark "Pull & Seal" and its application to use the mark with the U.S. Patent and Trademark Office. (Compl. at 3.) NEC argues that "Pull & Seal" is confusingly similar to and infringes on its mark, "Peel & Seel." *Id.* Both parties use their marks to identify envelopes with an adhesive closure covered by a strip of release paper. *Id.* at 3, 5. NEC argues that Ampad's use of "Pull & Seal" infringes on NEC's mark. *Id.* at 5-7.

The instant dispute arises from NEC's use of a survey and expert report by Hal Poret to address the level of consumer confusion between NEC's products and those of Ampad. (Study to Determine Whether There is a Liklihood of Confusion Between "Pull & Seal" and "Peel & Seel" Envelopes ("Poret Survey") at 1.) In order to test the likely level of confusion, Poret used a survey known as a "Squirt Survey." Respondents were first shown one of NEC's "Peel & Seel" envelopes, followed by a series of photographs of boxes of envelopes, including Ampad's boxes with the "Pull & Seal" marking. (*Id.* at 3-4.) A control group of respondents was shown a box of Ampad envelopes that had been digitally altered to include the name "Easy Seal" instead of "Pull & Seal." (*Id.* at 6.) For each photograph that they were shown, respondents were first asked: "Do you think this is the same brand of envelope as the first envelope I showed you, or a different brand, or do you have no opinion?" (*Id.* at 7.) Respondents who answered that they thought the two products were from the same brand were asked why they thought that was the case. (*Id.*) All other respondents were then asked: "Do you think these envelopes are put out by

2

the same company that puts out the first envelope I showed you, or by a different company, or do you have no opinion?" (*Id.*) Respondents who answered "same company" were asked for an explanation, while the remaining respondents were asked a final question, "Do you think the company that puts out these envelopes is affiliated with or received permission from the company that puts out the first envelope I showed you, or do you think not, or do you have no opinion?" (*Id.*) Poret's survey ultimately found a "net confusion level" of 21.7%. (*Id.* at 12.) Ampad seeks to exclude the survey under Fed. R. Civ. P. 403, which allows courts to exclude expert testimony that is more prejudicial than it is probative.

### III. DISCUSSION

Ampad argues that the Poret survey should be excluded because it: 1) failed to replicate actual marketplace conditions; 2) created an artificial awareness of NEC's alleged mark; 3) failed to present respondents Ampad's entire packaging; 4) used an improper survey universe; 5) used leading questions; and 6) improperly included certain responses as indicating confusion. (Mem. of Law in Supp. of Mot. To Exclude ("Ampad Mem.") at 3-4.) NEC contends that the survey as conducted by Poret was the only valid way to test for confusion in this case. (Mem. of Law in Opp'n to Mot. to Exclude ("Mem. in Opp'n") at 3.)

The Second Circuit has ruled that "errors in methodology . . . properly go only to the weight of the evidence - subject, of course, to Rule 403's more general prohibition against evidence that is less probative than prejudicial or confusing." *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 227-28 (2d Cir. 1999). While courts do apply particular scrutiny to survey results when the case is likely to go to a jury, *THIOP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 231 (S.D.N.Y. 2010), the proper inquiry under Fed. R. Civ. P. 403 is "whether the survey is so far out of the realm of relevance that a jury should not even be permitted to consider it." *Friesland*

3

*Brands, B.V. v. Vietnam National Milk Co.*, 221 F. Supp. 2d 457, 460 (S.D.N.Y. 2002).

Here the Court finds that while Ampad may have raised some questions regarding the appropriateness of Poret's methodology, these questions properly go to the weight of the survey's conclusions, rather than their relevance. The *THIOP* case, on which Ampad relies in insisting that the Poret survey should be excluded, is distinguishable, as the survey excluded in that case tended to maximize confusion by deliberately pairing Plaintiff's and Defendant's products based on similarity rather than the likelihood that consumers might actually have encountered both products. *THIOP*, 690 F. Supp. 2d at 237. Accordingly, Ampad's motion to exclude Poret's report and testimony is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Ampad's motion to exclude the testimony and expert report of Hal L. Poret is **DENIED**.

**SO ORDERED this 25th day of April 2011**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

4